12-1665.131-RSK                                           January 16, 2013

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

FEDERAL DEPOSIT INSURANCE CORP., )
AS RECEIVER FOR BROADWAY BANK,   )
                                 )
             Plaintiff,          )
                                 )
        v.                       )   No. 12 C 1665
                                 )
DEMETRIS GIANNOULIAS, GEORGE     )
GIANNOULIAS, JAMES MCMAHON, SEAN )
CONLON, STEVEN DRY, DONNA        )
ZAGORSKI, STEVEN BALOURDOS,      )
GLORIA SGUROS, ANTHONY D'COSTA,  )
                                 )
             Defendants.         )

## MEMORANDUM OPINION

Before the court are: (1) defendant James McMahon's motion to dismiss; (2) defendant Gloria Sguros's motion to dismiss; and (3) the joint motion to dismiss of certain other defendants.[1] For the reasons explained below, we deny the defendants' motions.

## BACKGROUND

Plaintiff Federal Deposit Insurance Corporation, as receiver for Broadway Bank ("FDIC-R"), has filed this lawsuit to recover approximately $114 million in losses that the bank suffered on 20 commercial real estate ("CRE") and acquisition, development, and construction ("ADC") loans. (Am. Compl. ¶ 1.) The FDIC-R alleges

---

[1] This motion is joined by defendants Demetris Giannoulias, George Giannoulias, Sean Conlon, Steven Dry, Donna Zagorski, Steven Balourdos, and Anthony D'Costa. These defendants and McMahon have filed separate memoranda in support of their motions raising many of the same arguments, and Sguros has adopted those arguments in support of her motion.

- 2 -

that the defendants — seven former directors of Broadway Bank (the "Director Defendants")[2] and two former officers (the "Officer Defendants")[3] — negligently approved the loans. (Id. at ¶ 2.) According to the complaint, CRE and ADC loans are inherently risky, and compared with its banking peers Broadway Bank's loan portfolio was substantially concentrated in such loans during 2007-2008. (Id. at ¶¶ 20-21.) These risks were compounded by the fact that many of the commercial building projects that the bank financed were located outside of Illinois and therefore beyond the bank's ability to effectively monitor. (Id. at ¶ 22; see also id. (alleging that the defendants "deferred excessively to its borrowers regarding market evaluations and risk.").) The bank's loan policy, if followed, would have given the bank some protection against these risks. (Id. at ¶ 25.) But the FDIC-R alleges that the defendants "routinely ignored and repeatedly failed to enforce the Loan Policy's provisions." (Id.) Instead of carefully monitoring and managing loan risks, the defendants pursued a strategy of "reckless growth:"

> Underwriting was perfunctory or nonexistent. Limits on loan to value ratios repeatedly were ignored. Loans were made without appraisals or with grossly deficient appraisals. Construction draws were used for improper purposes with little or no active monitoring by the Bank.

---

[2] The Director Defendants are Demetris Giannoulias, George Giannoulias, James McMahon, Sean Conlon, Steven Dry, Donna Zagorski, and Steven Balourdos. (See Am. Compl. ¶¶ 8-14.)

[3] The Officer Defendants are Gloria Sguros and Anthony D'Costa, both of whom were members of the bank's loan committee. (See Am. Compl. ¶¶ 15-16.)

> Little or no attention was paid to whether loan guarantors had sufficient liquidity to protect the Bank's interest. Loans were made to uncreditworthy borrowers with a history of bad loans — in some cases with Broadway itself. In some instances, loans were made to assist other financial institutions avoid regulatory intervention or loss recognition.

(Id. at ¶ 24; see also id. at ¶ 40.) The FDIC-R alleges that state and federal bank examiners notified the bank in 2007, 2008, and 2009 concerning specific shortcomings. (Id. at ¶¶ 27-38.) However, the defendants "ignored" the regulators' criticisms and recommendations. (See, e.g., id. at ¶¶ 28, 33, and 35.)

