IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR BROADWAY BANK, <br><br> Plaintiff, <br><br> v. <br><br> DEMETRIS GIANNOULIAS, GEORGE GIANNOULIAS, JAMES MCMAHON, SEAN CONLON, STEVEN DRY, DONNA ZAGORSKI, STEVEN BALOURDOS, GLORIA SGUROS, ANTHONY D'COSTA, <br><br> Defendants. | No. 12-cv-1665 <br><br> JURY DEMANDED <br><br> Judge John F. Grady |

### CERTAIN DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL AND FOR ENTRY OF DEFENDANTS' ESI PROTOCOL

As and for their Memorandum of Law in support of their Motion to Compel and for Entry of Defendants' ESI Protocol ("Motion"), Defendants Sean Conlon, Steven Dry, Donna Zagorski, Steven Balourdos, Gloria Sguros, and Anthony D'Costa (collectively, "Defendants"), pursuant to Federal Rules of Civil Procedure 26 and 37, state as follows:

**I.  INTRODUCTION**

Notwithstanding the fact that it initiated this lawsuit against Defendants, which seeks to recover over $114 million in alleged damages based on Defendants' approval of 20 loans (the "Loss Loans") at Broadway Bank ("Broadway" or the "Bank"), Plaintiff Federal Deposit Insurance Corporation, as Receiver for Broadway ("FDIC-R"), refuses to abide by its discovery obligations under the Federal Rules of Civil Procedure. In particular, the FDIC-R refuses to perform its own responsiveness review before it produces electronic documents to Defendants, and it hopes to dump hundreds of thousands, if not millions, of documents on Defendants for Defendants' review instead.

In addition, the FDIC-R persists in avoiding its obligation to organize and label its electronic document production to correspond to Defendants' Requests for Production under Federal Rule of Civil Procedure 34 ("Rule 34").

As set forth below, Defendants worked in good faith to resolve most of the Parties' differences regarding the entry of a protocol for the discovery of electronically stored information ("ESI") in this matter, which included participating in multiple "meet and confer" telephone conferences and submitting various letters to the FDIC-R. Due to this extensive "meet and confer" process, the Parties were able to narrow the scope of their differences to the following issues: whether the FDIC-R is required to comply with Rule 34 when reviewing and producing its electronic documents and whether the FDIC-R is required to pay for the costs associated with its electronic document production. The Federal Rules of Civil Procedure mandate that the FDIC-R, like any other litigant, is required to both comply with Rule 34 and to pay for the costs associated with its electronic document production in this case. Therefore, Defendants respectfully request that this Court (i) grant Defendants' Motion; (ii) order the FDIC-R to review its electronic documents for responsiveness before producing its electronic documents to Defendants; (iii) order the FDIC-R to organize and label its electronic document production to correspond to Defendants' Requests for Production in accordance with Rule 34; and (iv) order the FDIC-R to pay for the costs associated with its electronic document production.

Defendants likewise move this Court for entry of Defendants' proposed ESI protocol, a true and correct copy of which is attached hereto as **Exhibit A**. The ESI protocol proposed by Defendants is reasonable and appropriate in this case in that it simply requires the FDIC-R to comply with its obligations under Rule 34 to perform its own responsiveness review and to organize and label its electronic documents based on Defendants' Requests for Production. Defendants' proposed ESI protocol likewise requires that the FDIC-R produce its electronic documents at its

own expense, as the presumption under the Federal Rules of Civil Procedure is that the responding party must bear the costs of complying with discovery. The FDIC-R's insistence on charging Defendants a hosting fee or a per-page production cost for the production of its electronic documents is a transparent and improper attempt by the FDIC-R to recoup its past expenses and to shift its production obligations to Defendants.

