IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR BROADWAY BANK,<br><br>    Plaintiff,<br><br>v.<br><br>DEMETRIS GIANNOULIAS, GEORGE GIANNOULIAS, JAMES MCMAHON, SEAN CONLON, STEVEN DRY, DONNA ZAGORSKI, STEVEN BALOURDOS, GLORIA SGUROS, ANTHONY D'COSTA,<br><br>    Defendants. | No. 12-cv-1665<br><br>JURY DEMANDED<br><br>Judge John F. Grady |

**CERTAIN DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL AND FOR ENTRY OF DEFENDANTS' ESI PROTOCOL AND RESPONSE IN OPPOSITION TO PLAINTIFFS MOTION FOR PROTECTIVE ORDER**

Defendants Sean Conlon, Steven Dry, Donna Zagorski, Steven Balourdos, Gloria Sguros, and Anthony D'Costa (collectively, "Defendants"), reply in support of their Motion to Compel and for Entry of Defendants' ESI Protocol ("Motion to Compel"), pursuant to Federal Rules of Civil Procedure 26 and 37 and Docket Nos. 91 and 92, and respond in opposition to the Motion for Protective Order filed by Plaintiff Federal Deposit Insurance Corporation, as Receiver for Broadway Bank ("FDIC-R"), as follows:

**I.    INTRODUCTION**

As both Defendants' Motion to Compel and the FDIC-R's Motion for Protective Order make clear, the central issue in dispute between the Parties is the FDIC-R's production obligations with respect to the electronically-stored information ("ESI") in its possession that requires the use of search terms. Thus, while the FDIC-R has produced certain documents to Defendants that did not require the use of search terms, in what the FDIC-R has called "Phase One" of discovery, the

focus of both Defendants' Motion to Compel and the FDIC-R's Motion for Protective Order is the remaining production of the FDIC-R's ESI through the use of search terms in "Phase Two." In particular, the crux of the Parties' discovery dispute is Federal Rule of Civil Procedure 34 ("Rule 34"). Despite filing this lawsuit against Defendants, the FDIC-R continues to avoid its obligations under Rule 34 by refusing to perform its own responsiveness review before producing its ESI during Phase Two to Defendants. Instead, the FDIC-R intends, as it proposes in its ESI protocol, to dump potentially millions of responsive and non-responsive documents alike onto Defendants for Defendants to review. Moreover, the FDIC-R refuses to organize and label its ESI production (as well as its electronic documents produced thus far during Phase One) to correspond to Defendants' Requests for Production. In addition to avoiding its obligations under Rule 34, the FDIC-R is attempting to improperly shift the costs associated with its electronic production to Defendants in contravention of the Federal Rules of Civil Procedure.

For the reasons set forth herein and in Defendants' Motion to Compel, the FDIC-R's Motion for Protective Order should be denied, and Defendants' Motion to Compel should be granted in its entirety. Specifically, the FDIC-R should be required to (i) review its electronic documents for responsiveness before producing its ESI to Defendants; (ii) organize and label its electronic document production (for both Phase One and Phase Two) to correspond to Defendants' particular Requests for Production; (iii) and pay for all of the costs associated with its production of ESI to Defendants. Finally, this Court should adopt Defendants' proposed ESI protocol since it complies with both Rule 34 and the presumption under the Federal Rules of Civil Procedure that responding parties are required to bear the costs of production.

CHICAGO/#2471828.2

## II.  ARGUMENT

### A.  There Is No Basis to Grant The FDIC-R's Motion for Protective Order and the FDIC-R Should Be Compelled to Comply With Rule 34

The FDIC-R should not be permitted to obtain a protective order from this Court in order to avoid its obligations under Rule 34 and thereby shift the FDIC-R's burden and expense of producing responsive documents upon Defendants.  That is because the FDIC-R, like any other litigant, is required to perform a responsiveness review before it produces documents and to organize and label its electronic document production to correspond to Defendants' Requests for Production.  Both the FDIC-R's Motion for Protective Order and its Response brief fail to demonstrate how its plan to dump hundreds of thousands, if not millions, of documents on Defendants, for Defendants' own review, complies with Rule 34.  Instead, as set forth below and in Defendants' Motion to Compel, the FDIC-R should be compelled to comply with the requirements of Rule 34 and ordered to (i) perform a responsiveness review before it produces electronic documents to Defendants and (ii) organize and label its electronic document production by Bates number to correspond to Defendants' Requests for Production.

