UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR BROADWAY BANK, | ) ) ) ) | |
| Plaintiff, | ) ) | NO. 12 CV 1665 |
| v. | ) ) | |
| DEMETRIS GIANNOULIAS, GEORGE GIANNOULIAS, JAMES MCMAHON, SEAN CONLON, STEVEN DRY, DONNA ZAGORSKI, STEVEN BALOURDOS, GLORIA SGUROS, ANTHONY D'COSTA, | ) ) ) ) ) ) | Judge John F. Grady Magistrate Judge Daniel Martin |
| Defendants. | ) | |

### PLAINTIFF'S SUPPLEMENTAL MOTION TO STRIKE DEFENDANTS' NEW AFFIRMATIVE DEFENSE ALLEGING "LACK OF STANDING"

Plaintiff Federal Deposit Insurance Corporation, as Receiver for Broadway Bank ("FDIC-R"), submits the following Supplemental Motion to Strike Defendants' newly-pled affirmative defense that the FDIC-R cannot pursue damage claims against former officers and directors of Broadway Bank because the FDIC-R's appointment as receiver was unconstitutional.

### PROCEDURAL HISTORY

On October 18, 2013, the Court, *inter alia*, ordered: (1) the FDIC-R to file an amended complaint by November 6, 2013 to eliminate certain general allegations as discussed in court on October 16, 2013; and (2) Defendants to answer the amended complaint by November 27, 2013. Dkt. #130.

Defendants have now answered and raised affirmative defenses that include the following:

1. Waiver and Estoppel (Third Affirmative Defense).

2. Failure to Mitigate (Fourth Affirmative Defense).

3. Comparative Negligence (Fifth Affirmative Defense).

4. Lack of Constitutional Standing (Sixth Affirmative Defense).

5. Reservation of Right of Add Affirmative Defenses.

*See* Dkt. #148 at 75-76 ("Certain Defendants"), Dkt. #149 at 48-49 (Defendant McMahon), Dkt. #150 at 80 (Giannoulias Defendants).

The FDIC-R previously moved to strike the first three affirmative defenses, above,[1] and challenged Defendants' purported reservation to add additional defenses. *See* Dkt. Nos. 81, 81-1, 87, 138. The FDIC-R incorporates by references these prior pleadings as a renewed Motion to Strike. This memorandum is directed to Defendants' newly-pled affirmative defense of constitutional lack of standing.

## ARGUMENT

I.     **The Timeliness of the FDIC-R's Motion to Strike Certain of Defendants' Affirmative Defenses is no Longer at Issue.**

Previously, the FDIC-R moved for leave to file its Motion to Strike Certain of Defendants' Affirmative Defenses because as to some, but not all, of Defendants, the motion was filed after the 21-day timeframe in F. R. Civ. P. 12(f)(2). Dkt. #81. *See* Dkt. #87 at 1-4. The present motion, which addresses Defendants' repled affirmative defenses, is timely under Rule

---

[1] In Defendants' original answers, waiver and estoppel was their Fourth Affirmative Defense. Defendants previously conceded that this affirmative defense should be stricken. *See* Dkt. #84 at 1, n.1 (Giannoulias Defendants); Dkt. #86-1 at 1, n.1 ("Certain" Defendants). In Defendants' original answers, failure to mitigate was their Fifth Affirmative Defense and comparative negligence was their Sixth Affirmative Defense. Defendants did not re-plead "Superseding and Intervening Causes," their prior Third Affirmative Defense, presumably because Defendants conceded that this defense should be stricken. *See* Dkt. # 84 at 1, n.1 (Giannoulias Defendants); Dkt. # 86-1 at 1, n.1 ("Certain" Defendants).

12(f). Accordingly, the issue of timeliness is moot. Even if the motion to strike was not timely when first filed – which the FDIC-R denies – it certainly is timely now.

## II.     The Affirmative Defense of Lack of Standing is Without Merit.

In response the FDIC-R's Amended Complaint, the individual Defendants now claim that the FDIC-R lacks "constitutional standing" to bring this case because the Illinois Banking Act, 205 ILCS 5/1 *et seq.*, and the Federal Insurance Deposit Act, 12 U.S.C. §1821, *et seq.* (the "FDIC Act"), do not provide *the Bank* with ability to challenge the FDIC-R's appointment as receiver. Defendants specifically allege: "These statutes…failed to provide the Bank with any right of pre-deprivation or post-deprivation judicial review, which is a constitutional requirement under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution."[2] This is incorrect.

