**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR
BROADWAY BANK,

          Plaintiff,

        v.

DEMETRIS GIANNOULIAS, GEORGE
GIANNOULIAS, JAMES MCMAHON,
SEAN CONLON, STEVEN DRY, DONNA
ZAGORSKI, STEVEN BALOURDOS,
GLORIA SGUROS and ANTHONY D'COSTA,

          Defendants.

Case No. 12 Civ. 1665

Judge John F. Grady

Magistrate Judge Daniel Martin

---

**DEFENDANTS DEMETRIS GIANNOULIAS AND GEORGE GIANNOULIAS'S
MEMORANDUM OF LAW IN OPPOSITION TO FDIC-R'S MOTION TO
STRIKE THE GIANNOULIAS DEFENDANTS' SIXTH AFFIRMATIVE DEFENSE**

William L. Charron, Esq.
Bryan T. Mohler, Esq.
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036
T: (212) 421-4100
F: (212) 326-0806
wcharron@pryorcashman.com
bmohler@pryorcashman.com

-and-

Eric Y. Choi, Esq.
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street, Suite 1700
Chicago Illinois 60602
T: (312) 827-1053
F: (312) 980-0736
echoi@ngelaw.com

Defendants Demetris Giannoulias and George Giannoulias (collectively, the "Giannoulias Defendants") respectfully submit this memorandum of law in opposition to the supplemental motion to strike the Giannoulias Defendants' Sixth Affirmative Defense by plaintiff Federal Deposit Insurance Corporation as Receiver for Broadway Bank (the "FDIC-R").

## PRELIMINARY STATEMENT

The FDIC-R's supplemental motion to strike should be denied because the FDIC-R obtained its receivership appointment of Broadway Bank (the "Bank") unconstitutionally, and thus the FDIC-R lacks standing to have brought this suit.

The FDIC-R obtained its receivership status over the Bank through a statutory appointment by the Illinois Department of Financial & Professional Regulation (the "IDFPR"). The IDFPR seized the Bank and appointed the FDIC-R as receiver pursuant to the Illinois Banking Act, 205 ILCS 5/1, *et seq.*, and the Federal Deposit Insurance Act, 12 U.S.C. § 1821, *et seq.* Those statutes, however, uniquely failed to provide the Bank with any right of meaningful pre-deprivation or post-deprivation judicial review of the IDFPR's seizure and receivership appointment, which is a constitutional requirement under the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

The FDIC-R concedes that some level of meaningful pre- or post-deprivation judicial review must have been available to the Bank in connection with the IDFPR's decision to seize the Bank's assets and to appoint the FDIC-R as receiver of those assets. The FDIC-R contends that the Bank enjoyed both pre- and post-deprivation judicial review, but the FDIC-R misstates its statutory authorities.

The FDIC-R concocts its own term, "final agency action," and asserts that certain pre-seizure activities by the IDFPR were "final agency actions" (at least as the FDIC-R has coined

that term) that were supposedly judicially reviewable at the time. The FDIC-R is incorrect, as explained below.

Likewise, the FDIC-R's reliance on the Federal Administrative Procedure Act, 5 U.S.C. §§ 500, *et seq.* (the "Federal APA"), as affording some opportunity for immediate post-deprivation judicial review in this case is misplaced because the FDIC-R obtained its receivership appointment from the IDFPR under Illinois state law. The Federal APA does not govern state agency decisions, and the FDIC-R points to no Illinois analog that would have similarly allowed immediate post-deprivation judicial review (and the Giannoulias Defendants are aware of none).

Therefore, through either an intended or unintended gap in the relevant statutes, there was no avenue for meaningful pre- or post-deprivation judicial review of the IDFPR's seizure and receivership appointment in this case. As such, the FDIC-R's receivership status is a constitutional nullity as a matter of both "due process" and "equal protection," which negates the FDIC-R's standing to have sued the Giannoulias Defendants (or anyone else) in the name of the "Bank." The FDIC-R's motion to strike the Giannoulias Defendants' Sixth Affirmative Defense should be denied.[1]

---

[1] The FDIC-R oddly states that it need address only "due process," not "equal protection," because supposedly "there is no equal protection component" to the Giannoulias Defendants' Sixth Affirmative Defense. (FDIC-R's 12/18/13 Br. at 3 n.2.) That is incorrect. The Giannoulias Defendants' Sixth Affirmative Defense plainly states, *inter alia*: "Those statutes, however, failed to provide the Bank with any right of pre-deprivation or post-deprivation judicial review, which is a constitutional requirement under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution."

