UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR BROADWAY BANK, | ) ) ) ) | |
| Plaintiff, | ) ) ) | NO. 12 CV 1665 |
| v. | ) ) | |
| DEMETRIS GIANNOULIAS, GEORGE GIANNOULIAS, JAMES MCMAHON, SEAN CONLON, STEVEN DRY, DONNA ZAGORSKI, STEVEN BALOURDOS, GLORIA SGUROS, ANTHONY D'COSTA, | ) ) ) ) ) ) | Judge John F. Grady<br><br>Magistrate Judge Daniel Martin |
| Defendants. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF SUPPLEMENTAL MOTION TO STRIKE
DEFENDANTS' NEW AFFIRMATIVE DEFENSE ALLEGING "LACK OF STANDING"**

Plaintiff Federal Deposit Insurance Corporation, as Receiver for Broadway Bank ("FDIC-R"), submits the following reply in support of its Supplemental Motion to Strike Defendants' newly-pled affirmative defense that the FDIC-R lacks standing to pursue damage claims against former officers and directors of Broadway Bank based on their alleged misconduct in approving the 20 Loss Loans. This reply also addresses "Certain Defendants" supplemental memorandum in opposition to the FDIC-R's previously-filed motion to strike certain affirmative defenses.[1]

---

[1] The Giannoulias Defendants' memorandum of law in opposition to the FDIC-R's supplemental motion to strike Defendants' new affirmative defense alleging "lack of standing" is Dock. No. 180. Defendant McMahon's adoption of that memorandum is Dock. No. 182. The "Certain Defendants" adoption of that memorandum and their own supplemental memorandum is Dock. No. 181.

## INTRODUCTION

The propriety of the due process surrounding the seizure of the Bank's assets is not a valid affirmative defense to the FDIC-R's claims against Defendants for their improper approval of the 20 Loss Loans. In the first instance, there was nothing wrong with the process. The Bank was given notice and the opportunity for a hearing both before and after its assets were seized. Since the Bank chose not to contest the seizure, it long ago waived its right to do so. And since any purported constitutional violation was visited on the Bank, and not Defendants, it cannot be the basis for their sixth affirmative defense.

Defendants' ability to challenge the FDIC-R's post-receivership conduct has been the subject of much prior briefing. In the Seventh Circuit, the "discretionary function" exception to the Federal Tort Claims Act ("FTCA") shields this conduct. As a result, Defendants' reliance on cases from the Eighth Circuit and the Iowa district court, where the law is not the same, does not support Defendants' third, fourth and fifth affirmative defenses based on the FDIC-R's post-receivership conduct.

## ARGUMENT

**I.  The FDIC-R Has Standing to Bring this Action Against Former Officers and Directors of Broadway Bank Based on Their Alleged Misconduct in Approving the 20 Loss Loans**

Article III of the Constitution limits federal courts' jurisdiction to certain "Cases" and "Controversies." An essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so. *Hollingsworth v. Perry*, __ U.S. __, __, 133 S.Ct. 2652, 2661 (2013). To establish the "irreducible constitutional minimum" of standing, a plaintiff must demonstrate that it suffered an "injury in fact," that the injury is "fairly traceable" to the defendants' actions, and the injury likely will be redressed by a favorable

decision. *Bennett v. Spears*, 520 U.S.154, 162 (1997); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). At the pleading stage, general factual allegations of injury resulting from the defendants' conduct will suffice. *See Id.* at 561.

The Second Amended Complaint ("SAC") alleges that the FDIC-R, which as receiver stepped into the Bank's shoes, suffered in excess of $100 million in losses from the 20 Loss Loans that Defendants approved. These allegations satisfy the constitutional standing requirement. The more than $100 million in losses are an "injury in fact." Since these losses were caused by Defendants' approval of the 20 Loss Loans, the injury is "fairly traceable" to Defendants' conduct. The injury can be redressed by a money judgment against Defendants. Nothing more is required for the FDIC-R to have standing.

