12-1665.141-RSK                                                July 10, 2014

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

FEDERAL DEPOSIT INSURANCE CORP.,   )
AS RECEIVER FOR BROADWAY BANK,     )
                                   )
             Plaintiff,     )
                                   )
               v.        )   No. 12 C 1665
                                   )
DEMETRIS GIANNOULIAS, GEORGE     )
GIANNOULIAS, JAMES MCMAHON, SEAN  )
CONLON, STEVEN DRY, DONNA       )
ZAGORSKI, STEVEN BALOURDOS,     )
GLORIA SGUROS, ANTHONY D'COSTA,   )
                                   )
             Defendants.   )

## <u>MEMORANDUM OPINION</u>

Before the court is the plaintiff's supplemental motion to strike. For the reasons explained below, we grant the motion in part, and deny it in part.

## <u>BACKGROUND</u>

Plaintiff Federal Deposit Insurance Corporation, as receiver for Broadway Bank ("FDIC-R"), has filed this lawsuit to recover approximately $114 million in losses that the bank suffered on 20 loans. (<u>See</u> Second Am. Compl. ¶ 1.) It alleges that the defendants — seven former directors of Broadway Bank and two former officers — negligently approved the loans. (<u>Id.</u> at ¶ 2.) We will assume that the reader is familiar with our opinion denying the defendants' motion to dismiss the FDIC-R's complaint, which discussed the plaintiff's allegations in more detail. <u>See</u> <u>FDIC v.</u>

- 2 -

<u>Giannoulias</u>, 918 F.Supp.2d 768 (N.D. Ill. 2013). However, the procedural history of the FDIC-R's motion to strike requires additional discussion. After the parties finished briefing the plaintiff's original motion to strike, we ordered the FDIC-R to amend its complaint to remove surplusage. (<u>See</u> Minute Entry, dated Oct. 16, 2013, Dkt. 130.) The defendants answered and filed amended affirmative defenses, restating their earlier defenses challenging the FDIC-R's conduct and adding a new constitutional claim.[1] The FDIC-R then filed a "supplemental" motion to strike those defenses, which is the motion currently before us. It challenges the following amended affirmative defenses: (1) "Waiver and Estoppel" (Third Affirmative Defense); (2) "Failure to Mitigate" (Fourth Affirmative Defense); (3) "Comparative Negligence" (Fifth Affirmative Defense); (4) "Lack of Constitutional Standing" (Sixth Affirmative Defense). The FDIC-R also asks us to strike the defendants' "Reservation of Right to Add Affirmative Defenses."

## DISCUSSION

### A.    Legal Standard

Federal Rule of Civil Procedure 12(f) provides that we "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P.

---

[1]    They abandoned their defenses insofar as they were based upon the FDIC's pre-receivership conduct. (<u>See, e.g.</u>, Giannoulias Defs.' Resp. at 1 n.1.)

- 3 -

12(f). "Ordinarily, defenses will not be struck if they are sufficient as a matter of law or if they present questions of law or fact." Heller Financial, Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989).

**B. The Timeliness of the FDIC-R's Motion**

Under Rule 12(f), a party may file a motion to strike within 21 days after being served with the challenged pleading. See Fed. R. Civ. P. 12(f)(2). The FDIC-R filed its original motion to strike more than 21 days after all but one of the defendants (Gloria Sguros) had served their answers and affirmative defenses. (See FDIC-R's Mot. for Leave ¶ 6; see also Certain Defs.' Resp. to Mot. to Leave at 1, n.1 (acknowledging that the motion was timely as to Sguros).) Nevertheless, we retain discretion to strike material from a pleading after the motion deadline in Rule 12(f)(2) has passed. See Fed. R. Civ. P. 12(f)(1) (authorizing the court to strike matters "on its own," without imposing any particular time period).) Given the substantial time that the parties devoted to their substantive arguments, as well as the fact that the FDIC-R's motion was timely as to one of the defendants, we certainly would have addressed the FDIC-R's arguments on our own motion. As it happens, the defendants reset the clock when they filed their amended affirmative defenses on November 27, 2013. The FDIC-R filed its supplemental motion to strike within 21 days after it was served with the defendants' amended affirmative defenses. So, the

- 4 -

motion was timely under Fed. R. Civ. P. 12(f)(2) as to all defendants.