The FDIC-R's complaint contains a chart showing which defendants allegedly approved each of the 20 challenged loans. (Id. at ¶ 39.) It then goes on to describe why the FDIC-R believes that the defendants were negligent in approving each loan. (See id. at ¶¶ 44-128.) The defendants' alleged negligence generally falls into the following categories: (1) approving high-risk loans and loan-renewals without proper underwriting, e.g., failing to verify the finances of borrowers and guarantors (see, e.g., id. at ¶¶ 47(b), 54(a), 57(a), 70(a)-(b), 75(a) & (d)-(e), 81 (b), 85(a), 89(a) & (c), 93(a)-(b), 97(a)-(c), 101(a)-(b), 105(a) & (c), 109(a)-(c), 114(a)-(c), 120(a)-(b), 126(a) & (d)); (2) ignoring the bank's loan policy, e.g., approving loans based upon an "as completed" (not "as is") appraisal (see, e.g., id. at ¶¶ 47(b), 52(b), 57(b), 63, 70(c), 75(b), 81(c), 85(a)-(b), 109(a), 114(b), and 126(a) & (c)); and (3) ignoring market risks and regulatory

- 4 -

warnings about over-concentration in CRE/ADC out-of-territory loans (see, e.g., id. at ¶¶ 47(a) & (c), 52(c) & (d), 57(c), 70(d), 75(e), 81(e), 93(e), 97(d), 101(b), 105(c), 120(d), and 126 (e)).

## **DISCUSSION**

The FDIC-R's three-count compliant asserts claims against the defendants for gross negligence (Count I), breach of fiduciary duty (Count II), and ordinary negligence (Count III).  Taken together, the defendants' motions seek to dismiss the FDIC-R's complaint in its entirety.  In addition, certain defendants have moved to strike particular allegations as "immaterial" and "impertinent."  See Fed. R. Civ. P. 12(f).

**A.  Legal Standard**

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits.  5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004).  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 556 (2007)).  When evaluating a motion to dismiss a complaint, the court must accept as true all

- 5 -

factual allegations in the complaint. Iqbal, 129 S. Ct. at 1949. However, we need not accept as true its legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

Pursuant to Rule 12(f), we "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). We possess "considerable discretion" when ruling on a motion to strike. 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382 (3d Ed.). Such motions are "disfavored" because they "potentially serve only to delay." Heller Financial, Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989). Accordingly, courts routinely deny motions to strike "unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." Wright & Miller, supra, § 1382 (footnotes omitted).

**B. "Gross Negligence" Means "Very Great Negligence," Not "Recklessness"**

At the outset, we note that the parties disagree about the correct definition of "gross negligence." The Financial Institutions Reform, Recovery & Enforcement Act ("FIRREA") authorizes the FDIC-R to sue the directors and officers of a failed bank to recover damages "for gross negligence, including any

- 6 -

similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law." 12 U.S.C. § 1821(k); see also Atherton v. F.D.I.C., 519 U.S. 213, 216 (1997) (holding that state law sets the standard of conduct that officers and directors must meet, but that § 1821(k) prohibits courts from applying a more "relaxed" standard than "gross negligence"). Some of the defendants argue that under Illinois law "gross negligence" means "recklessness," citing RTC v. Franz, 909 F.Supp. 1128, 1139 (N.D. Ill. 1995). (See Certain Defs.' Mem. at 4-7; cf. McMahon Mem. at 8 (essentially agreeing with the FDIC-R that gross negligence refers to a level of culpability greater than ordinary negligence, but less than recklessness).) In light of Atherton, we have serious doubts about whether it is permissible to borrow from state law a definition of "gross negligence" that effectively raises the standard of culpability to recklessness. See Atherton, 519 U.S. at 227 ("[T]he statute's 'gross negligence' standard provides only a floor — a guarantee that officers and directors must meet at least a gross negligence standard."). But we need not reach that issue because, for the reasons explained in F.D.I.C. v. Gravee, 966 F.Supp. 622, 636-37 (N.D. Ill. 1997), we conclude that Franz misstates Illinois law on this question. See id. (persuasively reasoning that Franz relied too heavily on the Illinois Supreme Court's discussion of "willful

- 7 -

and wanton conduct" in a different context). The Gravee court relied on the Illinois Supreme Court's definition of gross negligence in Massa v. Department of Registration and Education, 507 N.E.2d 814, 819 (Ill. 1987): "[g]ross negligence is commonly understood to encompass 'very great negligence, * * * [b]ut it is something less than the willful, wanton and reckless conduct' [the appellee] claims it to be." Id. (quoting Black's Law Dictionary 932 (5th ed. 1979))S. We conclude that "very great negligence" is the correct standard. See F.D.I.C. v. Spangler, 836 F.Supp.2d 778, 785 (N.D. Ill. 2011) (adopting Gravee's interpretation of Illinois law).