For all of these reasons, and for the reasons set forth below, this Court should grant Defendants' Motion to Compel and for Entry of Defendants' ESI Protocol.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Status of Discovery

Since Broadway closed on April 23, 2010 and the FDIC was appointed as receiver, the FDIC-R has been in the possession of all of the Bank's documents, whether they exist in paper or electronic format (the "Bank Documents"). The Bank Documents include, among other things, what the FDIC-R represents to be the loan files for each of the Loss Loans alleged in the FDIC-R's First Amended Complaint (the "Complaint"), the Bank's loan policies, Board of Director meeting minutes, packets, and materials, financial reports of the Banks, e-mails from the Bank's e-mail server, and various others forms of electronic data pulled from the Bank's servers and databases. Counsel for the FDIC-R also represented to Defendants' counsel that the Bank Documents, regardless of their original format, were loaded into various electronic databases that have remained in the exclusive control of the FDIC.

On May 8, 2013, Defendants issued their First Set of Requests for Production and First Set of Interrogatories to the FDIC-R. The FDIC-R's discovery responses are due by July 10, 2013.

### B.   The ESI Protocol and the FDIC-R's Refusal to Comply with Rule 34

On March 4, 2013, the FDIC-R submitted its proposed ESI protocol to Defendants, which it described as the "most current ESI protocol in use by the FDIC." A true and correct copy of the

FDIC's March 4, 2013 correspondence and originally proposed ESI protocol is attached hereto as **Exhibit B**. The procedure under the FDIC-R's originally proposed ESI protocol called for the following: (i) the Parties would meet and confer to establish agreed-upon search terms; (ii) the FDIC-R would next apply those agreed-upon search terms to filer and export the captured ESI to an electronic database called Relativity; (iii) Defendants would then be granted access to the Relativity database to inspect and designate documents that they wished to have the FDIC-R produce to them; and (iv) Defendants would pay $0.06 per page for the ESI eventually produced to them as .TIFF images by the FDIC-R. On March 22, 2013, the FDIC-R submitted a new draft ESI protocol to Defendants, which, now required that Defendants pay a monthly hosting fee of $10 per gigabyte when they would be granted access to the Relativity database in order to inspect and designate the FDIC-R's ESI for production.

The Parties then participated in several "meet and confer" telephone conferences regarding the ESI protocol from March 25, 2013 onward.[1] During such "meet and confer" conferences, Defendants informed the FDIC-R that it, as the *responding* party, was required to perform its own responsiveness review before it produced electronic documents to Defendants. Defendants, as the *requesting* party, on the other hand, had no obligation to perform the FDIC-R's responsiveness review for it. In addition, Defendants objected to both the FDIC-R's proposed $10 per gigabyte monthly hosting free and its proposed $0.06 per page production cost because the FDIC-R is required to bear the expense of complying with discovery requests.

On April 30, 2013 and in an effort to facilitate the Parties' ongoing discussions regarding the ESI protocol, Defendants submitted their revisions to the ESI protocol. Defendants' ESI protocol tracked the requirements of the Federal Rules of Civil Procedure by requiring the FDIC-R to review is ESI for responsiveness and then produce, at its own expense, its responsive electronic documents.

---

[1] Attached as **Exhibit C** is a June 6, 2013 correspondence from Defendants' counsel to the FDIC-R's counsel, which describes the Parties' various "meet and confer" conferences in greater detail.

CHICAGO/#2462331.1

Further, in accordance with Rule 34, the FDIC-R would be required to label and organize its electronic documents to correspond to Defendants' particular Requests for Production.

After participating in additional "meet and confer" telephone conferences regarding Defendants' proposed revisions to the ESI protocol, Defendants submitted a "meet and confer" correspondence to the FDIC-R on May 20, 2013, a true and correct copy of which is attached hereto as **Exhibit D**. In this May 20, 2013 correspondence, Defendants again set forth their position regarding the FDIC-R's obligations to (i) perform a responsiveness review before it produced electronic documents to Defendants, (ii) label and organize their electronic document production to correspond to Defendants' Requests for Production, and (iii) pay for the costs associated with their electronic document production. Next, on May 22, 2013, the FDIC-R submitted a revised ESI protocol, pursuant to which the FDIC-R proposed that, to the extent certain documents were readily identifiable without the use of search terms (i.e., the loan files for the Loss Loans, the Bank's loan policies, Board of Director meeting minutes), it would produce such documents without using search terms. Moreover, the FDIC-R proposed the following cost options for the production of ESI that required the use of search terms: Defendants would pay $0.06 per page for the production of ESI in .TIFF or Defendants would incur no costs if they agreed to receive ESI produced in native format. Per the FDIC-R's proposed ESI protocol, if Defendants elected to receive the FDIC-R's ESI in native format, then whichever party that decided to use a natively-produced document would be required to have that document converted into a static image and Bates stamped.