#### 1.  Rule 34 Requires the FDIC-R to Review Its Electronic Document Production for Responsiveness

Contrary to the FDIC-R's assertion in its Motion for Protective Order and Response, Defendants are not instructing the FDIC-R to perform a "unilateral page-by-page responsiveness review." (Motion for Protective Order at 8, 10; Response at 3.)  All that Defendants are asking is for the FDIC-R to comply with its obligations under Rule 34 to review its electronic documents and only produce those documents that respond to Defendants' Requests for Production.  *See Rothman v. Emory Univ.*, 123 F.3d 446, 455 (7th Cir. 1997).  Thus, Defendants' proposed ESI protocol, which simply requires the FDIC-R to comply with Rule 34 by performing its own responsiveness review, should be adopted by this Court, rather than the FDIC-R's proposed ESI protocol, which

3

improperly shifts the responsiveness review to Defendants instead. *See FDIC v. Briscoe*, No. 1:11-cv-2303-SCJ, Dkt. No. 98 (N.D. Ga. June 4, 2013) (entering the defendants' proposed ESI protocol and requiring the FDIC-R to perform a responsiveness review *before* producing documents to the defendants); *FDIC v. Klein*, No. 1:12-cv-0896-RLV, Dkt. No. 104 (N.D. Ga. Dec. 13, 2012) (adopting the defendants' ESI protocol in litigation brought by the FDIC-R, which required the FDIC-R, at its own expense, to apply the search terms to filer e-mails, perform a responsiveness review, and produce all non-privileged e-mails responsive to the defendants' document requests); *see also, e.g., Rothman*, 123 F.3d at 455.

The fact that the production of ESI is involved in this case does not relieve the FDIC-R of its requirement to review its electronic documents for responsiveness, as it suggests in its Response brief. (Response at 4.) Indeed, in a recent decision involving the production of ESI by the FDIC-R, a court rejected the FDIC-R's argument that its production burden would be satisfied by making potentially responsive documents available to the defendants for their review and held instead that the FDIC-R was required to review its documents for responsiveness before producing them. *Briscoe*, No. 1:11-cv-2303-SCJ, Dkt. No. 98 (N.D. Ga. June 4, 2013). In particular, the court noted that the FDIC-R's proposed "grab bag of documents" would likely contain irrelevant documents even with the use of search terms and that Rule 34 "contemplates the organized production of documents," which "will be possible only if the FDIC-R performs a responsiveness review, as proposed by Defendants." *Id*. (*See also* Motion to Compel at 11; Exhibit J.)[1]

The *Treppel* and *Velocity Press, Inc.* cases cited by the FDIC-R do not support the FDIC-R's assertion that it somehow is not required to review its electronic documents for responsiveness. (Motion for Protective Order at 8–9.) Instead, the court in *Treppel* noted that a party's

---

[1] The FDIC-R's attempt to distinguish the *Briscoe* decision, as well as *FDIC v. Klein*, on the basis that they are not from the Northern District of Illinois is disingenuous when the FDIC-R has cited to various decisions from other jurisdictions in support of its arguments in favor of its ESI protocol. (Motion for Protective Order at 14; Response at 9.)