### A.     The Bank was Afforded the Pre-Deprivation Process that It was Due

Defendants ignore that prior to regulatory intervention by both the Illinois Department of Financial and Professional Regulation ("IDFPR") and the FDIC, the Bank was afforded significant due process in the form of extensive notice and an opportunity to be heard on whether a receiver should be appointed. On February 19, 2010, pursuant to Section 51 of the Illinois Banking Act, the IDFPR issued to the Bank a Notice of Intent to Take Possession and Control. ("The Section 51 Notice"). *See* Exhibit A:  Section 51 Notice of Intent.

The IDFPR's Section 51 Notice gave the Bank full and complete notice of the specific deficiencies the IDFPR believed were a threat to the Bank's continued vitality including various unsafe and unsound practices. Further, the Section 51 Notice advised the Bank that it had three months until April 20, 2010 to cure the deficiencies of which it had been given notice or lose control to IDFPR and a receiver.

---

[2] Since there is no equal protection component to this affirmative defense, the FDIC-R does not address it.

The Section 51 Notice was final agency action subject to judicial review pursuant to the Illinois Administrative Procedures Act ("IL-APA"). Such review under the IL-APA is specifically authorized by the Illinois Banking Act. *See* 205 ILCS 5/48 (10). The Bank declined to pursue such review. After such full notice and an opportunity to cure, the IDFPR closed the Bank and on April 30, 2010 appointed the FDIC-R as receiver. This notice and an opportunity to cure is the essence of due process.

Broadway Bank also had repeated opportunities to challenge the examination findings that were the foundation for the appointment of a receiver. In 2008 and 2009, the Bank was confronted with substantial and harsh findings of unsafe and unsound practices capital deficiencies and substandard management practices. The IDFPR's Regulations grant to banks such as Broadway the right to challenge such findings in administrative proceedings. *See* Title 38 Ill. Admin. Code Chapter II, Part 385 ("Rules Governing the Request for Reconsideration of Examination Findings"). Broadway did not avail itself of this opportunity. If there were objections to regulatory findings, that was the due process moment to raise them. Broadway did nothing and the statutory deadline passed.

With regard to a *de novo* pre-deprivation judicial hearing (as distinct from APA review or administrative proceedings), courts consistently have held that the absence of such hearing is not a violation of due process when state and/or federal regulators seize a failing bank. Three factors compel this result.

*First*, the Government has a very substantial interest in moving quickly to seize insolvent institutions. The United States Supreme Court has found the government's interest in protecting depositors and preserving the integrity of the banking industry sufficiently strong to justify

4

seizing a bank without any prior hearing. *Fahey v. Mallonee,* 332 U.S. 245, 253-54 (1947). *See Federal Deposit Insurance Company v. Mallen,* 486 U.S. 230. 241(1988).

While the Seventh Circuit has not opined on the issue, the Courts of Appeals for First, Fifth, Sixth, Ninth, Tenth and District of Columbia Circuits have concluded that the Due Process Clause of the Fifth Amendment does not require a hearing before a bank's assets are seized. *See James Madison Ltd. By Hecht v. Ludwig et al.,* 82 F.3d 1085, 1100 (D.C. Cir. 1996); *Franklin Savings Ass'n v. OTS,* 35 F.3d 1466, 1472 (10th Cir. 1994); *Board of Governors of Federal Reserve System v. DLG Financial Corp.*, 29 F.3d 993,1001-1003 (5th Cir. 1994); *First Federal Savings & Trust v. Ryan*, 927 F.2d 1345, 1358 (6th Cir. 1991); *Hoffman v. FDIC,* 912 F.2d 1172, 1175 n.3 (9th Cir. 1990); *Fidelity Sav. & Loan Ass'n v. FHLBB,* 689 F. 2d 803, 814 (9th Cir. 1982); *Roslindale Co-op Bank v. Greenwald*, 638 F.2d 258, 260 (1st Cir. 1980).

A pre-seizure hearing not required because "the insolvent savings and loan is one of the classic situations in which prompt action is necessary." *Ryan*, 927 F.2d at 1358. When institutions plunge into insolvency, as Broadway did, it is imperative that state and federal regulators act quickly to protect the banking system from a "run" and to maintain confidence in the banking interest by protecting depositors. Quick remedial action is needed to cut losses. Protecting the industry requires swift and decisive action. The drastic consequences of a bank failure places it "among the 'extraordinary situations' in which notice and hearing may be postponed until after seizure." *Greenwald*, 638 F.2d at 260.