## RELEVANT ALLEGATIONS & STATUTORY PROVISIONS

**1.**     **Relevant Allegations Within The FDIC-R's Second Amended Complaint**

The FDIC-R's Second Amended Complaint ("SAC") alleges that, "[o]n April 23, 2010, the Illinois Department of Financial and Professional Regulation ('IDFPR') closed Broadway [Bank] and appointed the FDIC as Receiver." (SAC at ¶ 5.) The Second Amended Complaint further alleges that "Broadway was a state-chartered, nonmember bank established by the IDFPR and insured by the FDIC." (*Id.* at ¶ 7.)

**2.**     **Relevant Statutory Provisions Authorizing And
     Providing For Judicial Review Of Receivership Appointments**

**a.**     **Relevant Provisions Of The Federal Deposit Insurance Act**

The Federal Deposit Insurance Act, 12 U.S.C. § 1821, *et seq.* (the "FDI Act"), provides that the FDIC-R may accept receivership appointments made by appropriate State supervisory authorities (such as the IDFPR). *Id.* at §§ 1821(c)(1) & (c)(3)(A).

The FDI Act also provides that the FDIC may appoint itself as receiver of an insured bank under certain circumstances, *id.* at § 1821**(c)(4)**; that an "appropriate Federal banking agency . . . after consultation with the appropriate State supervisor" may appoint the FDIC-R as receiver of an insured bank under certain circumstances, *id.* at § 1821**(c)(9)**; and that the board of directors of the FDIC, "after consultation with the appropriate Federal banking agency and the appropriate State supervisor (if any)," may appoint the FDIC-R as receiver of an insured bank under certain circumstances, *id.* at § 1821**(c)(10)**.

These alternative possible forms of receivership appointment are relevant to the "judicial review" provisions of the FDI Act, as discussed below. Nevertheless, the FDIC-R alleges that its receivership of Broadway Bank is based upon an appointment made and requested solely by the IDFPR. (SAC at ¶ 5.)

3

The FDI Act provides for direct post-deprivation "Judicial review" of appointments of the FDIC-R as receiver only in connection with appointments made pursuant to §§ 1821**(c)(4)**, **(c)(9)** and **(c)(10)** (described above). Specifically, 12 U.S.C. § 1821(c)(7) provides:

> If the Corporation [FDIC] is appointed (including the appointment of the Corporation as receiver by the Board of Directors) as conservator or receiver of a depository institution *under paragraph (4), (9), or (10)*, the depository institution may, not later than 30 days thereafter, bring an action in the United States district court for the judicial district in which the home office of such depository institution is located, or in the United States District Court for the District of Columbia, for an order requiring the Corporation to be removed as conservator or receiver (regardless of how such appointment was made), and the court shall, upon the merits, dismiss such action or direct the Corporation to be removed as the conservator or receiver.

*Id.* (emphasis supplied).

The FDI Act provides for no right of judicial review if the FDIC-R accepts a receivership appointment from an appropriate State supervisor, such as the IDFPR, pursuant to 12 U.S.C. §§ 1821(c)(1) and (c)(3).

### b. Relevant Provisions Of The Illinois Banking Act

Section 58 of the Illinois Banking Act, entitled "Appointment of receiver; court proceeding," provides:

> If the Commissioner [of the IDFPR] determines (which determination may be made at the time, or any time subsequent to his taking possession and control of a bank and its assets) that no practical possibility exists to reorganize the bank after reasonable efforts have been made and that it should be liquidated through receivership, he shall appoint a receiver and require of him such bond and security as the Commissioner deems proper, and the Commissioner, represented by the Attorney General, shall, if the Federal Deposit Insurance Corporation is not acting as receiver, file a complaint for the dissolution or winding up of the affairs of such bank in the circuit court of the county where such bank is located.

205 ILCS 5/58(a). This provision gives the IDFPR authority to appoint bank receivers, including but not limited to appointing the FDIC-R to be the receiver of state chartered and federally insured banks.