The Seventh Circuit reached a similar conclusion in *FDIC v. Ernst & Young, LLP*, 256 F. Supp. 2d 798 (N.D. Ill.) *aff'd* 374 F.3d 579, 582 (7th Cir. 2004), upon which Defendants rely. In that case, the FDIC-C (in its corporate capacity) brought suit against the auditors of a failed savings and loan. The auditors moved to dismiss alleging that suit should have been brought by the FDIC-R, as receiver, which was bound by a mandatory arbitration clause between the auditor and the savings and loan. While the district court dismissed the case for lack of standing, 256 F. Supp at 802, the Seventh Circuit modified the judgment on appeal to reflect a judgment on the merits because the FDIC-C's problem was not one of standing. 374 F. 3d. at 584.

As Judge Easterbrook wrote in *Ernst & Young*, "What this has to do with 'standing" is unfathomable. A person whose injury can be redressed by a favorable judgment has standing to litigate." 374 F. 3d. at 581 (citing *Lujan*). Because the FDIC-C suffered an injury when it disbursed money from the insurance fund, alleged that the auditors caused part of the loss and the loss could be redressed by a money judgment against the auditors, Judge Easterbrook

3

concluded that nothing more was required for the FDIC-C to have standing. 374 F. 3d. at 582. The same is true here.

The other cases on which Defendants rely are easily distinguishable because, in those cases, either the FDIC-R was not adverse to the United States, it did not have a sufficient stake in the litigation's outcome or standing was not an issue.

In *Landmark Land Co. v. FDIC*, 256 F. 3d 1365 (D.C. Cir. 2001), a real estate development company entered into a contract with the Federal Savings and Loan Insurance Company ("FSLIC") in 1982 to make a significant investment to acquire a failing thrift. In 1986, the thrift entered into another agreement with FSLIC to make a substantial investment and acquire a second thrift, which was merged with the first. In 1991, the merged thrift failed, its assets were seized by the regulators and the Resolution Trust Corporation was appointed receiver. To recover its investment, the real estate company sued the United States government for breach of the 1982 agreement. As the failed thrifts' successor in interest, the FDIC-R intervened to pursue claims against the government for breach of the 1986 agreement. The United States Court of Federal Claims granted summary judgment and awarded the real estate development company $21.5 million in damages and the FDIC $17.7 million in damages.

Although affirming the damage award to the real estate development company, the United States Court of Appeals for the Federal Circuit reversed the damage award to the FDIC-R. The Federal Circuit held that the FDIC-R lacked standing because after the FSLIC Resolution [Insurance] Fund ("FRF") paid the $17.7 million damage award to the FDIC-R, the FDIC-R would return the money to the FRF as a recovery. *Id.* at 1381. As a result, "none of the money paid by the government in satisfaction of [the $17.7 million] judgment would leave the government" so "at no time were the FDIC and the United States truly adverse parties." *Id.* at

4

1380. Accordingly, Article III's case-or-controversy requirement of standing was not met. *Id.* at 1381.

In *FDIC v. New York*, 718 F. Supp. 191 (S.D.N.Y.) *aff'd* 928 F. 2d 56 (2d Cir. 1991), the district court held that the FDIC-C lacked standing to seek a declaratory judgment that the City of New York's imposition of taxes on a bank violated a federal statute designed to bolster the bank's net worth because the FDIC-C did not have a sufficient stake in the litigation's outcome. 718 F. Supp at 196. The Second Circuit affirmed on other grounds. 928 F. 2d at 61.

*Canning v. NLRB*, 705 F.3d 490 (D.C. Cir) *cert. granted* 133 S. Ct 2861 (2013), which addressed the constitutionality of recess appointments to the NLRB, has nothing to do with standing.

Since the SAC alleges the requisite elements to establish the "irreducible constitutional minimum" of standing, this ends the inquiry. Defendants' sixth affirmative defense alleging a lack of standing should be stricken.