**C.  Whether the Defendants' Affirmative Defenses Are Adequately Pled.**

The FDIC-R argues that the defendants' Third, Fourth, and Fifth affirmative defenses are insufficiently detailed to satisfy Rule 8.  "Affirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure.  Thus, defenses must set forth a 'short and plain statement,' Fed. R .Civ. P. 8(a), of the defense."  Heller Financial, Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989).  They must contain enough factual content to allow the court to draw a "reasonable inference" that the defense has merit.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Shield Technologies Corp. v. Paradigm Positioning, LLC, No. 11 C 6183, 2012 WL 4120440, *8 (N.D. Ill. Sept. 19, 2012) (Grady, J.) (concluding that affirmative defenses are governed by the pleading standard announced in Iqbal and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  The defendants' Third Affirmative Defense merely alleges, "[u]pon information and belief," that "the FDIC-R's conduct in administering the [Federal Street Loan] caused a material decrease in the value of the loan." (Id. at 78.)  Without knowing what "conduct" the defendants are challenging, the FDIC cannot adequately respond.  The defendants' Fourth and Fifth Affirmative defenses allege, on information and belief, that the

FDIC-R "failed to take actions to maximize the value of the collateral, failed to take the steps necessary to maximize the collection on the loans, sold loans at unreasonably low values, created incentives to obtain less than the maximum level of recovery available on loans, failed to adequately work out loans, and failed to take other actions which adversely affected collateral values and/or the loan recovery." (Id. at 79.) These allegations are too generic to put the FDIC-R on notice of the defendants' defense. Rule 8 does not necessarily require a loan-by-loan analysis of all the ways that the FDIC-R failed to mitigate its damages. But the defendants' current allegations would apply to *any* lawsuit in which the FDIC alleges negligence by a bank's former executives. We will strike the defendants' Third, Fourth, and Fifth Affirmative Defenses.

The defendants have requested leave to amend their affirmative defenses to allege greater detail if we find that they are inadequately pled. (Giannoulias Defs.' Resp. at 13 n.5.) But it would be futile to allow them to amend if we accepted the FDIC-R's position that these defenses are barred by federal and/or state law. So, we will proceed to address the merits of the FDIC-R's arguments.

## C. **Bierman** and **O'Melveny**

The defendants' Third, Fourth, and Fifth Affirmative Defenses are based on their theory that the FDIC-R's conduct as receiver

- 6 -

contributed to its losses on the challenged loans. The FDIC-R argues that FDIC v. Bierman, 2 F.3d 1424 (7th Cir. 1993) bars the defendants from challenging its discretionary decisions regarding Broadway Bank's assets.

### 1. The "No Duty" Rule and the Federal Tort Claims Act ("FTCA")

In Bierman, the FDIC, in its corporate capacity ("FDIC-C"), sued a failed bank's former officers and directors to recover losses to its insurance fund. Id. at 1438. In response, the defendants filed an affirmative defense asserting that the FDIC had failed to pursue claims against guarantors that would have mitigated its losses. Id. The Bierman Court noted that several district courts had held that a bank's former officers cannot challenge the FDIC-R's actions because it owes no duty to those individuals. Id. Instead, its duty "runs to the public." Id. (quoting FDIC v. Greenwood, 719 F.Supp. 749, 751 (C.D. Ill. 1989)) (internal quotation marks omitted). The Bierman Court extended this "no duty" rule to affirmative defenses asserted against the FDIC-C: "[W]hen the FDIC acts to replenish the insurance fund through the disposition of assets of the failed bank, including the right of action against the officers and directors, it has no duty first to attempt to mitigate the damages attributed to those individuals by seeking other, and perhaps less sure, avenues of relief." Id. at 1439-40. The Court then went on to address FDIC v. Carter, 701 F.Supp. 730 (C.D. Cal. 1987), contrary authority

holding that such affirmative defenses "ought to be evaluated in the context of the substantive provisions of the [FTCA], 28 U.S.C. § 2671." Bierman, 2 F.3d at 1440. The FTCA bars claims against the United States that are based upon a federal employee's performance of discretionary functions. It bars:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The Carter court held that the "activities of the FDIC in its corporate capacity of disposing of a failed bank's assets are purely ministerial and therefore may not be characterized as a discretionary function under the Act." Bierman, 2 F.3d at 1440; see also Carter, 701 F.Supp. at 736. The Bierman Court did not expressly state whether it agreed with the Carter court's premise that affirmative defenses "ought to be" evaluated under the FTCA. Indeed, it stated in a footnote that a later case from the same district "chose, rather, to follow the no duty/public policy rationale annunciated in [FSLIC v. Roy, No. JFM-87-1227, 1988 WL 96570 (D.Md. June 28, 1988)]." Bierman, 2 F.3d at 1440 n.18. Nevertheless, it went on to reject the substance of the Carter court's FTCA analysis, citing United States v. Gaubert, 499 U.S. 315 (1991). The plaintiff in Gaubert sued federal officials for negligently managing a savings and loan ("S&L"). The Fifth

- 8 -

Circuit Court of Appeals held that § 2680 did not apply insofar as the officials were performing the S&L's day-to-day business, which the court characterized as ministerial. Id. at 321-22. The Supreme Court reversed: "[d]ay-to-day management of banking affairs, like the management of other businesses, regularly require judgment as to which of a range of permissible courses is the wisest." Id. at 325. Applying Gaubert, the Bierman Court concluded "that excepting the FDIC from such affirmative defenses is consonant with the purpose of the discretionary function exception to the FTCA." Bierman, 2 F.3d at 1441 (emphasis added). It then summed up its holding:

> In short, even if assets were available on the DeVries agreements to defray the losses on those loans, and even if the FDIC's failure to claim these assets could be said to have been negligent during the liquidation process, the discretionary exception to the FTCA and the lack of a duty to the wrongdoers would prevent the assertion of affirmative defenses against the FDIC.