**B.   The FDIC-R's Claims are Sufficiently Pled**

"The elements of the [FDIC-R's] gross negligence, negligence and breach of fiduciary duty claims are similar. In order to state valid claims, the [FDIC-R] must allege duty, breach, proximate cause, and damages." Id. (applying Illinois law; citations omitted). In its amended complaint, the FDIC-R clearly identifies the challenged transactions, describes them in sufficient detail, and explains why it believes that the defendants' conduct fell below the applicable standard of care. In two recent decisions, judges in this district substantially denied[4] motions to dismiss

---

[4] The Spangler and Saphir courts granted the defendants' motions insofar as the FDIC was asserting duplicative claims for ordinary negligence and breach of fiduciary duty. See Spangler, 836 F.Supp.2d at 793 (dismissing claim for breach of fiduciary duty); Saphir, 2011 WL 3876918, *9 (dismissing negligence claims). We address that issue infra.

- 8 -

complaints filed by the FDIC against the former officers and directors of failed banks. See id. at 784-93; F.D.I.C. v. Saphir, No. 10 C 7009, 2011 WL 3876918, *5-9 (N.D. Ill. Sept. 1, 2011). The allegations in those cases were comparable to the FDIC-R's allegations in this case, both in terms of their subject matter and their specificity. Consistent with those decisions, we conclude that the FDIC-R has adequately pled claims for gross negligence, negligence, and breach of fiduciary duty.[5] Indeed, we do not consider it a close question. The defendants' arguments that the FDIC-R is alleging fraud by "hindsight," and that it is seeking to impose strict liability for the bank's failure, are untenable in the face of the complaint's allegations that the defendants consciously disregarded the risks associated with the challenged loans. (See, e.g., Am. Compl. ¶¶ 3-4, 26, 28, 33, 132-35, 140-42, 147-49.) Similarly, we reject the defendants' attempts to refute the complaint's allegations by referring to positive statements made by regulators about the bank's performance. (See Certain Defs.' Mem. at 1, 13-21; McMahon Mem. at 11, 13.) The thrust of the defendants' argument is that the regulatory guidance that the

---

[5] The defendants cite a raft of non-binding authority from Illinois and other jurisdictions, including two recent decisions from the Northern District of Georgia. See F.D.I.C. v. Skow, No. 11-CV-111, at 20 (N.D. Ga. Aug. 14, 2012) (dismissing claims based on ordinary negligence under Georgia law); F.D.I.C. v. Briscoe, No. 12-CV-2303, at 10-12 (N.D. Ga. Aug. 14, 2012) (same). (The slip opinions in Skow and Briscoe are attached to McMahon's motion for leave to file supplemental authority.) It would needlessly lengthen this opinion to address each case the defendants cite. It is sufficient to say that we find the decisions the defendants rely on less persuasive than Saphir and Spangler, two recent decisions applying substantive Illinois law and federal pleading standards to facts very similar to our own.

bank received was not as negative as the complaint suggests, and in fact supports the defendants' position that they fulfilled their fiduciary duties.  This argument may ultimately persuade the trier of fact that the defendants did not act negligently, but we do not weigh evidence at this stage of the case.  See Saphir, 2011 WL 3876918, *4 ("Factual determinations as to what the Director Defendants knew or should have known is premature at this stage . . . ."); see also Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010) ("For cases governed only by Rule 8, it is not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences.").  The same goes for the defendants' argument that the bank's losses were caused by a general economic downturn in 2008 and not the defendants' actions.  See Saphir, 2011 WL 3876918, *8 (rejecting a similar argument); see also F.D.I.C. v. Mahajan, No. 11 C 7590, 2012 WL 3061852, *6 (N.D. Ill. July 26, 2011) ("[W]ith respect to various Director Defendants' arguments that the allegations in the Amended Complaint can be attributed to the declining market generally, it is too early in the litigation to make any such determination.").  Ultimately, the FDIC-R will have to prove that the defendants' conduct was a "substantial factor" contributing to the bank's losses.  F.D.I.C. v. Bierman, 2 F.3d 1424, 1434 (7th Cir. 1993).  But it is not required to prove its claims at this stage of the case.