After participating in additional "meet and confer" conferences, Defendants submitted another "meet and confer" letter to the FDIC-R, along with proposed revisions to the ESI protocol, on June 6, 2013. *See* **Exhibit C**. Defendants' June 6, 2013 correspondence reiterated their objections to the FDIC-R's (i) refusal to perform a responsiveness review, (ii) unwillingness to label and organize its electronic production to correspond to Defendants' Requests for Production, and

(iii) imposition of a monthly hosting fee and any other cost associated with the FDIC-R's production of ESI. In the spirit of compromise, Defendants accommodated the FDIC-R's request to produce its ESI in native format and agreed that the production of the FDIC-R's ESI amenable to search terms could be produced in native format. Defendants still required the FDIC-R to Bates stamp its electronic documents before they were produced.

On June 7, 2013, and June 13, 2013, the Parties participated in additional "meet and confer" telephone conferences to discuss the ESI protocol and whether the FDIC-R would continue to refuse to perform its own responsiveness review and to organize its electronic document production. During the June 13, 2013 "meet and confer" call, the FDIC-R persisted in refusing to comply with its obligations under Rule 34. On June 14, 2013, Defendants submitted another revised ESI protocol to the FDIC-R, which is in the same form as the ESI protocol that Defendants are requesting that this Court enter. (*See* **Exhibit A**.)[2]

### C. The FDIC-R's "Production" of Documents

In advance of the July 10, 2013 deadline for its discovery responses, the FDIC-R has dumped nearly 500,000 pages of documents on Defendants in another attempt to circumvent its production obligations under Rule 34. These documents have included what the FDIC-R claims to be the loan files for the Loss Loans, the Bank's loan policies, final Board of Director meeting minutes, regulatory correspondence, and various third-party productions received by the FDIC-R during its pre-Complaint investigation into Broadway Bank. There are multiple deficiencies plaguing the FDIC-R's attempted "production" of documents to Defendants. In addition to failing to provide Defendants with copies of the original loan files for the Loss Loans,[3] the FDIC-R has provided incomplete Board of Director meeting minutes in what appear to be draft format. On June

---

[2] A true and correct copy of the FDIC-R's latest proposed ESI protocol is attached hereto as **Exhibit E**.
[3] The FDIC-R also refuses to make the original loan files for the Loss Loans available for inspection by Defendants. It likewise refuses to explain where the original loan files are located.

6

26, 2013, Defendants sent the FDIC-R a letter detailing the multiple deficiencies associated with the FDIC-R's purported production of documents to date, a true and correct copy of which is attached hereto as **Exhibit F**. As of the date of this Motion, the FDIC-R has not responded to Defendants' June 26, 2013 letter, nor has it attempted to remedy the various problems plaguing its document dump.

Equally troubling is the FDIC-R's failure to identify which documents correspond to Defendants' particular Requests for Production. The FDIC-R has provided nearly 500,000 pages of documents to Defendants in a haphazard fashion in advance of the July 10, 2013 discovery response deadline without specifying any corresponding Requests for Production. As a result, unless the FDIC-R identifies these documents by corresponding Bates numbers when it provides its discovery responses on July 10, 2013, the FDIC-R will again fail to comply with the requirements of Rule 34.

### III.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 26(b)(1) "parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." FED R. CIV. P. 26(b)(1). District courts have broad discretion in ruling on motions to compel, and "may fashion a ruling appropriate for the circumstances of the case." *Gile v. United Air Lines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996).