4

comprehensive search strategy could include "identifying key employees and *reviewing* any of their files that are likely to be relevant to the claims in the litigation." *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) (emphasis added). Thus, the *Treppel* decision does not stand for the proposition that a producing party is not required to perform its own responsiveness review. Likewise, the court in *Velocity Press, Inc.* only noted that a party is required to conduct a "diligent search" in searching for relevant data; this decision did not address the performance of responsiveness reviews. *Velocity Press, Inc. v. Key Bank, N.A.*, No. 2:09-cv-520, 2011 WL 1584720, at * 3 (D. Utah Apr. 26, 2011). Indeed, both the *Treppel* and *Velocity Press, Inc.* cases demonstrate that searches are merely used for the identification of potentially responsive documents. Once potentially responsive documents are identified through searches, the producing party must then review those documents and produce responsive documents in accordance with Rule 34.

The FDIC-R's citations to the *Sedona Principles* and the *Seventh Circuit's Principles Relating to the Discovery of Electronically Stored Information* also do not support the FDIC-R's position that it is relieved of its obligation to perform a responsiveness review by simply employing the use of search terms. (Motion for Protective Order at 9; Response at 4.) The portions cited by the FDIC-R in its Motion for Protective Order relate only to the identification of potentially responsive data through the cooperation of the parties and the use of methodologies to filter data. (*Id.*) However, these suggested search strategies do not discuss, let alone relieve the FDIC-R of, the obligation to review electronic documents after the search terms are used and before documents are produced pursuant to Rule 34.

Moreover, none of the other cases cited by the FDIC-R establish that the use of search terms in this case fully satisfies the FDIC-R's obligations under Rule 34(b). For example, *In re Lorzepam & Clorazepate Anti-trust Litigation* does not hold that the need for a responsiveness review is

5

eliminated when a party provides text-searchable ESI and metadata. This decision did not even address whether a party was required to perform a responsiveness review. Rather, it only concerned an electronic production of documents that was not made readable for the other side. 300 F. Supp. 2d 43, 46–47 (D.D.C. 2004). The FDIC-R's reliance on *Radian Asset Assurance, Inc.* is also unavailing because it involved the processing and production of ESI contained on inaccessible back-up tapes, as opposed to the readily accessible ESI at issue here, which is contained on existing databases created and maintained by the FDIC-R. *Radian Asset Assurance, Inc. v. Col. Of the Christian Bros. of New Mexico*, No. CIV 09-0885 ZJB/DJS, 2010 WL 4928866, at *5, 9 (D.N.M. Oct. 22, 2010). The FDIC-R's citation to the *Williams* case does not support its view that the use of agreed-upon search terms satisfies the FDIC-R's production obligations under Rule 34. In fact, in *Williams*, the court ordered the producing party to review the documents captured by search terms for privilege before they were produced. *Williams v. Taser*, No. 1:06-CV-005-RWS, 2007 WL 1630875, at *7 (N.D. Ga. June 4, 2007). Here, in contrast, under its proposed ESI protocol, the FDIC-R does not even want to review its potentially responsive documents for privilege (or responsiveness) before it dumps them on the Relativity database for Defendants' review. (Motion for Protective Order at 2; Dkt. No. 89, Ex. A, ¶¶ 7, 8.)

Finally, the FDIC-R cites no authority in support of its argument that it should be relieved of its obligation to review its electronic documents for responsiveness due to the potential amount of time or potential costs (in terms of attorney review hours) associated with its review. (Motion for Protective Order at 10; Response at 4–5.) The FDIC-R initiated this lawsuit against Defendants, and it should not be permitted to avoid its discovery obligations because it does not want to spend time or money to review the potentially responsiveness documents that are in its sole possession. The FDIC-R should certainly not be permitted to shift the burden and costs associated with the

review of its electronic documents to Defendants instead.[2] For all of these reasons, the FDIC-R's Motion for Protective Order should be denied, and Defendants' Motion to Compel should be granted.