*Second*, as an entity subject to constant and intensive government regulation, a bank's due process interest is not as strong as the public's interest in protecting the integrity of the banking system nor as strong as an individual's interest in avoiding government interference with benefits, homes or furniture. *See James Madison,* 82 F.3d at 1100.

4851-0876-6999.5

*Third,* the risk of error is very low given repeated examination, repeated consultations between Broadway and federal and state regulators and Broadway's repeated opportunity to challenge regulatory criticism and examination findings. *See Id.* Broadway's failure to challenge the IDFPR's regulatory and examination findings is strong evidence that there was little or no basis to challenge the FDIC-R's receivership appointment.

In *Gregory v. Mitchell*, 459 F. Supp. 1162, 1165-1166 (D. Ala. 1978), the court viewed the plaintiffs' claim that due process required a hearing before a bank's assets could be seized as "frivolous." The wealth of authority establishing that pre-deprivation review is not required should leave no doubt that this aspect of Defendants' affirmative defense is meritless.

## B. Post-Deprivation Review

Defendants also argue that the FDIC-R's receivership is infirm because there is no authorized judicial review of the FDIC-R's appointment after the IDFPR's initial seizure – a "post-deprivation" hearing. Again, Defendants are wrong. As noted by the Court of Appeals for the District of Columbia, the Bank (or its holding company) may challenge the appointment of the FDIC as receiver pursuant to the Administrative Procedures Act. *See James Madison,* 82 F.3d at 1094-1095 ("We hold that the APA authorizes federal courts to review and set aside improper appointments of the FDIC as receiver...") *See also Impro. Prods., Inc. v. Block,* 722 F.2d 845, 850 (D.C. Cir. 1983); *FDIC v. Irwin*, 916 F.2d 1051, 1054 n.4 (5th Cir. 1990). The premise of Defendants' affirmative defense – namely that there is no opportunity for judicial review – is again simply wrong.

## C. Conclusion

This should end the matter: (a) the Bank was provided due process notice and an opportunity to cure prior to seizure of the Bank and the appointment of a receiver; (b) the Bank

has no due process right to a pre-deprivation *de novo* hearing; and (c) the Bank has the ability to obtain judicial review post-deprivation under the Administrative Procedures Act. The defense of lack of constitutional standing is without merit.

## III. Defendants Have No Standing to Challenge the FDIC-R's Appointment As Receiver.

The entity that was "injured" by the appointment of the FDIC-R as receiver was the owner of the Bank – Broadway Bancorp, Inc. And only Broadway Bancorp, Inc. has standing to assert that purported constitutional violation. What is clear is that the individual Defendants have no standing to assert the purported claim. They have no justiciable injury resulting from the FDIC-R's appointment as Receiver.

Defendants' affirmative defense that the FDIC purportedly lacked constitutional standing to bring this action concedes this deficiency. Defendants do not claim that *they* individually suffered a constitutional deprivation. Rather, Defendants allege that the Illinois Banking Act and the FDIC Act "failed to provide *the Bank* with any right of pre-deprivation or post-deprivation judicial review." (Emphasis added.) Defendants admit the purported "victim" was the Bank itself and Broadway Bancorp, Inc. This defeats the defense that Defendants attempt to assert.

## CONCLUSION

**FOR THESE REASONS**, and those contained in the FDIC-R's motion and reply and supplemental memorandum, either independently or in combination, the FDIC-R urges the Court to enter an order regarding Defendants' Answers and Affirmative Defenses to the FDIC-R's Second Amended Complaint:

(a)      striking with prejudice the Third Affirmative Defense (waiver and estoppel), Fourth Affirmative Defense (failure to mitigate), Fifth Affirmative Defense (comparative negligence) and Sixth Affirmative Defense (lack of standing) pled by each Defendant;

(b)      denying Defendants' request to reserve the right to add affirmative defenses; and

(c)      granting any other or additional relief the Court deems just and appropriate.

Dated: December 18, 2013              Respectfully submitted,

FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR
BROADWAY BANK

By:/s/ Susan G. Feibus
           One of Its Attorneys

Susan G. Feibus
Dean J. Polales
F. Thomas Hecht
Richard Henry Tilghman
**UNGARETTI & HARRIS LLP**
70 W. Madison Street
Suite 3500
Chicago, Illinois 60602
Phone:  (312) 977-4400
Fax:  (312) 977-4405

4851-0876-6999.5

## CERTIFICATE OF SERVICE

      The undersigned certifies that a copy of the foregoing was served on all counsel of record via e-mail on December 18, 2013.

/s/ Susan G. Feibus
Susan G. Feibus