Section 60 of the Illinois Banking Act provides that the FDIC-R "shall derive its powers and perform its duties pursuant to the Federal Deposit Insurance Act and regulations promulgated thereunder, ...." *Id.* at 5/60. As discussed above, the FDI Act provides no right of judicial review when the FDIC-R accepts an appointment by a State authority.

Section 67 of the Illinois Banking Act, entitled "Judicial review," provides:

> Whenever the Commissioner [of the IDFPR] shall have taken possession and control of a state bank and its assets for the purpose of examination, reorganization or liquidation through receivership, *or whenever the Commissioner shall have appointed a receiver for a bank,* **other than the Federal Deposit Insurance Corporation**, and filed a complaint for the dissolution or for the winding up of the affairs of a bank, and the bank denies the grounds for such actions, it may at any time within ten days apply to the Circuit Court of Sangamon County, Illinois, to enjoin further proceedings in the premises; and such court shall cite the Commissioner to show cause why further proceedings should not be enjoined, and if the court shall find that such grounds do not exist, the court shall make an order enjoining the Commissioner and any receiver acting under his direction from all further proceedings on account of such alleged grounds, ....

*Id.* at 5/67 (emphasis supplied).

Therefore, as with the FDI Act, the Illinois Banking Act provides for no right of judicial review when the IDFPR appoints the FDIC-R as the receiver of a state chartered and federally insured bank, as was the situation with Broadway Bank. If the IDFPR appoints anyone else as a receiver, then direct judicial review is available.

Taken together, the relevant federal and state statutes governing the FDIC-R's appointment as receiver of Broadway Bank provided the Bank with no right of direct pre-deprivation or post-deprivation judicial review of that appointment.

## ARGUMENT

**I.     THE ABSENCE OF ANY STATUTORY RIGHT FOR THE BANK
TO HAVE SOUGHT DIRECT JUDICIAL REVIEW OF THE FDIC-R'S
APPOINTMENT AS RECEIVER VIOLATES THE DUE PROCESS
CLAUSE OF THE FOURTEENTH AMENDMENT TO THE CONSTITUTION**

The Fourteenth Amendment to the U.S. Constitution provides, in relevant part, that no

State shall "deprive any person of life, liberty, or property, without due process of law; nor deny

to any person within its jurisdiction the equal protection of the laws." *U.S. Const.* amend.

XIV(1).  This amendment governs the rights of corporations as well as natural persons. *E.g.*,

*Pembina Consol. Silver Mining & Milling Co. v. Pennsylvania*, 125 U.S. 181, 189 (1888).

The right of meaningful judicial review over State actions that deprive persons of their

property is a fundamental and basic tenet of "due process." *E.g.*, *Mathews v. Eldridge*, 424 U.S.

319, 333 (1976) ("This Court consistently has held that some form of hearing is required before

an individual is finally deprived of a property interest.  The 'right to be heard before being

condemned to suffer grievous loss of any kind, even though it may not involve the stigma and

hardships of a criminal conviction, is a principle basic to our society.'  The fundamental

requirement of due process is the opportunity to be heard 'at a meaningful time and in a

meaningful manner.'") (quotations and citations omitted).

In the banking context specifically, it is settled that some level of meaningful pre- or

post-deprivation judicial review must be available to a Bank when its assets are seized and a

receivership imposed.  Although courts have reasoned that pre-deprivation judicial review is

unnecessary in view of the strong government interest in protecting the federal deposit insurance

fund, courts have also reasoned that, given a bank owner's right to protect its property from

unwarranted seizures and to avoid being irreparably saddled with the stigma of having gone into

receivership, meaningful *post-deprivation* judicial review must be available after regulators take