## II. Any Challenge to the Process Attendant to Seizure of the Bank's Assets Was the Bank's and Cannot be Raised Now by Defendants

Defendants' sixth affirmative defense alleges that the Illinois Banking Act and the FDIC Act "failed to provide *the Bank* with any right of pre-deprivation or post deprivation judicial review." (Emphasis supplied.) Defendants claim that they can raise the challenge because they are within the "zone of interests protected by the law involved." Dock. No. 180 at 15. They cannot.

In addition to the constitutional requirements of Article III, the federal courts adhere to a set of prudential principles that bear on the question of standing. *Bennett*, 520 U.S. at 162. These judicially-imposed principles, which limit the exercise of federal jurisdiction, include the requirement that the plaintiff's grievance arguably fall within the zone of interests protected or

regulated by the statutory provision or constitutional guarantee invoked in the suit. *Id.* (although not environmentalists, petitioners had standing under zone of interests test to bring claims under the citizen-suit provision of the Endangered Species Act).

The zone of interests test relates to a plaintiff's standing to bring a suit. It does not apply to assessing the validity of a defendant's affirmative defense. Defendants' therefore cannot rely on the zone of interests test to challenge the FDIC-R's receivership based on the purported unconstitutional seizure of the Bank's assets. Only the Bank could have done that. And the Bank waived that claim long ago.

Here, too, the cases upon which Defendants rely are inapposite. *Lujan*, 504 U.S. 555, does not discuss the zone of interests test. In *Lepelletier v. FDIC*, 164 F. 3d. 37, 42-45 (D.C. Cir. 1999), the plaintiff had standing because he satisfied the Article III standing analysis discussed above. And in *Fischetti v. Scarpone*, No. Civ. A. No. 06-4838 (SRC), 2008 U.S. Dist. LEXIS 25359 (D.N.J. March 28, 2008), a defendant in an adversary proceeding was allowed to challenge the appointment of the bankruptcy trustee based upon the finding that the defendant was a "party in interest" under Section 1109 of the Bankruptcy Code.

Assuming, *arguendo*, that the Bank's assets were seized unconstitutionally (which, as described below, they were not), Defendants cannot raise this as a defense against the FDIC-R's claims against them. For this reason, too, Defendants' sixth affirmative defense alleging lack of standing should be dismissed.

## III.    The Bank Was Not Deprived of Its Due Process Rights When Its Assets Were Seized

While the due process attendant to the seizure of the Bank's assets is not a defense to Defendants' improper approval of the 20 Loss Loans, the Bank suffered no due process violation. Defendants concede that Fourteenth Amendment's due process guaranty is satisfied

by notice and an opportunity for either a pre-deprivation hearing or a post-deprivation hearing. The Bank was afforded both.

### A. Before its assets were seized, the Bank was given notice and an opportunity to be heard.

Seizure of the Bank's assets was the culmination of a long regulatory process involving both the IDFPR and the FDIC-C in their roles as examiners. The April 20, 2009 examination (as of March 31, 2009) resulted in a CAMELS rating of 5. This meant the Bank's condition was unsatisfactory. For the next year, until the Bank was closed in April 2010, there was extensive communication between the Bank and its regulators, as well as many regulatory visits to monitor the Bank's condition.

By February 2010, the Bank's financial condition had so deteriorated that both the IDFPR and the FDIC-C heightened their scrutiny:

- On February 4, 2010, the FDIC-C gave the Bank written notice that, for purposes of the prompt corrective action requirements of the FDIC Act, the Bank was "significantly undercapitalized." Exhibit A. As a result, the Bank was required to submit a capital restoration plan by March 17, 2010. *Id.*

- On February 19, 2010, the IDFPR gave the Bank notice, pursuant to Section 51 of the Illinois Banking Act, 205 ILCS 5/51, of the IDFPR's intent to take possession of the Bank and its assets for the purpose of reorganization or liquidation through receivership if the deficiencies identified in the notice were not corrected by April 20, 2010. Exhibit B.

- On March 17, 2010, the Bank submitted its capital restoration plan to the FDIC-C.