Id. (footnote omitted).

The Supreme Court substantially undercut the rationale for the "no duty" rule in O'Melveny & Myers v. FDIC, 512 U.S. 79 (1994). In O'Melveny, two former officers of a federally-insured S&L allegedly deceived investors in connection with two real estate syndications. Id. at 81. After the S&L failed, the FDIC (as receiver) sued the law firm that had represented the S&L in the syndications for malpractice and breach of fiduciary duty. Id. at 82. The law firm argued that it had no duty to uncover the S&L's own fraud, and that knowledge of the fraud should be imputed to the

FDIC as the S&L's receiver. _Id._ The Ninth Circuit Court of Appeals held that the S&L's knowledge could not be imputed to the FDIC as a matter of federal common law. _Id._ at 83-84. The Supreme Court reversed. First, it held that there is no federal common law of imputation. _Id._ at 83-85. State law governs imputation unless a federal statute preempts state law. _Id._ at 85. Second, the Court concluded that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), which governs the FDIC's conduct as receiver for failed financial institutions, does _not_ preempt state law. Section 1821(d)(2)(A)(i) states that the FDIC "shall . . . by operation of law, succeed to — all rights, titles, powers, and privileges of the insured depository institution . . . ." 12 U.S.C. § 1821(d)(2)(A)(i). FIRREA also creates "special federal rules of decision regarding claims by, and defenses against, the FDIC as receiver." _O'Melveny_, 512 U.S. at 86; _see, e.g._, 12 U.S.C. § 1821(d)(14) (extending the statute of limitations); _id._ at § 1821(e)(1), (3) (authorizing the FDIC to repudiate contracts and limiting damages caused by repudiation). Reading these provisions together, the Court concluded that federal courts lack authority to supplement and/or modify FIRREA's provisions:

> _Inclusio unius_, _exclusio alterius_. It is hard to avoid the conclusion that § 1821(d)(2)(A)(i) places the FDIC in the shoes of the insolvent S & L, to work out its claims under state law, except where some provision in the extensive framework of FIRREA provides otherwise. To create additional "federal common-law" exceptions is not to "supplement" this scheme, but to alter it.

- 10 -

Id. at 86-87.[2]

Our Court of Appeals has not addressed the "no duty" rule after O'Melveny. But courts in this district have recognized that O'Melveny undercuts Bierman's "no duty" analysis. See FDIC v. Majahan, 923 F.Supp.2d 1133, 1140 (N.D. Ill. 2013) (concluding that the "no duty" rule may be in "serious doubt in light of O'Melveny . . . ."); Spangler, 2012 WL 5558941, at *5 ("The Supreme Court's decision in O'Melveny clearly calls into question the Seventh Circuit's decision in Bierman."). The FDIC-R attempts to sidestep O'Melveny by basing its motion entirely on Bierman's alternative FTCA analysis. In Mahajan, the court reasoned that O'Melveny did not affect that portion of Bierman's holding because "O'Melveny did not discuss the FTCA, discretionary actions by agencies, or the Gaubert decision at all." Majahan, 923 F.Supp.2d at 1140 (holding that the Bierman Court's FTCA analysis survived O'Melveny). And it interpreted the Seventh Circuit's decision in Courtney v. Halleran, 485 F.3d 942 (7th Cir. 2007) as "affirming the continuing viability of the FDIC's immunity from suit under the FTCA for its post-

_____

[2] The Court also analyzed the imputation defense under pre-FIRREA law because it was unclear whether FIRREA applied retroactively to the conduct at issue in O'Melveny. See O'Melveny, 512 U.S. at 87-89. That portion of the Court's ruling does not apply here because all of the events at issue in this case occurred after Congress enacted FIRREA. See FDIC v. Spangler, No. 10-cv-4288, 2012 WL 5558941, *4 (N.D. Ill. Nov. 15, 2012) ("To the extent that O'Melveny governs the question presented by the motion to strike, only the first part of O'Melveny applies because FIRREA governs this case.").

receiver decisions regarding the disposition of assets." Mahajan, 923 F.Supp.2d at 1140.