- 10 -

Several of the defendants challenge the FDIC-R's allegations as applied to them, specifically. Defendant McMahon argues that some of the deficiencies alleged in the complaint are not alleged with respect to the four loans he approved. (McMahon Mem. at 9-10.) But the complaint alleges that these loans were problematic for other reasons. (See FDIC-R's Resp. at 22-23.) McMahon quibbles with the inferences that the FDIC-R attempts to draw from these allegations, (see McMahon Reply at 6-8), but the issues he raises will have to await summary judgment or trial. See, e.g., Swearingen v. Momentive Specialty Chemicals, Inc., 662 F.3d 969, 972 (7th Cir. 2011) (breach of the duty of care and proximate causation are questions of fact). Defendant D'Costa argues that the FDIC-R has not alleged that he did anything wrong. (See Certain Defs.' Mem. at 24.) At this stage of the case we accept as true the FDIC-R's allegation that all of the defendants — including D'Costa — received regulatory warnings about the bank's risky loan practices. (Cf. id. (asserting that D'Costa did not receive certain of those warnings).) The FDIC-R further alleges that, as a member of the bank's loan committee, D'Costa failed to exercise due care in approving 18 of the 20 challenged loans. This is sufficient to state claims against him for gross negligence, negligence, and breach of fiduciary duty. Finally, defendants Conlon, Dry, Zagorski, and Balourdos argue that they are entitled to special consideration in view of their "unique position" as

outside directors. (Certain Defs.' Mem. at 22.) Our Court of Appeals has observed that "[f]ew distinctions have been drawn between the duties of inside and outside directors." Bierman, 2 F.3d at 1435. Here, the outside directors have not articulated any reason why they should be treated differently than the other defendants with respect to the challenged loans. We conclude that the FDIC-R has stated claims for relief against all of the defendants.

**C.  The Business Judgment Rule and the Illinois Banking Act**

The defendants argue that the FDIC-R's claims are barred by the business judgment rule and the Illinois Banking Act. "Under Illinois' common law business judgment rule, corporate directors, acting without corrupt motive and in good faith, will not be held liable for honest errors or mistakes of judgment, and a complaining shareholder's judgment shall not be substituted for that of the directors." Treco, Inc. v. Land of Lincoln Sav. and Loan, 749 F.2d 374, 377 (7th Cir. 1984). There is a split of authority in this district about whether the business judgment rule is an affirmative defense. Compare Spangler, 836 F.Supp.2d at 791 (not an affirmative defense) with Saphir, 2011 WL 3876918, *5 (treating the rule as an affirmative defense). We will assume for purposes of this opinion that it is *not* an affirmative defense, and therefore it may be invoked in support of a motion to dismiss. However, "[i]t is a 'prerequisite to the application of the business

Case: 1:12-cv-01665 Document #: 55 Filed: 01/16/13 Page 12 of 15 PageID #:863

- 12 -

judgment rule that the directors exercise due care in carrying out their corporate duties.  If directors fail to exercise due care, then they may not use the business judgment rule as a shield to their conduct.'" Spangler, 836 F.Supp.2d at 792 (quoting Davis v. Dyson, 900 N.E.2d 698, 714 (Ill. 2008)); see also Stamp v. Touche Ross & Co., 636 N.E.2d 616, 621 (Ill. App. 1993) ("[T]he shield of the business judgment rule is unavailable to directors who fail to exercise due care in their management of the corporation.").  The Spangler court concluded that the FDIC had overcome the "presumption" created by the business judgment rule by alleging that the defendants "disregarded regulatory warnings of unsafe lending practices and monthly reports reflecting dangerous loan concentration and excessive growth, failed to follow the bank's business plans and loan policies, and took no action to reform underwriting practices in response to criticism." Spangler, 836 F.Supp.2d at 792; see also id. (distinguishing Stamp, in which an Illinois Appellate Court concluded that the plaintiff had failed to allege sufficiently the defendants' lack of due care).  The FDIC-R's allegations in this case are substantially similar and, as we have already discussed, they are pled with sufficient clarity and detail to easily satisfy notice-pleading standards.  We deny the defendants' motion to dismiss insofar as it is premised on the FDIC-R's purported obligation to plead around the business judgment rule.