Rule 34 governs the production of documents and ESI. Where a party has failed to comply with Rule 34, a motion to compel is appropriate. Federal Rule of Civil Procedure 37(a)(1) provides: "On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED R. CIV. P. 37(a).

7

Pursuant to Rule 37(a)(1) and Local Rule 37.2, and as set forth above, the Parties have exchanged multiple letters and conferred via several telephone conferences since March 25, 2013 regarding the issues now presented to this Court. After extensive consultation and good faith attempts to resolve their differences, the Parties were unable to reach an accord. Accordingly, the circumstances now call for judicial intervention.

## IV. ARGUMENT

### A. The FDIC-R Is Required to Organize Its Electronic Document Production to Correspond to Defendants' Requests for Production

Rule 34 requires that a responding party that is producing electronically-stored information must "produce documents as they are kept in the usual course of business *or* [ ] organize and label them to correspond to the categories in the request." Fed. R. Civ. Pro. 34(b)(2)(E)(i) (emphasis added). This provision is intended to prevent a responding party from "simply dumping large quantities of unrequested materials onto the discovering party along with the items actually sought." *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 409-410 (S.D.N.Y. 2009). A producing party "fails to meet its Rule 34 obligations by producing a mass of undifferentiated documents for the responding party to inspect." *Armor Screen Corp. v. Storm Catcher, Inc.*, No. 07-81091-CIV, 2009 WL 291160, at *7-9 (S.D. Fla. Feb. 5, 2009).

Courts in the Northern District of Illinois have required responding parties to identify, by Bates number, which documents correspond to particular documents requests. In *FDIC v. Spangler*, a lawsuit brought by the FDIC-R against a different failed bank, the court in that case ordered the FDIC-R to identify, by Bates number, which documents were responsive to each document request in accordance with Rule 34. *FDIC v. Spangler*, No. 10-cv-4288, Docket No. 156 (N.D. Ill. Aug. 6, 2012).[4] Other decisions from the Northern District of Illinois have also required responding parties to so label and organize their document productions. *See Glover v. Bd. of Ed.*, No. 02 C 50143,

---

[4] A true and correct copy of the *Spangler* decision is attached hereto as **Exhibit G**.

8

2004 WL 785270, at *2 (N.D. Ill. Apr. 12, 2004) (noting that Rule 34 "requires that a party must organize and label responsive documents to correspond to the categories requested" and ordering the responding party to Bates stamp all documents produced and indicate which documents correspond to the categories requested).

The FDIC-R itself has recognized that litigants are required to produce and organize their document productions to correspond to document requests. Indeed, the FDIC-R moved the court in another lawsuit, requesting, as Defendants are doing here, that the court order another party to organize its production of documents to correspond to the FDIC-R's requests for production in accordance with Rule 34. *See Deutsche Bank Nat'l Trust Co. v. FDIC*, No. 09-cv-1656-RMC, Docket No. 115 (D.C. June 7, 2012), a true and correct copy of which is attached hereto as **Exhibit H**. Thus, the FDIC-R is now attempting to avoid the very discovery obligations that it previously sought to enforce.

If a producing party seeks to exercise the option to produce documents in the "usual course of business," it is that party's burden to establish that its documents were so kept. *Nolan, LLC v. TDC Int'l, Corp.*, No. 06-cv-14907 (DT), 2007 WL 3408584, at *2 (E.D. Mich. Nov. 15, 2007). This requires providing information including where the documents were maintained, who maintained them, and whether they came from one source or multiple sources. *Id.* Here, the FDIC-R is unable to show that its ESI has been maintained in the "usual course of business." Indeed, other courts that have previously addressed this issue have held that such ESI, as contained in various electronic databases to be loaded onto Relativity, is not kept in the "usual course of business" as set forth in Rule 34. *See FDIC v. Appleton*, No. 1:11-cv-00476-JAK, Dkt. No. 188 (C.D. Cal. Nov. 29, 2012) (noting that there was "no convincing representation that documents from the Bank were loaded onto the server in such a way as to maintain them as they were kept in the ordinary course of the Bank's business, or that when documents were loaded into Relativity they

somehow were converted back to the manner in which they were maintained by the Bank").[5] In *Appleton*, the FDIC-R noted that there was no "internal organization" to the FDIC-R's documents; nor was there any "representation that the documents are maintained by production request number, or by topic folders that the Bank may have created." *Id.* As such, the court in *Appleton* ordered the FDIC-R to identify which electronic documents corresponded to particular discovery requests by creating a file in Relativity into which it was required to place its electronic documents responsive to a specific document request. *Id.*