### 2. Rule 34 Requires the FDIC-R to Organize Its Electronic Document Production to Correspond to Defendants' Requests for Production

Requiring the FDIC-R to organize and label its document production to correspond to requests for production is not a novel request. Indeed, the FDIC-R has sought the very relief Defendants are seeking in another lawsuit, specifically requesting that the court order the other party to so organize its document production in accordance with Rule 34. *See* FDIC-R's Motion to Require JPMorgan Chase to Organize Its Production of Documents to FDIC-R to Correspond to FDIC-R's Requests for Production in *Deutsche Bank Nat'l Trust Co. v. FDIC*, No. 09-cv-1656-RMC, Dkt. No. 115 (D.C. June 7, 2012), attached as Exhibit H to Defendants' Motion to Compel. In its Response brief, the FDIC-R attempts–but fails–to explain why it is taking a contrary position with respect to its Rule 34 obligations now in this case. (Response at 6, n.3.) That is because, like the producing party in *Deutsche Bank*, the FDIC-R is trying to dump hundreds of thousands, if not millions, of documents that contain both potentially responsive documents and irrelevant documents on Defendants.

The FDIC-R's own case, *Pass & Seymour, Inc.*, recognizes that if a producing party wants to exercise the option to produce documents in the "usual course of business" pursuant to Rule 34(b), it is that party's burden to demonstrate that the documents at issue were so kept. *Pass & Seymour, Inc. v. Hubbell, Inc.*, 255 F.R.D. 331, 334 (N.D.N.Y. 2008). Indeed, as the court in *Pass & Seymour, Inc.* recognized, merely asserting that documents have been kept in the "usual course of

---

[2] The fact that the FDIC-R may have incurred over $567,000 in processing Bank files and ESI into its various databases is irrelevant to the decision before this Court now. (Motion for Protective Order at 5.) The FDIC-R incurred these costs before this litigation was filed, and thus, the FDIC-R should not be permitted to now recoup from Defendants the pre-litigation expenses that it elected to incur. *See* Dkt. No. 89, Ex. B, ¶ 13 (describing the costs incurred by the FDIC-R during "potential litigation").

CHICAGO/#2471828.2

business" is insufficient. *Id*. Furthermore, the court in *Pass & Seymour, Inc.* concluded that the plaintiff had failed to carry its burden in showing compliance with Rule 34(b)(2) and ordered the plaintiff to provide additional information regarding the organization of the documents at issue, including an index with information regarding custodians, locations, the filing system utilized, and format of the documents. *Id*. Thus, just like the plaintiff in *Pass & Seymour, Inc.*, the FDIC-R here has failed to meet its burden of establishing that its ESI has been maintained in the "usual course of business." *See also, e.g., Nolan, LLC v. TDC Int'l, Corp.*, No. 06-cv-14907 (DT), 2007 WL 3408584, at *2 (E.D. Mich. Nov. 15, 2007) (finding that party had failed to show that it produced documents as they were kept in the "usual course" where it did not reveal "where the documents came from, who maintained them or whether they came from one file or multiple files").

In its Response brief, the FDIC-R fails to address the portion of the *Appleton* decision that held that ESI, as contained in various electronic databases to be loaded onto Relativity, was not kept in the "usual course of business" under Rule 34. *See FDIC v. Appleton*, No. 1:11-cv-00476-JAK, Dkt. No. 188 (C.D. Cal. Nov. 29, 2012). As was the case in *Appleton*, here there has been "no convincing representation that documents from the Bank were loaded on the server in such a way as to maintain them as they were kept in the ordinary course of the Bank's business, or that when documents were loaded into Relativity they somehow were converted back to the manner in which they were maintained by the Bank." *Id*. Accordingly, just as the court ordered in *Appleton*, the Court here should require the FDIC-R to identify which electronic documents correspond to Defendants' particular document requests when it produces ESI during Phase Two. *Id.*

Notably, the FDIC-R has failed to demonstrate that its electronic documents will be produced in the "usual course" in accordance with the very requirements that exist in its own cited cases. (Motion for Protective Order at 11–12.) Instead, the FDIC-R misstates the requirements set forth in *MGP Ingredients, Inc.* and *Valeo Electrical Systems* in order to argue that its electronic