the extraordinary step of seizing a bank's assets and instituting a receivership. *See, e.g., Fahey v. Mallonee*, 332 U.S. 245, 253-54 (1947) ("It is complained that these regulations provide for hearing after the conservator takes possession instead of before. This is a drastic procedure. But the delicate nature of the institution and the impossibility of preserving credit during an investigation has made it an almost invariable custom to apply supervisory authority in this summary manner. It is a heavy responsibility to be exercised with disinterestedness and restraint, but in the light of the history and customs of banking we cannot say it is unconstitutional."); *Woods v. Federal Home Loan Bank Bd.*, 826 F.2d 1400, 1411 (5th Cir. 1987) (agreeing that "the absence of pre-deprivation process heightens the need for post-deprivation procedures in this case [where bank receivership was challenged]," and finding that due process existed where bank had waived opportunity for formal administrative hearing, where bank had initiated its own suit three months before receiver was appointed, and where bank had ability to ask court to review administrative decision for arbitrary and capricious misconduct); *Haralson v. Federal Home Loan Bank Bd.*, 837 F.2d 1123, 1126 (D.C. Cir. 1988) ("The statute provides a mechanism for review, albeit, one available only after the seizure of assets. However, the fact that judicial review is available only after the fact does not, in and of itself, render that review constitutionally inadequate."); *Fidelity Sav. & Loan Ass'n v. Federal Home Loan Bank Bd.*, 689 F.2d 803, 811, 814 (9th Cir. 1982) (same); *Franklin Sav. Ass'n v. Director, Office of Thrift Supervision*, 934 F.2d 1127, 1140 (10th Cir. 1991) ("[The bank] also objects to the lack of a prior hearing. [The statute] affords the association to which a conservator has been appointed the opportunity for judicial review of the appointment decision. The availability of this post-deprivation hearing precludes any due process violations.") (citations omitted); *see also FDIC v. American Bank Trust Shares, Inc. (ABTS)*, 558 F.2d 711, 715 (4th Cir. 1977) ("FDIC acquired title by reason of

its appointment as receiver of Bank and the subsequent sale of Bank's assets, with state court approval, by itself, as receiver, to itself, as a corporation. The only grounds upon which its title may be defeated are a successful attack upon the validity of its appointment as receiver, …."); *Manning Sav. & Loan Ass'n v. Federal Sav. & Loan Ins. Corp.*, No. 83 C 757, 1983 U.S. Dist. LEXIS 13773, at *6 (N.D. Ill. Sept. 14, 1983) ("[W]e do not see any barrier to [the bank] asserting its constitutional claims as a basis for removal of the receiver ….") (citation omitted).[2]

The FDIC-R does not contest that either pre- or post-deprivation judicial review must exist to satisfy the Due Process Clause. The FDIC-R instead insists that both kinds of judicial review were available in this case. The FDIC-R is mistaken.

A.      **Because There Was No "Final Administrative Decision," The
        FDIC-R Is Incorrect That Pre-Deprivation Judicial Review Was Available**

As discussed above, neither the FDI Act nor the Illinois Banking Act provides for *any* pre-deprivation or post-deprivation judicial review in the unique case where, as here, the IDFPR appoints the FDIC-R as receiver.

Impliedly conceding the point, the FDIC-R looks instead to the "Notice of Intent to Take Possession and Control" that the IDFPR sent to the Bank in February 2010, pursuant to Section 51 of the Illinois Banking Act (the "Section 51 Notice"). The FDIC-R contends that the Section 51 Notice constituted a so-called "final agency action" – a term made up by the FDIC-R without reference to statute – which, the FDIC-R further contends, was "subject to judicial review pursuant to the Illinois Administrative Procedures Act" according to Section 48(10) of the

---

[2] The FDIC-R engages in a lengthy discussion as to why pre-deprivation judicial review is not constitutionally mandated. (FDIC-R's 12/18/13 Br. at 4-6.) The Giannoulias Defendants do not disagree. Nevertheless, if no pre-deprivation judicial review exists, then there must be post-deprivation judicial review. The FDIC-R does not (and cannot) contend otherwise.

Illinois Banking Act, 205 ILCS 5/48(10). (FDIC-R's 12/18/13 Br. at 4.) The FDIC-R's contentions are fallacious.

Section 48(10) of the Illinois Banking Act provides that "[a]ll *final administrative decisions* of the Commissioner hereunder shall be subject to judicial review pursuant to the provisions of the [Illinois] Administrative Review Law[, 735 ILCS 5/3-101, *et seq.*]." 205 ILCS 5/48(10) (emphasis supplied). There is no mention of a so-called "final agency action." The IDFPR's Section 51 Notice to the Bank was *not* a "final administrative decision."

An "administrative decision" is defined by the Illinois Administrative Review Law to mean: "any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties *and which terminates the proceedings before the administrative agency*." 735 ILCS 5/3-101 (emphasis supplied).