- On March 31, 2010, the FDIC-C gave the Bank written notice that its capital restoration plan was rejected because it was "too vague to be considered adequate." Exhibit C. The Bank was given until April 7, 2010 to submit a revised plan. *Id.*

- On April 7, 2010, the Bank requested an extension until April 19, 2010 to submit a revised Capital Plan. While the Bank said that it was "exploring potential capital raising possibilities," no definitive agreement for a capital raise was identified. Exhibit D.

- On April 19, 2010, the FDIC-C issued a Supervisory Prompt Corrective Action Directive to the Bank. Exhibit E. This required the Bank to sell enough voting shares or other obligations so the Bank would be adequately capitalized after the sale or accept an offer to be acquired by or combined with another insured depository institution. *Id.* The Bank was informed that it had 14 days to file a written appeal. *Id.*

- On April 23, 2010, the IDFPR gave the Bank written notice that it was taking control of the Bank's assets and had appointed the FDIC-R as receiver. Exhibit F.

- On April 23, 2010, the FDIC-R accepted the IDFPR's appointment as receiver for the Bank. Exhibit G.

The FDIC-C's April 19, 2010 Supervisory Prompt Corrective Action Directive, which required the Bank to sell enough voting shares or other obligations of the Bank so that it would be adequately capitalized after the sale or accept an offer to be acquired by or combined with another insured depository institution, was a final agency action. Although the Bank had 14 days to appeal, it did not exercise its appeal rights. By failing to appeal, the Bank waived its right to pre-deprivation review of the FDIC-C's action under the Federal APA.

**B.** **After its assets were seized, the Bank was given notice and an opportunity to be heard.**

The Bank also was afforded post-deprivation review sufficient to satisfy due process. Under Section 48(10) of the Illinois Banking Act, 205 ILCS 5/48(10), all final administrative decisions of the Director of the IDFPR's Division of Banking "shall be subject to judicial review pursuant to the provisions of the Administrative Review Law." This includes taking possession of a bank's assets under Section 51 of the Illinois Banking Act, 205 ILCS 5/51. Section 48(10) of the Illinois Banking Act, 205 ILCS 5/48(10), also prescribes venue: "For all matters involving administrative review, venue shall be in either Sangamon County or Cook County."

Under Section 3-111 of the Administrative Review Law, 735 ILCS 5/3-111, the circuit court has power, upon good cause shown, to stay the decision of the administrative agency.

8

"Good cause" under Section 3-111 requires a showing that an immediate stay is needed to preserve the status quo without endangering the public, it is not contrary to public policy and there is a reasonable likelihood of success on the merits. *Id.* This action must be commenced by the filing of a complaint and the issuance of summons within 35 days of the final administrative decision. 735 ILCS 5/2-103. If venue is expressly prescribed in the particular authority under which the decision was made, such venue will control. 735 ILCS 5/2-104.

On April 23, 2010, the IDFPR seized the Bank's assets and appointed the FDIC-R the Bank's receiver. Under the provisions of the Illinois Banking Act and the Administrative Review Act cited above, the Bank could have challenged the seizure of its assets and the FDIC-R's appointment by filing an action for stay in the circuit court of Cook County or Sangamon County. *Compare* 205 ILCS 5-67 (describing judicial review procedures where the FDIC is *not* appointed receiver). The Bank did not file an action. By failing to do so, the Bank waived its right to post-deprivation review of the IDFPR's action under the Illinois Administrative Review Law.

IV. **The Bank's Was Not Deprived of Its Right to Equal Protection When Its Assets Were Seized**

Since the Bank was afforded notice and the opportunity for both a pre-deprivation and post-deprivation challenge to the seizure of its assets, the Bank was not denied its right to due process. State-chartered Broadway Bank therefore was not treated differently from national banks. The Bank suffered no equal protection violation. And as with Defendants' due process argument, any purported equal protection violation was the Bank's - not Defendants' - and is not a defense to Defendants' misconduct as alleged in the SAC. Assuming, *arguendo*, that the Bank had an equal protection claim (which it did not), that, too, was waived long ago.