We respectfully disagree with the Mahajan court's interpretation of Courtney and with the bright line that it drew between the two prongs of Bierman's holding. Courtney did not analyze (or even mention) the FTCA. Rather, it held that FIRREA's anti-injunction provision barred a failed bank's creditors from challenging the FDIC's distribution of the bank's assets. Courtney, 485 F.3d at 948-49; see also 28 U.S.C. § 1821(j) ("Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver . . . ."). The FDIC-R has not argued that the defendants' state-law affirmative defenses "affect or restrain" the FDIC-R within the meaning of § 1821(j). So, FIRREA itself does not preempt those defenses. And O'Melveny teaches that we may not "supplement" or "modify" the statutory scheme that Congress adopted. See O'Melveny, 512 U.S. at 86-87. It is true, as Mahajan points out, that O'Melveny did not discuss the FTCA or Gaubert. But we have doubts about whether Bierman actually held that the FTCA governs true affirmative defenses. By its terms, the FTCA applies to "claims," not affirmative defenses. Cf. National Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B., 28 F.3d 376, 393 (3d Cir. 1994) (concluding that the word

"claim" in FIRREA did not encompass affirmative defenses); see also id. ("When a lawyer files a responsive pleading to an action or claim, she does not say that she is bringing an action or filing a claim; instead, she says that she is answering, responding to, or defending against an action."). Bierman did not address this issue. It assumed that the FTCA applied and distinguished Carter on its terms, while at the same time noting that Carter had "never garnered a following, having been criticized in its own district a few years later . . . ." Bierman, 2 F.3d at 1440 n.18. Moreover, Carter's premise — that the FTCA applies to affirmative defenses — is questionable. The Carter court stated that the "substantive portions of the FTCA which relate to the determination of liability do apply both to affirmative suits brought against the government and to counterclaims and affirmative defenses in suits originally brought by the government." Carter, 701 F.Supp. at 731 (emphasis added). The authorities that it cited for this proposition all dealt with claims against a party entitled to sovereign immunity. See Chemehuevi Indian Tribe v. California State Bd. of Equalization, 757 F.2d 1047, 1052-53 (9th Cir. 1985) (counterclaim for unpaid taxes); Fed. R. Civ. P. 13(d) (governing counterclaims against the United States); see also Federal Deposit Ins. Corp. v. Jennings, 615 F.Supp. 465, 467 (W.D. Okla. 1985) (third-party tort claims against the FDIC, in its corporate capacity, and the Office of the Comptroller of Currency). A freestanding "claim" for

- 13 -

failing to mitigate damages is nonsensical: even if the defendants successfully prove the defense, they cannot obtain an affirmative recovery from the United States.  Cf. Federal Deposit Ins. Corp. v. Citizens Bank & Trust Co. of Park Ridge, Ill., 592 F.2d 364, 374 (7th Cir. 1979) (the FDIC does not waive its sovereign immunity by filing suit "except with respect to matters in recoupment arising out of the same transaction or occurrence which is the subject matter of the suit, to the extent of defeating the plaintiff's claim.") (citation and internal quotation marks omitted).

We tend to agree with Spangler that Bierman applied the FTCA by analogy.  See Spangler, 2012 WL 5558941, *4 ("The [Bierman] court also found support for its conclusion by _analogizing_ to the discretionary function exception to the [FTCA].") (emphasis added). The FTCA exception for discretionary actions prevents second-guessing, and applying that policy to affirmative defenses is "consonant with the purpose of" the exception.  Bierman, 2 F.3d at 1441.  Arguably, Bierman applied the _policy_ behind the FTCA's discretionary exception to create a bar to affirmative defenses that does not appear in FIRREA itself.  To that extent, O'Melveny raises significant doubts about whether any portion of Bierman survives.  As Spangler noted, "FIRREA includes a number of tailored rules to be applied in suits by federal receivers, yet it does not include a provision barring the affirmative defense of failure to mitigate damages."  Spangler, 2012 WL 5558941, *4 n.3.  O'Melveny

- 14 -

does not so clearly conflict with <u>Bierman</u> that we can declare that it is no longer good law. <u>See</u> <u>id.</u> at *5. But we agree with <u>Spangler</u> that there is too much legal uncertainty surrounding this issue to warrant granting a motion to strike at the pleading stage.[3] <u>See</u> <u>id.</u>; <u>see also</u> <u>FDIC v. Skow</u>, Civil Action No. 1:11-CV-0111-SCJ, 2012 WL 8503168, *12 (N.D. Ga. Feb. 27, 2012) (similar).