- 13 -

The director defendants also argue that, under the Illinois Banking Act, they were entitled to rely upon information that they received from the company's officers concerning the challenged loans. See 205 ILCS § 5/16(7)(b). First, the defendants have not cited any legal authority supporting their unstated premise that the FDIC-R must plead around this statute in order to state a claim for relief based on negligence. Cf. Saphir, 2011 WL 2011 WL 3876918, *5 (concluding that the Illinois Banking Act provides an affirmative defense); see also Mahajan, 2012 WL 3061852, *7 (same).[6] Second, whether the defendants reasonably relied on "loan write-ups" when approving the challenged loans is a question of fact that we cannot resolve on a motion to dismiss. Cf. Spangler, 836 F.Supp.2d at 792 (documents purporting to show that the Illinois Banking Act shielded the defendants from liability were "inconclusive" at the pleadings stage). We deny the director defendants' motions to dismiss insofar as they are premised on the Illinois Banking Act's protections.

**C. Duplicative Claims**

The FDIC-R's claims for negligence and breach of fiduciary duty are based upon the same factual allegations, and the defendants argue that we should dismiss one of the two claims as duplicative. (See Certain Defs.' Mem. at 24-25; McMahon Mem. at

---

[6]/ The Spangler court did not directly address this issue and instead rejected the defendants' Illinois Banking Act arguments on other grounds. See Spangler, 836 F.Supp.2d at 792.

- 14 -

14-15.) The Saphir and Spangler courts dismissed claims for negligence and breach of fiduciary duty on that basis, but suggested that the FDIC could — but had not — pled the two claims in the alternative. See Spangler, 836 F.Supp.2d at 793 (dismissing claim for breach of fiduciary duty); Saphir, 2011 WL 3876918, *9 (dismissing negligence claims). In this case, the FDIC *has* pled its negligence claim in the alternative to its claim for breach of fiduciary duty. (See Am. Compl. ¶ 145.) Pursuant to Fed. R. Civ. P. 8(d)(2), these claims may proceed in the alternative.

**D. Motion to Strike**

Certain defendants have moved to strike portions of paragraphs 24, 56, 135, 142 and 149 from the complaint as "immaterial" and "impertinent." See Fed. R. Civ. P. 12(f); see also Wright & Miller, supra, § 1382 ("immaterial" and "impertinent" are related concepts that describe allegations that do not pertain to the complaint's subject matter and are unnecessary). The allegations in these paragraphs are all relevant and material to the FDIC-R's main contention that the defendants were grossly negligent in the way that they operated the bank. (See Am. Compl. ¶¶ 24 ("In some instances, loans were made to assist other financial institutions avoid regulatory intervention or loss recognition."); 56 ("[I]n August 2007, Defendant members of the Loan Committee approved a two-year $3.2 million interest-only loan to Shubh Oceanic, LLC, Bisaria, and his wife, ostensibly to purchase a passenger boat and

transport it to Mumbai, India, to be used for 'special events.'"); see also id. at ¶¶ 135, 142, 149 (alleging in each paragraph that "[d]efendant members of the Board of Directors were grossly inattentive to the affairs of the Bank – deferring excessively to the whims of the Giannoulias family"). Accordingly, the defendants' motion to strike is denied.

## CONCLUSION

The defendants' motions to dismiss [26, 29, 30] are denied. A status hearing is set for January 23, 2013 at 11:00 a.m.

DATE:           January 16, 2013

ENTER:          _____
                John F. Grady, United States District Judge