As in *Appleton*, the FDIC-R here has failed to meet its burden of establishing that its electronic documents were maintained in the "usual course of business" of Broadway Bank. *Id.* In addition, the FDIC-R's incomplete, deficient production of its documents to date, such as the loan files for the Loss Loans and the Board of Director meeting minutes, further highlights that the FDIC-R has failed to maintain the documents of Broadway Bank in their original form or as they existed in the "usual course of business" of the Bank. *See* **Exhibit F**. For all of these reasons, the FDIC-R is required to organize and label its production to correspond to Defendants' Requests for Production under Rule 34, including any and all documents that the FDIC-R has already provided to Defendants in advance of the July 10, 2013 discovery response deadline.

B. **The FDIC-R Is Required to Perform A Responsive Review Before It Produces Electronic Documents to Defendants**

Rule 34 also requires the FDIC-R to perform a responsiveness review before producing its electronic documents to Defendants. A producing party has an obligation to sort through its documents and produce only those documents that respond to a request for production. *See Rothman v. Emory Univ.*, 123 F.3d 446, 455 (7th Cir. 1997). Further, in order to organize and label its documents in response to Defendants' particular Requests for Production, the FDIC-R must review its ESI for responsiveness. In a recent decision interpreting Rule 34 in a lawsuit brought by

---

[5] A true and correct copy of the *Appleton* decision is attached hereto as **Exhibit I**.

the FDIC-R, the Court entered the defendants' proposed ESI protocol and held that the FDIC-R, as opposed to the defendants, was required to perform a responsiveness review before producing its documents to the defendants. *FDIC v. Briscoe*, No. 1:11-cv-2303-SCJ, Dkt. No. 98 (N.D. Ga. June 4, 2013).[6] In reaching this conclusion, the court rejected the FDIC-R's argument that its production burden would be satisfied by making potentially responsive documents available to the defendants for their review. *Id*. The court noted such a "grab bag of documents" would likely contain a combination of relevant and irrelevant documents even with the use of search terms. *Id*. The court also rejected the FDIC-R's proposal to produce documents organized into folders based on corresponding search terms. *Id*. Instead, the court stated that Rule 34 "contemplates the organized production of documents," such that documents must be labeled to correspond to the categories in the defendants' requests for production. *Id*. Indeed, as the court held, "[t]his level of organization will be possible only if the FDIC-R performs a responsiveness review, as proposed by Defendants." *Id*. Notably, the FDIC-R, in its own motion in the *Deutsche Bank* case, likewise recognized that litigants are required to only produce responsive documents in litigation. *See* **Exhibit H**. Thus, the FDIC-R should not be permitted to evade the very discovery obligations that it sought to enforce in the past against others.

In another recent case involving litigation brought by the FDIC-R, the court adopted the Defendants' proposed ESI protocol, which required the FDIC-R, at its own expense, to apply the search terms to filter e-mails, perform a responsiveness review, and ultimately produce all non-privileged e-mails responsive to the Defendants' document requests. *See FDIC v. Klein*, No. 1:12-cv-0896-RLV, Dkt. No. 104 (N.D. Ga. December 13, 2012). In the instant case, the FDIC-R is required to review its own electronic documents for responsiveness, and it cannot shift the burden of its responsiveness review to Defendants. The FDIC-R's proposed version of the ESI protocol,

---

[6] A true and correct copy of the *Briscoe* decision is attached hereto as **Exhibit J**.