8

production will be in the "usual course." As *MGP Ingredients, Inc.* reveals, a party produces e-mails in the "usual course" when it arranges the e-mails by custodian and then places those e-mails in chronological order as found in the custodian's e-mail mailbox. *MGP Ingredients, Inc. v. Mars, Inc.*, No. 06-2318-JWL-DJW. 2007 WL 3010343, at * 2 (D. Kan. Oct. 15, 2007). The FDIC-R has failed to show how its production of e-mail with certain metadata complies with the requirements sets forth in *MGP Ingredients, Inc.* In addition, as explained by the FDIC-R's own cases, a party produces non-e-mail ESI in the "usual course" when it arranges that non-e-mail ESI by custodian and further arranges that ESI by directory within the custodian's files, then by subdirectory, and then by file name. *Id.*; *see also Valeo Electrical Sys., Inc. v. Cleveland Die & Mfg. Co.*, No. 08-cv-12486, 2009 WL 1803216, at *2 (E.D. Mich. June 17, 2009). Again, the FDIC-R's proposed production of non-e-mail ESI with certain metadata fails to comport with the prerequisites cited in the FDIC-R's cases. The FDIC-R's proposed use of the Relativity platform and its production of electronic documents in TIFF or native format are not an electronic production in the "usual course of business." The FDIC-R's reliance on the *Zakre* case is unavailing, since the court found in that case that the party was not required to organize its electronic document production where the e-mails at issue were maintained in the "usual course of business." *Zakre v. Norddeutsche Landesbank Girozentrate*, No. 03 Civ. 0257(RWS), 2004 WL 764895, at *1 (S.D.N.Y. Apr. 9, 2004). This case does not stand for the proposition that the production of e-mails are automatically considered to be in the "usual course of business." The FDIC-R has also offered no authority in support of its self-serving statements that its proposed production of Phase Two ESI satisfies Rule 34(b)'s "usual course of business" standard. (Motion for Protective Order at 13.)

Lastly, the FDIC-R's production of documents to date further establishes that the FDIC-R has not maintained any of its Bank documents, including those that fall within Phase I of the FDIC's production, in the "usual course of business." As set forth in Defendants' June 26, 2013

9

letter to the FDIC-R, the incomplete, deficient production of certain documents, including the loan files for the Loss Loans at issue in this case, demonstrates that the FDIC-R has not kept the Bank's documents in the "usual course of business." (*See* Motion to Compel, Exhibit F.) While the FDIC-R contends that it has produced documents in the forms obtained by the FDIC-R at the time of the Bank's closure, it has failed to make any representations regarding how these particular documents have been maintained since the time of closure.

Therefore, for all of these reasons, the FDIC-R's Motion for Protective Order should be denied, and Defendants' Motion to Compel should be granted. The FDIC-R should be required to organize and label its production of documents to correspond to Defendants' Requests for Production in accordance with Rule 34, including all ESI that is to be produced during Phase Two, as well as all documents that have already been provided to Defendants during Phase One.[3]

### B. Defendants' ESI Protocol Is Reasonable and Appropriate and Should Be Entered by the Court

#### 1. Defendants' ESI Protocol Complies with Rule 34

As set forth above and in Defendants' Motion to Compel, Defendants' proposed ESI protocol complies with Rule 34 by requiring the FDIC-R to perform its own responsiveness review and to organize and label its electronic production by Bates number to correspond to Defendants' Requests for Production. Thus, this Court should deny the FDIC-R's Motion for Protective Order and should adopt Defendants' proposed ESI protocol, which is attached as Exhibit A to Defendants' Motion for Protective Order.

---

[3] The FDIC-R's Objections and Responses to Defendants' Requests for Production, which Defendants received on July 11, 2013, do not comply with Rule 34 in that the FDIC-R fails to identify, by Bates numbers, the documents produced during Phase I which correspond to the particular Requests for Production.