The Illinois courts have long interpreted this statutory definition to require: (a) an "application" triggering an administrative review; and (b) "some definitive action with regard to the application" that is transmitted to the applicant. *E.g.*, *Sola v. Roselle Police Pension Bd.*, 794 N.E.2d 1055, 1058 (Ill. Ct. App. 2003); *Fields v. Schaumburg Firefighters' Pension Bd.*, 889 N.E.2d 1167, 1173 (Ill. Ct. App. 2008); *Rutka v. Board of Trustees of the Cicero Police Pension Fund*, 939 N.E.2d 600, 603 (Ill. Ct. App. 2010).

Moreover, in the specific context of action taken by the IDFPR, it has been found that "[t]he words in the Administrative Review Act 'for review of decisions which terminate proceedings' contemplate an administrative process which presents an issue for hearing and disposition by an impartial trial agency." *Roosevelt-Wabash Currency Exchange, Inc. v. IDFPR*, 364 N.E.2d 449, 453 (Ill. Ct. App. 1977).

9

The Section 51 Notice sent to the Bank was not sent in response to any "application" by the Bank. Nor was the Section 51 Notice a "definitive action." To the contrary, the Section 51 Notice was, by its own terms, merely a notice of "Intent." Furthermore, the Section 51 Notice was issued pursuant to a statute that expressly provides for the Commissioner's discretionary right *not* to "take possession and control of the bank and its assets … for the purpose of examination, reorganization or liquidation through receivership" following the deadline provided, and/or to "extend the time period prescribed in that notice for such period as the Commissioner deems appropriate." 205 ILCS 5/51(a)(5) & (b). Likewise, the Section 51 Notice is expressly conditional and contemplates the possibility of the Bank meeting certain subjective standards, which would have to be later analyzed. (*See* Exhibit A to FDIC-R's 12/18/13 Mot. to Strike.)

The FDIC-R claims that the Section 51 Notice gave the Bank "notice and an opportunity to cure." (FDIC-R's 12/18/13 Br. at 4.) Again, the FDIC-R offers these terms of its own making; they are not the terms of any applicable statute. Moreover, it is the very "opportunity to cure" that renders the Section 51 Notice conditional, not "definitive."

Additionally, the Section 51 Notice was not issued by an "impartial trial agency" following any kind of "hearing."

Thus, the Section 51 Notice was not a "definitive" administrative ruling that responded to an "application" and "terminated proceedings." As such, it cannot be deemed a "final administrative decision" under Section 48(10) of the Illinois Banking Act and cannot be the basis for finding that meaningful and ripe pre-deprivation judicial review existed.

Even more attenuated and misplaced is the FDIC-R's reliance on the IDFPR's and FDIC-Corporate's Joint Reports of Examination ("ROEs") issued in the years preceding the Bank's seizure. (FDIC-R's 12/18/13 Br. at 4.) The FDIC-R asserts that the Bank could have challenged

those earlier ROEs pursuant to the Illinois Administrative Code, 38 Ill. Admin. Code Ch. II, Part 385.  Indeed, the Bank had that right, but the point is immaterial.

The ROEs are not a "final administrative decision" for the same reasons discussed above: they were not issued in response to applications and they were not definitive rulings that terminated proceedings.  Although the Bank could have sought changes to the ROEs through the Illinois Administrative Code, that would not have transformed the ROEs into final administrative decisions capable of direct, pre-deprivation judicial review:  the ROEs themselves did not purport to seize, receive or deprive the Bank of anything.  To the contrary, even the worst rating offered in a ROE, a "5," represents only the possibility of liquidation "[i]n the absence of urgent and decisive corrective measures."  (Exhibit A hereto.)

The ROEs merely purported to report on the Bank's condition over time.  The FDIC-R cannot legitimately rely on the ROEs as a mechanism for the Bank to have triggered meaningful pre-deprivation judicial review under Section 48(10) of the Illinois Banking Act.

### B. Because The Federal APA Does Not Apply, The FDIC-R Is Incorrect That The Bank Could Have Received Post-Deprivation Judicial Review

The FDIC-R additionally (or alternatively) claims that the Bank was afforded direct post-deprivation review under the Federal APA.  (FDIC-R's 12/18/13 Br. at 6.)  This, too, is incorrect.