V.     **In the Seventh Circuit, the FDIC-R's Post-Closure Conduct is Protected by the FTCA's "Discretionary Function Exception" So Defendants' Cases from the Eleventh Circuit and Iowa District Court Do Not Support Defendants' Affirmative Defenses Challenging that Post-Closure Conduct**

Defendants' reliance on cases from the Eighth Circuit, *FDIC v. Snow*, No. 12-15878, 2013 WL 6726918 (11th Cir. Dec. 23, 2013), and the Iowa district court, *FDIC v. Dosland*, No. C 13-4046-MW, 2013 U.S. Dist. LEXIS 179429 (N.D. Iowa Dec. 23, 2013), in support of their affirmative defenses based on the FDIC-R's post-receivership conduct is misplaced. *See* Dock. No. 181. Both of these cases denied the FDIC-R's motion to strike the affirmative defenses because *O'Melveny & Myers v. the FDIC*, 512 U.S. 79 (1994), abrogated the "no duty" rule. But the FDIC-R's motion to strike these affirmative defenses in this case is based on the "discretionary function exception" under the FTCA, not the "no duty" rule. *See* Dock. No. 81 at 8-10, Dock. No. 87 at 6-8.

*Snow* did not discuss "discretionary function exception" to the FTCA. And in *Dosland*, the district court rejected the discretionary function defense because its applicability to cases brought by the FDIC "is an 'open question' in the Eighth Circuit." 2013 U.S. Dist. LEXIS 179429 at *21-22.

That is not the case in the Seventh Circuit. Based on *FDIC v. Bierman*, 2 F.3d 1424 (7th Cir. 1993), the discretionary function defense applies to cases brought by the FDIC. The question is closed. As Judge Kendell wrote in denying the defendants' motion to reconsider the striking of these affirmative defenses in *FDIC v. Mahajan*:

The fact remains that *Bierman* is still the law of this circuit... The standard for failing to follow binding precedent is strict; in order to depart from appellate precedent the district court must be "powerfully convinced" that the higher court would overrule its previous decision "at the first available opportunity." (Citations omitted.) *Bierman* is directly on point with the issues before the Court: whether the FDIC, suing former officers and directors of a bank now in receivership with the FDIC as receiver, may be subjected to the affirmative defense of failure to mitigate damages. *O'Melveny* is related, but it is not exact; in addition, *Gaubert* and its progeny remain good law. The Court is not "powerfully convinced" that the relationship between *O'Melveny* and *Bierman* is so clear that this Court should go against the higher authority that binds it.

A copy of Judge Kendell's opinion is attached as Exhibit H.

As discussed in the FDIC-R's prior pleadings, consistent with Judge Kendell's analysis in *Mahajan*, Defendants' third, fourth and fifth affirmative defenses challenging the FDIC-R's post-receivership should be dismissed.

## CONCLUSION

**FOR THESE REASONS**, and those contained in the FDIC-R's motion, reply, supplemental memorandum and supplemental motion, either independently or in combination, the FDIC-R urges the Court to enter an order regarding Defendants' Answers and Affirmative Defenses to the FDIC-R's Second Amended Complaint:

(a) striking with prejudice the Third Affirmative Defense (waiver and estoppel), Fourth Affirmative Defense (failure to mitigate), Fifth Affirmative Defense (comparative negligence) and Sixth Affirmative Defense (lack of standing) pled by each Defendant;

(b) denying Defendants' request to reserve the right to add affirmative defenses; and

(c) granting any other or additional relief the Court deems just and appropriate.

11

4845-6295-7080.v1

Dated: March 12, 2014

Respectfully submitted,

FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR
BROADWAY BANK

By:/s/ Susan G. Feibus
       One of Its Attorneys

Susan G. Feibus
Dean J. Polales
F. Thomas Hecht
Richard Henry Tilghman
**UNGARETTI & HARRIS LLP**
70 W. Madison Street
Suite 3500
Chicago, Illinois 60602
Phone: (312) 977-4400
Fax: (312) 977-4405

12

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served on all counsel of record via e-mail on March 12, 2014.

/s/ Susan G. Feibus
Susan G. Feibus

4845-6295-7080.v1