## 2. Whether State Law Bars the Defendants' Affirmative Defenses

The FDIC-R also argues that Illinois courts have recognized something akin to the "no duty" rule. But the cases it cites are easily distinguishable. In <u>Kirchgessner v. County of Tazewell</u>, 516 N.E.2d 379, 380 (Ill. Ct. App. 1987), the plaintiff alleged that the defendant negligently allowed a dog to escape from a county animal shelter. The plaintiff was injured when his motorcycle struck the dog on a freeway. <u>Id.</u> The court held that the county owed no duty to the plaintiff, citing the general principle that "a governmental body, when exercising authority pursuant to a governmental duty and for a governmental purpose, cannot be liable for the negligent exercise of that authority." <u>Id.</u> at 382; <u>see also</u> <u>Bainter v. Chalmers Township, McDonough County</u>, 555 N.E.2d 1195, 1196 (Ill. Ct. App. 1990) (county had no duty to plaintiff to clear brush from the road); <u>Farmer City State Bank v. Guingrich</u>,

---

[3] We express no opinion at this time about whether the FDIC-R is a federal agency for purposes of the FTCA. (<u>See</u> Giannoulias Defs.' Supp. Mem. (Dkt. 133); FDIC-R's Supp. Mem. (Dkt. 143).)

- 15 -

487 N.E.2d 758, 763-64 (Ill. Ct. App. 1985) (dismissing affirmative defense of negligence because the bank did not owe a fiduciary duty to its customer).  None of these cases involve a state or federal receiver.  The FDIC-R stepped into Broadway Bank's shoes, <u>see</u> <u>O'Melveny</u>, 512 U.S. at 86-87, and it has not cited any state cases supporting its argument that it is entitled to greater protections than the bank would have enjoyed if it had filed a claim against its former executives in its own name.  Once again, there are too many unresolved legal questions to strike the defendants' affirmative defenses at this stage of the case.

**D.   The Defendants' Sixth Affirmative Defense ("Lack of Constitutional Standing")**

The defendants argue that Broadway Bank's due-process and equal-protection rights were violated because the bank never had an opportunity to challenge the government's decision to seize its property.  So, according to the defendants, the FDIC was unlawfully appointed and cannot pursue claims against the defendants.  Before addressing the substance of the defendants' constitutional defense, we will first address several issues regarding standing.

Among other arguments, the FDIC contends that it has "standing" by virtue of the injury alleged in the complaint (over $100 million in losses on the challenged loans).  (<u>See</u> FDIC-R's Reply at 3-5.)  We think that this argument misconstrues the defendants' defense.  The defendants argue that if the FDIC-R obtained the bank's assets without due process, then it has no

legal right to pursue claims for losses with respect to those assets. Federal Deposit Ins. Corp. v. Ernst & Young LLP, 374 F.3d 579 (7th Cir. 2004) is distinguishable. In that case, the FDIC-C sued the auditor of a failed bank for fraud and negligence. Id. at 581-82. The district court concluded that the FDIC-C lacked standing because permitting a direct suit by the FDIC-C would allow it to jump ahead of other creditors, contrary to FIRREA provisions governing creditor priority. Id. at 581. Our Court of Appeals rejected this line of reasoning. See id. ("What this has to do with 'standing' is unfathomable."). The FDIC-C had standing because it was injured when it was required to disburse money from its insurance fund to satisfy claims originating (in part) from the auditor's alleged misconduct. Id. at 581-82. In this case, the defendants are challenging the FDIC-R's authority to assert claims for *Broadway Bank's* losses.

The parties also disagree about whether the defendants can assert a defense based upon a constitutional injury that Broadway Bank, not the individual defendants, suffered. In its opening brief, the FDIC argued, without citing any relevant case law, that the defendants lacked standing to assert their Sixth Affirmative Defense. The defendants responded that they were within the "zone of interests protected by the law involved." (Giannoulias Defs.' Resp. at 15.) We agree with the FDIC-R that the "zone of interests" test is irrelevant, inasmuch as the defendants are not

asserting a claim against the FDIC-R under FIRREA or the Illinois Banking Act. They are asserting an affirmative defense based upon the procedures underlying the state's acquisition of the bank's assets and the FDIC-R's appointment as receiver. See Costello v. Grundon, 651 F.3d 614, 629 (7th Cir. 2011) (defendants were not required to establish that they were within the zone of interests protected by the Securities Exchange Act and related regulations to assert a defense based upon violations of those statutes). But by the same token, the defendants are not required to prove that they were injured in order to assert an *affirmative defense* challenging the plaintiff's authority to pursue the claims alleged in the complaint. Costello is analogous and supports a finding that the defendants are entitled to assert their Sixth Affirmative Defense:

> The Borrowers do not seek to maintain an action under the Securities Exchange Act or Regulations G and U, but rather, to defend against an action based on alleged violations of the statute and regulations. They therefore need not establish that they fit within the zone of interests protected by those laws to be entitled to assert their affirmative defense.

Id. at 629. We turn, then, to the substance of the defendants' affirmative defense.