CHICAGO/#2462331.1

which requires that Defendants review electronic documents provided by the FDIC-R and then "tag" those documents that Defendants believe should be produced, does not comply with Rule 34. Therefore, this Court should compel the FDIC-R to perform a responsiveness review before it produces its electronic documents to Defendants.

    C.    **The FDIC-R Is Required to Pay for the Costs of Its Electronic Document Production**

The presumption under the Federal Rules of Civil Procedure is that "the responding party must bear the expense of complying with discovery requests." *Briscoe*, No. 1:11-cv-2303-SCJ, Dkt. No. 98; *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978); *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 282 (S.D.N.Y. 2003). The FDIC-R is subject to the same rules that govern any party in litigation. *See Appleton*, No. 2:11-cv-00476-JAK, Dkt. No. 148 (C.D. Cal. Aug. 27, 2012); *Sperandeo v. Milk Drivers & Dairy Employees Local Union No. 537*, 334 F.2d 381, 383 (10th Cir. 1964); *U.S. ex rel. Roby v. Boeing Co.*, 189 F.R.D. 512, 517 (S.D. Ohio 1999). As such, the FDIC-R must bear the costs associated with its electronic production in this case.

Any production costs incurred by the FDIC-R with respect to its ESI are not akin to paper copying costs, as the FDIC-R contended during the Parties' multiple "meet and confer" conferences. Indeed, this proposition has been flatly rejected by courts when it was raised by the FDIC-R in other lawsuits. *See W Holding Co., Inc. v. Chartis Ins. Co. of Puerto Rico*, No. 11-2271 (GAG/BJM), 2013 WL 1352426, at *4 (D. P.R. Apr. 3, 2013) (a true and correct copy of which is attached hereto as **Exhibit K**.) In particular, the court in *W Holding Co.* noted that the FDIC-R failed to explain how its production costs—scanning and performing OCR, creating static images, Bates stamping, and privilege review—were "outside the realm of gathering and preparation expenses customarily borne by responding parties." *Id.*

There is also no basis for cost-shifting in this case. That is because cost-shifting is only available where the electronic documents at issue are "inaccessible." *Zubulake v. UBS Warburg*

*LLC*, 217 F.R.D. 309, 318-20 (S.D.N.Y. 2003). ESI is "inaccessible" when, for example, it is on backup tapes. *Id*. Here, the FDIC-R has only created electronic databases that contain ESI relating to Broadway Bank. There has been no indication that any of the ESI contained on the databases created by the FDIC-R is somehow inaccessible. Thus, the cost-shifting factors set forth in *Zubulake* should not even be considered because the ESI at issue in this case is accessible. *Id*. at 320. Notably, even if the ESI involved in this case was "inaccessible," application of the *Zubulake* cost-shifting factors does not weigh in favor of cost-shifting. *Id*. at 322 (setting forth the cost-shifting factors).

Courts in other lawsuits brought by the FDIC-R against former officers and directors in other jurisdictions have rejected attempts by the FDIC-R to force the Defendants to pay for the costs associated with the FDIC-R's document production, whether in the form of hosting fees or a per-page production cost. *See Klein*, No. 1:12-cv-0896-RLV, Dkt. No. 104; *FDIC v. Baker*, 1:12-CV-4173-RWS, Docket No. 20 (N.D. Ga. Apr. 18, 2013); *FDIC v. Blackwell*, No. 1:11-CV-3423-RWS, Dkt. No. 131 (N.D. Ga. May 7, 2013); *W Holding Co., Inc. v. Chartis Ins. Co. of Puerto Rico*, No. 11-2271 (GAG/BJM), Docket Nos. 467 (D. P.R. Apr. 3, 2013).