10

### 2. The FDIC-R Is Required to Pay for the Costs Associated with Its Document Production

The FDIC-R does not (nor can it) dispute that the presumption under the Federal Rules of Civil Procedure is that "the responding party must bear the expense of complying with discovery requests." *Briscoe*, No. 1:11-cv-2303-SCJ, Dkt. No. 98; *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978). Nor can the FDIC-R dispute that it is subject to the same rules that govern any other party in litigation. *See Appleton*, No. 2:11-cv-004676-JAK, Dkt. No. 148 (C.D. Cal. Aug. 27, 2012). Because the FDIC-R is required to bear the costs associated with its electronic document production, there is no basis to shift any of these costs to Defendants, whether in the form of per-page production costs or monthly hosting fees.

As detailed in Defendants' Motion to Compel, the $0.06 per page production charge is unnecessary where Defendants have accommodated the FDIC-R's request to produce documents in a native format after the Parties agreed-upon search terms have been applied. (*See* Motion to Compel, Exhibit A.) Even if Defendants had not accommodated the FDIC-R and sought to have the FDIC-R's ESI produced as static images, Defendants would not be obligated to pay for such costs. The FDIC-R's reliance on *Perfect Barrier LLC v. Woodsmart Solutions, Inc.* does not support the FDIC-R's view that Defendants are required to pay a $0.06 per page production cost. First, *Perfect Barrier* does not stand for the proposition that requesting parties are required to pay for the responding party's costs of production. Rather, the court in *Perfect Barrier* rejected the requesting party's request for the *re-production* of electronic data in static form, at the responding party's expense, when the responding party had already produced the requested information in native format. No. 07-cv-103, 2008 WL 2230192, at *3 (N.D. Ind. May 27, 2008). That is not the case here where Defendants have agreed to accept the FDIC-R's production in native format. Here, in contrast, we are dealing with the FDIC-R's *original* production of ESI to Defendants (not a requested re-production), and *Perfect Barrier* does not apply as a result.

11

The FDIC-R also misconstrues Principle 2.06(d) of the *7th Circuit's Principles Relating to the Discovery of ESI*. The FDIC-R here is not asking Defendants to pay for the "incremental cost of creating its copy of requested information." Rather, the FDIC-R is seeking to have Defendants foot the bill for the FDIC-R's production of responsive electronic documents through its requested $0.06 per page production charge, as well as a monthly $10 per gigabyte hosting fee. In contrast, an "incremental cost" would be more akin to having Defendants pay for the cost of the electronic media device (i.e., CD or hard drive) containing the FDIC-R's electronic document production.

Moreover, any costs incurred by the FDIC-R with respect to its ESI are not akin to paper copying costs. (Response at 8–9.) The case *Race Tires America, Inc.* is distinguishable because it addresses what litigation expenses constitute taxable costs under 28 U.S. C. § 1920, rather than whether cost-shifting is permissible during discovery. In addition, a court in a similar lawsuit involving former bank officers and directors rejected the FDIC-R's very argument here that its production costs are comparable to copying costs. *See W Holding Co., Inc. v. Chartis Ins. Co. of Puerto Rico*, No. 11-2271 (GAG/BJM), 2013 WL 1352426, at *4 (D.P.R. Apr. 3, 2013) (noting that scanning and performing OCR, creating static images, Bates stamping, and privilege review were not "outside the realm of gathering and preparation expenses customarily borne by responding parties"). While the FDIC-R may disagree with the holding in *W Holding Co., Inc.* (Response at 9), it fails to distinguish this case from the facts presented here. As such, there is no basis to require Defendants to pay for any production costs associated with the FDIC-R's production of ESI. Thus, while Defendants have agreed to accept production of the FDIC-R's ESI in native format, the FDIC-R is not relieved of its obligation to Bates stamp its electronic documents. *Glover v. Bd. of Ed.*, No. 02 C 50143, 2004 WL 785270, at *2 (N.D. Ill. Apr. 12, 2003) (ordering the responding party to Bates stamp all documents produced). The FDIC-R's ESI protocol improperly seeks to have Defendants pay for the Bates stamping of all ESI documents they select as responsive and

12

intend to introduce into evidence or as a deposition exhibit. (*See* Motion for Protective Order, Exhibit A, ¶ 8.)