The Federal APA provides a right of judicial review only to federal agency decisions, not to decisions rendered by state agencies, such as the IDFPR's decision to seize the assets of the Bank and to appoint the FDIC-R as receiver.  *E.g.*, *Department of Transp. & Dev. v. Beaird-Poulan, Inc.*, 449 U.S. 971, 973 (1980) ("[T]he APA is of course not applicable to state agencies.") (Rehnquist, J., dissenting); *Milwaukee Inner-City Congregations Allied for Hope v. Gottlieb*, 2013 U.S. Dist. LEXIS 127184, at *9-10 (W.D. Wis. 2013) (same); *Resident Council of Allen Parkway Vill. v. United States Dep't of House. & Urban Dev.*, 980 F.2d 1043 (5th Cir.

1993) ("[T]he APA [is] a route through which private plaintiffs can obtain federal court review of the decisions of federal agencies …. [T]he right of review under section 702 does not give district courts the jurisdiction to enjoin … nonfederal entities.").[3]

The Federal APA has no application in this case. By its silence, the FDIC-R also concedes that the Illinois APA offers no means for direct post-deprivation judicial review (and, again, the Giannoulias Defendants are aware of no such right through state law). Furthermore, as discussed above, there is no "final administrative decision" that could be the subject of post-deprivation judicial review under Section 48(10) of the Illinois Banking Act.

The FDIC-R is incorrect that either (let alone both) pre- and/or post-deprivation judicial review was available in this case. Accordingly, because such judicial review was constitutionally required but non-existent in this case, the FDIC-R's appointment as receiver of the Bank violated the Due Process Clause of the Fourteenth Amendment.

## II. THE ABSENCE OF ANY STATUTORY RIGHT FOR THE BANK TO HAVE SOUGHT DIRECT JUDICIAL REVIEW OF THE FDIC-R'S APPOINTMENT AS RECEIVER ALSO VIOLATED THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985) (citation omitted). Economic legislation "is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Id.* at 440 (citations omitted).

---

[3] The FDIC-R's authorities on this point are not to the contrary. (FDIC-R's 12/18/13 Br. at 6.) Each of the cases cited – *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1094 (D.C. Cir. 1996), *Impro. Prods., Inc. v. Block*, 722 F.2d 845, 850 (D.C. Cir. 1983), and *FDIC v. Irwin*, 916 F.2d 1051, 1054 (5th Cir. 1990) – involved federal agency decisions, not state agency decisions.

As explained above, the FDI Act and the Illinois Banking Act both provide for some form of direct judicial review in other contexts concerning receivership appointments, but neither provides for any similar right of direct judicial review in the unique circumstance where, as here, the IDFPR appoints the FDIC-R to be a receiver. *See also National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974) ("A frequently stated principle of statutory construction is that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies…. This principle of statutory construction reflects an ancient maxim – *expressio unius est exclusion alterius*.") (citations and quotations omitted).

The statutory prejudice shown to entities like the Bank, whether intended or not, is arbitrary and irrational, and thus violates the Equal Protection Clause.

Even if the Court were to entertain the FDIC-R's (meritless) positions regarding the Section 51 Notice and/or the ROEs (discussed above), the protracted means suggested by the FDIC-R for the Bank to have tried to find judicial review do not satisfy "equal protection." The FDIC-R fails to explain why other banks facing other receivership appointments should be statutorily entitled to direct access to a court, but banks like Broadway, facing receivership appointments by the IDFPR that name the FDIC-R, should have to struggle to find an open courtroom door. Indeed, there is no rational explanation for such disparate treatment.

When a bank is seized, the situation is immediate and dire. The FDIC-R cannot contend otherwise. A receiver routinely acts within days to begin selling the bank's seized assets. If the bank cannot enjoin that conduct quickly, then the harm to the bank is irreparable, and the ability to raise new capital is non-existent. That is why immediate post-deprivation judicial review is necessary, and why the peculiar statutory gap exhibited in this case (where the IDFPR appointed

13

the FDIC-R as receiver) is an irrational and constitutionally impermissible anomaly. *See, e.g.*, Craig Boyd Garner, *Unconstitutional Regulatory Seizures Under the Federal Deposit Insurance Corporation Improvement Act of 1991: The Final Blow to the Business of Banks* 22 Pepperdine L. Rev. 131, n. 65 (1994) (surveying laws of jurisdictions).

The IDFPR's appointment of the FDIC-R as receiver of the Bank violated the Equal Protection Clause of the Fourteenth Amendment.