**1. Due Process Clause**

When analyzing a procedural due-process claim, we must determine: (1) whether the plaintiff was deprived of a protected interest; and (2) what process was due. Leavell v. Illinois Dept. of Natural Resources, 600 F.3d 798, 804 (7th Cir. 2010). The

parties in this case tacitly agree that Broadway Bank had a protected property interest in the assets that the Department of Financial and Professional Regulation, Division of Banking (the "Banking Division") seized. With respect to the second issue — what process is due — courts distinguish between "(a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." Id. (citations and internal quotation marks omitted). Here, the defendants' defense is based upon established state procedures governing when the state may seize a state-chartered bank's assets and appoint a receiver to conduct its affairs. Ordinarily, this would suggest that a pre-deprivation hearing is feasible and, perhaps, constitutionally required. Id. But courts have held that a pre-deprivation hearing is not feasible in the banking context, where the government must move quickly to preserve the interests of depositors and other affected parties. Fahey v. Mallonee, 332 U.S. 245, 253-54 (1947) (upholding a provision of the Home Owners' Loan Act of 1933 that allowed the government to appoint a conservator without a prior hearing; this summary procedure was appropriate given "the delicate nature of the institution and the impossibility of preserving credit during an investigation . . . ."); see also Haralson v. Federal Home Loan Bank Bd., 837 F.2d 1123, 1126-27 (D.C. Cir. 1988) (In giving the Federal Home Loan Bank Board broad powers to take over insolvent banks, "Congress has obviously weighed the competing

interests of depositors against those of owners and operators in the drastic circumstances of insolvency or mismanagement."). In such a case, post-deprivation procedures may satisfy due process. See Fahey, 322 U.S. at 253-54; see also Parratt v. Taylor, 451 U.S. 527, 538-39 (1981) ("We have . . . recognized that postdeprivation remedies made available by the State can satisfy the Due Process Clause."). Where such procedures exist, "a plaintiff must either avail herself of the remedies guaranteed by state law or demonstrate that the available remedies are inadequate." Doherty v. City of Chicago, 75 F.3d 318, 323 (7th Cir. 1996). A remedy is "inadequate" if it is "meaningless or nonexistent and, thus, in no way can be said to provide the due process relief guaranteed by the fourteenth amendment." Easter House v. Felder, 910 F.2d 1387, 1406 (7th Cir. 1990).

In light of the just-cited authorities, the defendants concede that the Constitution did not require a pre-deprivation hearing in this case. (See Giannoulias Defs.' Resp. at 6-8; see also id. at 8 n.2.)[4] But they argue that federal and state law do not provide

---

[4] The FDIC-R argues that Broadway Bank did receive some pre-deprivation process. We agree that the bank had opportunities to challenge the Banking Division's findings at certain points in the process, prior to its final decision to seize the bank's assets. As we read the relevant regulations, the bank could have requested a hearing challenging the findings underlying the Banking Division's February 19, 2010 "Notice of Intent to Take Possession." (See Notice of Intent to Take Possession and Control Pursuant to Section 51 of the Illinois Banking Act ("Section 51 Notice"), attached as Ex. B to FDIC-R's Reply; see also 205 ILCS 5/51 (authorizing such notice); 38 Ill. Adm. Code § 392.30 ("Any party may file a Request for a Hearing on an administrative decision."); id. at § 392.20 (an "administrative decision" includes "an order, fine, revocation of a Foreign Bank Representative Office license, or other regulatory action issued by the Office of Banks and Real Estate pursuant to authority granted under the Illinois Banking Act [205 ILCS 5] . . . ."). The Section 51 Notice notified the

*any* post-deprivation procedure when the FDIC is appointed receiver at the Banking Division's request.

### a. *Federal Law*

The parties agree that the bank could not have challenged its seizure under FIRREA. The FDIC may become the receiver of a state depository institution in several ways: (1) it may accept a request to serve as receiver from the appropriate state agency, 12 U.S.C. § 1821 (c)(1) & (c)(3)(A); (2) it may appoint itself as receiver if certain conditions are met, <u>id.</u> at § 1821(c)(4); (3) an "[a]ppropriate Federal banking agency" may appoint the FDIC as receiver in some circumstances, <u>id.</u> at § 1821(c)(9); and (4) the FDIC's board of directors may appoint the FDIC as receiver to prevent losses to the deposit insurance fund, <u>id.</u> at § 1821(c)(10). FIRREA provides for post-deprivation review in federal court when the FDIC is appointed receiver under § 1821(c)(4),(9), or (10), <u>but not</u> when the FDIC accepts a state agency's request to serve as receiver under § 1821(c)(3)(A):

(7) Judicial review

If the Corporation is appointed (including the appointment of the Corporation as receiver by the Board of Directors) as conservator or receiver of a depository