In light of these cases, the Court should reject any attempt by the FDIC-R to shift the costs of its electronic production to Defendants, whether in the form of the $0.06 per page production cost or the monthly $10 per gigabyte hosting fee. In addition, because the FDIC-R is required to review its ESI for responsiveness before producing electronic documents, the monthly hosting fee is unnecessary where Defendants will not even need to access the FDIC-R's proposed Relativity database. The $0.06 per page production cost is likewise unnecessary where Defendants have accommodated the FDIC-R and agreed that the production of ESI that is amenable to the parties' agreed search terms can occur in native format. *See* **Exhibit A**. However, when the FDIC-R produces it documents in native format, it, as the responding party, will be required to Bates stamp

13

its document production. *See, e.g., Glover*, 2004 WL 785270, at *2 (ordering the responding party to Bates stamp all documents produced and indicate which documents correspond to the categories requested). For all of these reasons, the Court should reject any attempt by the FDIC-R to shift, or otherwise re-coup, its costs of electronic production from Defendants and should instead enter Defendants' proposed ESI protocol.

### D. Defendants' Proposed ESI Protocol Should Be Adopted by the Court

Defendants' proposed ESI protocol complies with Rule 34 by requiring the FDIC-R to perform its own responsiveness review and by requiring the FDIC-R to organize and identify its electronic document production by Bates number to correspond to Defendants' Requests for Production. *See* **Exhibit A**, ¶ 7, Ex. A, pp. 9–10. It likewise requires that the FDIC-R pay for the costs associated with its electronic document production, as required under the Federal Rules of Civil Procedure. *Id*. ¶ 7. Other courts have adopted similar ESI protocols proposed by defendants in litigation involving former officers and directors. *See, e.g., Klein*, No. 1:12-cv-0896-RLV, Dkt. No. 104; *Briscoe*, No. 1:11-cv-2303-SCJ, Dkt. No. 98. Accordingly, for the reasons set forth above in Sections IV(A)–(C), Defendants' proposed ESI protocol attached as **Exhibit A** is reasonable and appropriate and should be entered by this Court.

### V. CONCLUSION

For each of the foregoing reasons, Defendants respectfully request that this Court (i) grant Defendants' Motion to Compel and for Entry of Defendants' ESI Protocol; (ii) compel the FDIC-R to perform a responsiveness review before it produces electronic documents to Defendants; (iii) compel the FDIC-R to organize and identify its electronic document production by Bates number to correspond to Defendants' Requests for Production, including any documents that have been previously produced by the FDIC-R to date; (iv) require the FDIC-R to pay for the costs of its electronic document production to Defendants; (v) adopt and enter Defendants' proposed ESI

14

protocol attached hereto as **Exhibit A**; and (vi) award Defendants any such other relief that the Court deems just and proper.

          Respectfully submitted,

          SEAN CONLON, STEVEN DRY, DONNA ZAGORSKI, STEVEN BALOURDOS, GLORIA SGUROS, and ANTHONY D'COSTA

          By:   /s/ Rachel T. Copenhaver
                One of Their Attorneys

Randall M. Lending
Rachel T. Copenhaver
Vedder Price P.C.
222 North LaSalle Street
Suite 2600
Chicago, Illinois 60601-1003
T: +1 (312) 609-7500

Dated:     July 2, 2013

15

## CERTIFICATE OF SERVICE

I, Rachel T. Copenhaver, an attorney, hereby certify that on July 2, 2013, I caused to be electronically filed the foregoing CERTAIN DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL AND FOR ENTRY OF DEFENDANTS' ESI PROTOCOL with the Clerk of the Court using the Court's Case Management/Electronic Case Files (CM/ECF) system, which will send notifications of such filing to the following counsel of record:

| | |
|---|---|
| Susan G. Feibus | sgfeibus@uhlaw.com |
| Dean J. Polales | djpolales@uhlaw.com |
| F. Thomas Hecht | fthecht@uhlaw.com |
| Richard Henry Tilghman | rhtilghman@uhlaw.com |
| Robert J. Ambrose | rambrose@howardandhoward.com |
| Joseph W. Barber | jwbarber@howardandhoward.com |
| David C. Van Dyke | dvd@h2law.com |
| Scott C. Frost | sfrost@howardandhoward.com |
| Bryan Thomas Mohler | bmohler@pryorcashman.com |
| Eric Y. Choi | echoi@ngelaw.com |
| William Laurence Charron | wcharron@pryorcashman.com |

/s/ Rachel T. Copenhaver