The $10 per gigabyte monthly hosting fee mandated by the FDIC-R's proposed ESI protocol is unnecessary in this matter because Defendants have agreed to accept the FDIC-R's ESI in native format and because the FDIC-R is obligated to perform its own responsiveness review. As a result, Defendants will never need to access the FDIC-R's proposed Relativity database. Thus, the FDIC-R's assertions regarding the purportedly "reasonable" or "modest" pricing it is offering to Defendants through a monthly $10 per gigabyte hosting fee are inapplicable and superfluous where the FDIC-R is required to review its own documents for responsiveness.

Finally, the FDIC-R cites no authority in support of its contention that requiring Defendants to pay a hosting fee "is important for reasons that transcend costs." (Response at 10.) Put simply, that is because the presumption under the Federal Rules of Civil Procedure is that the FDIC-R, like any other party, is required to bear the costs of its production. Further, there is no basis for any cost-shifting in this case, where the electronic documents at issue are not "inaccessible." *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 318–30 (S.D.N.Y. 2003) (*see* Motion to Compel at 13.) The FDIC-R's assertion that requiring Defendants to pay a monthly hosting fee is necessary to ensure that Defendants "have some skin in the game" is both inappropriate and insincere. The FDIC-R filed this lawsuit and is seeking to recover over $114 million in alleged damages based on Defendants' approval of 20 Loss Loans. Defendants certainly have enough "skin in the game," and to suggest that Defendants will not take this lawsuit and discovery seriously unless they pay a monthly hosting fee is absurd.

### III. <u>CONCLUSION</u>

For each of the foregoing reasons and as set forth in Defendants' Motion to Compel, Defendants respectfully request that this Court (i) grant Defendants' Motion to Compel and for

13

Entry of Defendants' ESI Protocol; (ii) compel the FDIC-R to perform a responsiveness review before it produces electronic documents to Defendants; (iii) compel the FDIC-R to organize and identify its electronic document production by Bates number to correspond to Defendants' Requests for Production, including any documents that have been previously produced by the FDIC-R to date; (iv) require the FDIC-R to pay for the costs of its electronic document production to Defendants; (v) adopt and enter Defendants' proposed ESI protocol attached to their Motion to Compel as Exhibit A; and (vi) award Defendants any such other relief that the Court deems just and proper.

    Respectfully submitted,

    SEAN CONLON, STEVEN DRY, DONNA ZAGORSKI, STEVEN BALOURDOS, GLORIA SGUROS, and ANTHONY D'COSTA

    By:   /s/ Randall M. Lending
          One of Their Attorneys

Randall M. Lending
Rachel T. Copenhaver
Vedder Price P.C.
222 North LaSalle Street
Suite 2600
Chicago, Illinois 60601-1003
T: +1 (312) 609-7500

Dated:    July 15, 2013

## CERTIFICATE OF SERVICE

I, Randall M. Lending, an attorney, hereby certify that on July 15, 2013, I caused to be electronically filed the foregoing **CERTAIN DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL AND FOR ENTRY OF DEFENDANTS' ESI PROTOCOL AND RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER** with the Clerk of the Court using the Court's Case Management/Electronic Case Files (CM/ECF) system, which will send notifications of such filing to the following counsel of record:

| | |
|---|---|
| Susan G. Feibus | sgfeibus@uhlaw.com |
| Dean J. Polales | djpolales@uhlaw.com |
| F. Thomas Hecht | fthecht@uhlaw.com |
| Richard Henry Tilghman | rhtilghman@uhlaw.com |
| Robert J. Ambrose | rambrose@howardandhoward.com |
| Joseph W. Barber | jwbarber@howardandhoward.com |
| David C. Van Dyke | dvd@h2law.com |
| Scott C. Frost | sfrost@howardandhoward.com |
| Bryan Thomas Mohler | bmohler@pryorcashman.com |
| Eric Y. Choi | echoi@ngelaw.com |
| William Laurence Charron | wcharron@pryorcashman.com |
| Brittany Ann Smith | basmith@uhlaw.com |

/s/ Randall M. Lending