III.   **BECAUSE THE FDIC-R'S APPOINTMENT WAS CONSTITUTIONALLY INVALID, THE GIANNOULIAS DEFENDANTS' SIXTH AFFIRMATIVE DEFENSE FOR "LACK OF STANDING" IS MERITORIOUS**

In other circumstances (not applicable here) when the FDI Act permits post-deprivation judicial review, that statute "requires" the "removal" of an improvidently appointed receiver. 12 U.S.C. § 1821(c)(7). Likewise, when the Illinois Banking Act permits judicial review (in circumstances not applicable here), the reviewing court is required to "enjoin" an improvidently appointed receiver from taking any action purportedly on behalf of the bank. 205 ILCS 5/67.

Because the opportunity for meaningful judicial review was irrationally absent in this case, the FDIC-R was able to evade the possibility of judicial removal. That, however, does not make the FDIC-R's receivership status any more valid. *See also FDIC v. New York*, 718 F. Supp. 191, 196-97 (S.D.N.Y. 1989) (finding assignment of claim to FDIC to be invalid where relevant statute "prohibited" such assignment), *aff'd*, 928 F.2d 56 (2d Cir. 1991); *Canning v. NLRB*, 705 F.3d 490, 496-99 (D.C. Cir.) (invalidating NLRB orders where Board lacked quorum due to court's finding that President violated Constitution by purporting to appoint Board members when Congress was not in "recess"), *cert. granted*, 133 S. Ct. 2861 (2013).

Because the FDIC-R's appointment as receiver offends the Constitution, and thus the FDIC-R is an invalid receiver, the FDIC-R lacks any basis to assert a justiciable "case or

controversy" against the Giannoulias Defendants (or any of the Defendants) and accordingly lacks standing as a matter of law. *See Canning*, 705 F.3d at 499; *FDIC v. New York*, 718 F. Supp. at 196-97 (dismissing FDIC's claims for lack of standing); *Landmark Land Co. v. FDIC*, 256 F.3d 1365, 1380 (Fed. Cir. 2001) (same); *FDIC v. Ernst & Young, LLP*, 256 F. Supp. 2d 798, 805 (N.D. Ill. 2003), *aff'd*, 374 F.3d 579 (7th Cir. 2004) (same).

The FDIC-R cannot avoid the constitutional problems presented in this case by claiming, without *any* authority, that the Giannoulias Defendants lack standing to assert their Sixth Affirmative Defense. (FDIC-R's 12/18/13 Br. at 7.) Because the FDIC-R has sued the Giannoulias Defendants by claiming, illegitimately, to be the voice of the "Bank," the Giannoulias Defendants are plainly within the "zone of interests protected by the law involved" and can defend themselves by challenging the FDIC-R's illegitimate status. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Lepelletier v. FDIC*, 164 F.3d 37, 42-45 (D.C. Cir. 1999) (independent money finder had standing to assert rights of bank depositors); *Fischetti v. Scarpone*, No. Civ. A. No. 06-4838 (SRC), 2008 U.S. Dist. LEXIS 25359, at *2-4 (D.N.J. Mar. 28, 2008) (defendant in related adversarial proceeding had standing to challenge bankruptcy trustee's appointment as fraudulent).

## CONCLUSION

For the foregoing reasons, the Giannoulias Defendants respectfully request that the FDIC-R's supplemental motion to strike be denied, and that the Court award the Giannoulias Defendants such other and further relief as deemed just and proper.

Dated:  February 12, 2014                Respectfully submitted,


                                              DEMETRIS AND GEORGE
                                              GIANNOULIAS

                                              By:_____*/s/ Eric Y. Choi*_____
                                                             One of Their Attorneys

William L. Charron, Esq.
Bryan T. Mohler, Esq.
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036
T: (212) 421-4100
F: (212) 326-0806
wcharron@pryorcashman.com
bmohler@pryorcashman.com

-and-

Eric Y. Choi, Esq.
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street, Suite 1700
Chicago Illinois 60602
T: (312) 827-1053
F: (312) 980-0736
echoi@ngelaw.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing **Defendants Demetris Giannoulias and George Giannoulias's Memorandum of Law in Opposition to FDIC-R's Motion to Strike the Giannoulias Defendants' Sixth Affirmative Defense** was served on all counsel of record via electronic case filing procedures on February 12, 2014.

s/          Eric Y. Choi

An Attorney for Defendants