---

bank that the Division would seize its assets if the bank did not take certain "corrective actions" before April 20, 2010. (<u>See</u> Section 51 Notice at 2.) But this issue — the state's grounds for issuing the notice — is distinct from the issue of whether the bank had taken the corrective actions before the deadline. The Banking Division concluded that the bank had not taken those actions, and it was that finding that prompted it to seize the bank's assets. (<u>See</u> Letter from J. Solis to A. Lowe, dated Apr. 23, 2010, attached as Ex. G to the FDIC-R's Reply.) As far as the record reveals, it did not conduct a hearing before making that decision.

institution <u>under paragraph (4), (9), or (10)</u>, the depository institution may, not later than 30 days thereafter, bring an action in the United States district court for the judicial district in which the home office of such depository institution is located, or in the United States District Court for the District of Columbia, for an order requiring the Corporation to be removed as the conservator or receiver (regardless of how such appointment was made), and the court shall, upon the merits, dismiss such action or direct the Corporation to be removed as the conservator or receiver.

12 U.S.C. § 1821(c)(7) (emphasis added).  In this case, the Banking Division asked the FDIC to serve as Broadway's receiver and the FDIC accepted.  So, judicial review was not available under FIRREA.

In its opening brief, the FDIC-R argued that post-deprivation review was available under the Administrative Procedures Act ("APA"), citing <u>James Madison Ltd. by Hecht v. Ludwig</u>, 82 F.3d 1085 (D.C. Cir. 1996).  <u>See</u> <u>id.</u> at 1094 ("In the absence of a statute specifically providing for judicial review of the FDIC's appointment as receiver of national banks, and without clear evidence that Congress intended either section 1821(j) or section 1821(d)(11) to bar federal court jurisdiction, we hold that the APA authorizes federal courts to review and set aside improper appointments of the FDIC as receiver of national banks.").  But at least one appellate court has held that the APA does not apply where, as here, a state agency seizes the assets of a state-chartered bank.  <u>See</u> <u>Hindes v. F.D.I.C.</u>, 137 F.3d 148, 167 (3d Cir. 1998) (distinguishing <u>James Madison</u> because that case involved a national bank, not a state-chartered bank).  "APA review of the

- 22 -

appointment of the FDIC as receiver is not proper here because the appointment was not made by a federal agency, but rather by the Secretary, a state official." Id.; see also Resident Council of Allen Parkway Village v. U.S. Dept. of Housing & Urban Development, 980 F.2d 1043, 1055 (5th Cir. 1993) (holding that the APA does not apply to non-federal agencies); 5 U.S.C. § 701(b)(1) (Under the APA, "'agency' means each authority of the Government *of the United States*, whether or not it is within or subject to review by another agency . . . .") (emphasis added). The FDIC-R did not address this argument in its reply brief, thereby waiving the issue.

　　　　*b.  State law*

　　Turning to state law, the Illinois Banking Act (like FIRREA) provides a mechanism for appointing a receiver to operate a distressed bank:

> If the Commissioner determines (which determination may be made at the time, or any time subsequent to his taking possession and control of a bank and its assets) that no practical possibility exists to reorganize the bank after reasonable efforts have been made and that it should be liquidated through receivership, he shall appoint a receiver and require of him such bond and security as the Commissioner deems proper, and the Commissioner, represented by the Attorney General, shall, if the Federal Deposit Insurance Corporation is not acting as receiver, file a complaint for the dissolution or winding up of the affairs of such bank in the circuit court of the county where such bank is located.

205 ILCS 5/58(a).  And also like FIRREA, the Illinois Banking Act gives banks the opportunity to challenge the Commissioner's decision to appoint a receiver:

> Whenever the Commissioner shall have taken possession and control of a state bank and its assets for the purpose of examination, reorganization or liquidation through receivership, or whenever the Commissioner shall have appointed a receiver for a bank, **other than the Federal Deposit Insurance Corporation**, and filed a complaint for the dissolution or for the winding up of the affairs of a bank, and the bank denies the grounds for such actions, it may at any time within ten days apply to the Circuit Court of Sangamon County, Illinois, to enjoin further proceedings in the premises; and such court shall cite the Commissioner to show cause why further proceedings should not be enjoined, and if the court shall find that such grounds do not exist, the court shall make an order enjoining the Commissioner and any receiver acting under his direction from all further proceedings on account of such alleged grounds . . . .

205 ILCS 5/67 (emphasis added). The defendants and the FDIC-R interpret this language to exclude judicial review if the FDIC is appointed receiver. (<u>See</u> Giannoulias Defs.' Resp. at 5; FDIC-R Supp. Reply at 9.)[5] The FDIC-R argues, instead, that review is available under the Illinois Administrative Procedures Act ("IAPA"). <u>See</u> 205 ILCS 5/48(10) ("All final administrative decisions of the Commissioner hereunder shall be subject to judicial review pursuant to the provisions of the Administrative

---

[5] We are not so sure. Section 5/67 states that a bank can obtain review if **either** of the following conditions is satisfied: (1) the Commissioner takes possession and control of the bank and its assets "for the purpose of examination, reorganization or liquidation through receivership;" "**or**" (2) the Commissioner appoints a receiver, other than the FDIC, and files a complaint to dissolve the bank or wind up its affairs. 205 ILCS 5/67 (emphasis added). In his letter asking the FDIC to serve as receiver, the Banking Division's Director stated: "I took possession and control of the Bank at 6:00 p.m. CDT on April 23, 2010 for the purpose of examination, reorganization or liquidation through receivership." (<u>See</u> Letter from J. Solis to A. Lowe, dated Apr. 23, 2010, attached as Ex. G to the FDIC-R's Reply.) This language tracks § 67's first clause and, arguably, triggered the bank's right to seek review of the Director's actions in state court. The fact that the second condition for judicial review was not satisfied — because the FDIC accepted the receivership — is arguably irrelevant.

- 24 -

Review Law."). The defendants respond that the Banking Division's decision to seize the bank was not a "final administrative decision" as the IAPA defines that term. (See Giannoulias Defs.' Supp. Resp. at 9-11; Giannoulias Defs.' Supp. Sur-Reply at 2-3.) The FDIC-R does not address this argument. (See FDIC-R Reply at 8-9.) Even assuming that Broadway Bank could have obtained judicial review under the IAPA (or the Illinois Banking Act, see supra n.5), neither side has addressed whether those procedures would have been adequate under the circumstances. The Banking Division seized the bank's assets, and the FDIC accepted receivership, at essentially the same time. So, by the time the bank filed suit, its assets would have been beyond the state court's control. See 12 U.S.C. § 1821(j) ("Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver."); 12 U.S.C. § 1821(c)(3)(C) (When the FDIC is appointed receiver by a state agency, it "shall not be subject to the direction or supervision of any other agency or department of the United States or any State in the exercise of its rights, powers, and privileges."). Arguably, the state court could have enjoined the Banking Division from "further proceedings in the premises," but it is unclear what (if any) state-administrative proceedings remained once the FDIC obtained

- 25 -

exclusive control over the bank's assets.  Finally, neither side has addressed whether the bank could have obtained damages from the Banking Division for improperly seizing its assets.  Under the circumstances, we conclude that it would be inappropriate to strike the defendant's Sixth Affirmative Defense at this stage of the case.

### 2.  Equal Protection

As an alternative basis for their Sixth Affirmative Defense, the defendants argue that there is no rational basis for providing judicial review with respect to certain bank closures, but not when a state official appoints the FDIC as receiver.  (See Giannoulias Defs.' Supp. Resp. at 12-14.)  This argument gets short shrift in the parties' briefs.  Given our ruling with respect to the defendants' due-process arguments, we conclude that it is unnecessary to analyze their alternative equal-protection theory at this time.

### E.  Reservation of Rights

In their answers, defendants purport to "reserve the right to assert additional affirmative defenses as this matter progresses." (See, e.g., Certain Defs.' Answer at 76.)  The FDIC-R argues that we should strike this "reservation of rights" because affirmative defenses are waived if they are not raised in the first responsive pleading.  See Visco Financial Servs. Ltd. v. Siegel, No. 08 C 4029, 2008 WL 4900530 (N.D. Ill. Nov. 13, 2008) ("Affirmative

- 26 -

defense 24 states that '[Siegel] reserves the right to assert additional affirmative defenses upon information and discovery,' which is impermissibly pled because if a party does not bring an affirmative defense in its first responsive pleading, then it is waived."). The defendants respond that a defendant may move to amend its affirmative defenses if new information comes to light. Wallace v. City of Chicago, 472 F.Supp.2d 942, 946 (N.D. Ill. 2004). We agree, but it is unnecessary to expressly reserve that right in a pleading. Id. ("As with all motions for leave to amend, the district court has the discretion to allow an answer to be amended to assert an affirmative defense not raised at the outset."). The defendants' "reservations of rights" are stricken as a legal nullity. If they later seek leave to add additional affirmative defenses, we will address the issue at that time.

## CONCLUSION

The FDIC-R's motion to strike [154] is granted in part and denied in part. The defendants' "Reservations of Rights" are stricken. The defendants' Third, Fourth, and Fifth Affirmative Defenses are stricken without prejudice. The motion is denied as to the defendants' Sixth Affirmative Defense. By July 30, 2014, the defendants may amend their affirmative defenses to provide additional detail regarding the conduct they are challenging. A status hearing is set for July 16, 2014 at 11:00 a.m.

- 27 -

DATE:        July 10, 2014


ENTER:

_____

John F. Grady, United States District Judge