## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR BROADWAY BANK, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No. 12 CV 1665 |
| v. | ) ) | Judge Robert M. Dow Jr. |
| DEMETRIS GIANNOULIAS, GEORGE GIANNOULIAS, JAMES MCMAHON, SEAN CONLON, STEVEN DRY, DONNA ZAGORSKI, STEVEN BALOURDOS, GLORIA SGUROS and ANTHONY D'COSTA, | ) ) ) ) ) ) ) ) | Magistrate Judge Daniel Martin |
| Defendants. | ) | |

## NOTICE OF MOTION

TO:    ALL COUNSEL OF RECORD

PLEASE TAKE NOTICE that on February 5, 2015 at 10:00 a.m., or as soon thereafter as counsel may be heard, we shall appear before The Honorable Magistrate Judge Daniel Martin in Courtroom 1350 of the United State District Courthouse at 219 South Dearborn Street, Chicago, Illinois, and then and there present **(1) Federal Deposit Insurance Corporation Office of Inspector General's Motion for Protective Order Regarding Subpoena Issued by "Certain" Defendant; and (2) Memorandum in Support of FDIC-OIG's Motion for Protective Order Regarding Subpoena Issued by "Certain" Defendants**, true and correct copies were filed and served upon you.

Dated:  January 30, 2015

Respectfully submitted,

FEDERAL DEPOSIT INSURANCE CORPORATION
OFFICE OF INSPECTOR GENERAL

By: _John A. Davidovich_
    John A. Davidovich

John A. Davidovich
Counsel
FDIC Office of Inspector General
3501 North Fairfax Drive
Arlington, Virginia 22226
(703) 562-2439 (phone)
(703) 562-6433 (facsimile)

Adriana Rojas
Associate Counsel
FDIC Office of Inspector General
3501 North Fairfax Drive
Arlington, Virginia  22226
(703) 562-6344 (phone)
(703) 562-6433 (facsimile)

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served on all counsel of record via e-mail on January 30, 2015.

John A. Davidovich

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR BROADWAY BANK, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 12 CV 1665 |
| v. | ) ) ) | Judge Robert M. Dow Jr. |
| DEMETRIS GIANNOULIAS, GEORGE GIANNOULIAS, JAMES MCMAHON, SEAN CONLON, STEVEN DRY, DONNA ZAGORSKI, STEVEN BALOURDOS, GLORIA SGUROS and ANTHONY D'COSTA, Defendants. | ) ) ) ) ) ) ) ) | Magistrate Judge Daniel Martin |

**FEDERAL DEPOSIT INSURANCE CORP.'S MOTION FOR PROTECTIVE ORDER REGARDING SUBPOENA ISSUED BY "CERTAIN" DEFENDANTS**

The Federal Deposit Insurance Corporation Office of Inspector General ("FDIC-OIG"), a non-party to this litigation, by its attorneys, pursuant to Federal Rule of Civil Procedure 26(b), respectfully moves the Court to enter a protective order providing that the FDIC-OIG is not required to provide further responses to the subpoena dated October 7, 2014 issued by Defendants Conlon, Dry, Zagorski, Balourdos, Sguros and D'Costa ("Certain Defendants" or "Defendants") on the grounds that the subpoena seeks irrelevant information unrelated to the 20 Loss Loans and providing additional documents would be oppressive and unduly burdensome.

In support of this motion, the FDIC-OIG states:

1.    Under Federal Rule of Civil Procedure 26(b), parties may obtain discovery of any "nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b). Matters that are irrelevant to the claims and defenses at issue are not discoverable. *E.E.O.C. v.*

*Merrill Lynch*, 677 F. Supp. 918, 932 (N.D. Ill. 1987) (denying motion to compel where the information sought was "not relevant to any issue remaining in this case"). Under Rule 26(b)(1)(C), a court may limit discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(1)(C).

2.  On January 20, 2015, the FDIC-OIG's counsel had a telephone conversation with the Certain Defendants' counsel wherein they in good faith attempted to resolve the differences giving rise to this motion but were unable to reach an accord.

3.  The FDIC-OIG should be protected from providing additional documents in response to the subpoena dated October 7, 2014 issued to the FDIC-OIG by Certain Defendants as the subpoena seeks irrelevant information unrelated to the 20 Loss Loans and providing additional documents would be oppressive and unduly burdensome.

4.  A memorandum is submitted in support of this motion.

**FOR THESE REASONS**, either independently or in combination, the FDIC-OIG urges the Court to enter a protective order, providing that the FDIC-OIG need not provide additional documents in response to the subpoena dated October 7, 2014 issued to the FDIC-OIG by Certain Defendants, and granting any further and additional relief the Court deems appropriate.

Dated: January 30, 2015

Respectfully submitted,

FEDERAL DEPOSIT INSURANCE
CORPORATION OFFICE OF INSPECTOR
GENERAL

By: _John A. Davidovich_
      John A. Davidovich

John A. Davidovich
Counsel
FDIC Office of Inspector General
3501 North Fairfax Drive
Arlington, Virginia 22226
(703) 562-2439 (phone)
(703) 562-6433 (facsimile)

Adriana Rojas
Associate Counsel
FDIC Office of Inspector General
3501 North Fairfax Drive
Arlington, Virginia 22226
(703) 562-6344 (phone)
(703) 562-6433 (facsimile)

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served on all counsel of record via e-mail on January 30, 2015.

_John A Davidovich_

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR BROADWAY BANK, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No. 12 CV 1665 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| DEMETRIS GIANNOULIAS, GEORGE GIANNOULIAS, JAMES MCMAHON, SEAN CONLON, STEVEN DRY, DONNA ZAGORSKI, STEVEN BALOURDOS, GLORIA SGUROS and ANTHONY D'COSTA, | ) ) ) ) ) ) ) | Magistrate Judge Daniel Martin |
| Defendants. | ) | |

### MEMORANDUM IN SUPPORT OF FDIC OFFICE OF INSPECTOR GENERAL'S MOTION FOR PROTECTIVE ORDER REGARDING SUBPOENA ISSUED BY GIANNOULIAS DEFENDANTS

### INTRODUCTION

Defendants Sean Conlon, Steven Dry, Donna Zagorski, Steven Balourdos, Gloria Sguros and Anthony D'Costa ("Defendants") served a subpoena on the Federal Deposit Insurance Corporation Office of Inspector General ("FDIC-OIG"), a non-party to this litigation. The subpoena seeks all of the documents related to the Material Loss Review ("MLR") performed after the Bank closed to determine, *inter alia*, the cause of failure. The MLR was done by the FDIC-OIG with KPMG's assistance.

Defendants' requests go far beyond the well-established parameters of relevant discovery – the 20 loans that are the subject of the Amended Complaint ("Loss Loans"). Defendants' requests are further irrelevant because Defendants could not have relied on the MLR's regulatory analysis, which was done after the Bank closed. By producing documents relating to KPMG's

methodology, its sample loan review (which included five of the Loss Loans), and its conclusions, *inter alia*, about the Bank's loan underwriting and credit- administration practices, the FDIC-OIG has satisfied any arguable production obligation.

This is yet another attempt by Defendants to unduly expand the scope of this litigation. Each prior effort has been rebuffed. This should be, too. To require the FDIC-OIG to produce anything more would be oppressive and unduly burdensome. Accordingly, the FDIC-OIG is entitled to protection under Federal Rule of Civil Procedure 26(b).

## BACKGROUND FACTS

The FDIC-OIG is an independent unit within the FDIC that conducts audits, investigations and other reviews of the FDIC's programs and operations. Under Section 38(k) of the Federal Deposit Insurance Act, 12 U.S.C. 1831o, when the Deposit Insurance Fund ("DIF") incurs a material loss with respect to an insured depository institution, the inspector general of the appropriate federal banking agency must make a written report to the agency to review the agency's supervision of the institution and to ascertain why the institution's problems resulted in a material loss to the DIF.

On April 23, 2010, the Illinois Department of Financial and Professional Regulation closed Broadway Bank and appointed the FDIC as receiver ("FDIC-R"). *See* Dkt. #144 at 2. On May 14, 2010, the FDIC-R notified the FDIC-OIG that Broadway's total assets at closing were $1.1 billion and the estimated loss to the DIF was $390.2 million. *See Id.* Following Broadway's closure, consistent with its statutory mandate, the FDIC-OIG conducted a MLR of Broadway's failure and issued a written report.[1] The FDIC-OIG retained KPMG to assist with the MLR.

---

[1] A MLR is a public document. Additionally, Defendants received a copy of the MLR for Broadway as part of the FDIC-R's document production.

The MLR concluded that the primary causes of Broadway's failure and the $390.2 million loss to the DIF were because of:

> its Board and management pursuing an aggressive growth strategy concentrated in CRE and ADC loans,[2] without establishing sound credit risk management practices to manage those loans, and the bank's inability to absorb significant loan-related losses during a severe economic downturn. Broadway's CRE and ADC concentrations were exacerbated by the bank's significant emphasis on out of territory lending and large borrower relationships.

As part of its work for the FDIC-OIG, KPMG selected and analyzed 15 Broadway loans. Of this sample, five are Loss Loans alleged in the Amended Complaint.

Defendants served a wide-ranging subpoena, dated October 7, 2014, to the non-party FDIC-OIG. Exhibit 1.

On November 7, 2014, the FDIC-OIG served its objections and response. Exhibit 2. The FDIC-OIG's objections included overbreath, vagueness, various privileges and confidentiality. The FDIC-OIG further objected to the requests as irrelevant to the extent that the requests went beyond the Loss Loans. Nonetheless, without waiving its objections, the FDIC-OIG agreed to "produce non-privileged documents within its possession, custody or control responsive to the request that refer to or discuss the 20 loss loans that are the subject of the Amended Complaint, and not already produced by the FDIC-R or the FDIC-C."

On November 13, 2014, the FDIC-OIG produced 138 documents consisting of excerpts from KPMG's work papers. These excerpts include background about the FDIC; KPMG's methodology and work plan; and KPMG's conclusions about the causes of Broadway's failure and material loss, the Bank's loan underwriting, credit administration practices, liquidity and the FDIC's supervision of Broadway and include KPMG's review and evaluation of the sample

---

[2] "CRE" refers to a commercial real estate loan. "ADC" refers to an acquisition, development and construction loan. *See* Dkt. #144 at 1.

loans. Virtually all of this information is included in the publicly available MLR. Further, the primary source of KPMG's information was the Bank's reports of examination and the regulatory work papers. These excerpts reference a few interviews with FDIC-C or IDFPR regulatory personnel undertaken after the Bank's closure. The FDIC-OIG did not produce any FDIC-C documents reviewed by KPMG as any such documents are in the FDIC-C's control.

As indicated at the January 20, 2015 "meet and confer," Defendants are dissatisfied with the FDIC-OIG's production. Defendants believe that the entirety of the KPMG work papers (including all documents KPMG reviewed) and everything in the FDIC-OIG's file are relevant because: (1) "every allegation" of the FDIC-R's complaint puts the Bank's loan practices at issue; and (2) the post-closure regulatory analysis of the material causes of the Bank's failure supports Defendants' regulatory reliance defense.

The FDIC-OIG disagrees and seeks protection from producing additional documents in response to the following requests:

- All agreements between the FDIC-OIG and KPMG regarding Broadway. (Request No. 1.)

- All documents sufficient to identify all FDIC-OIG personnel who worked on Broadway's MLR. (Request No. 3.)

- All documents provided by or to the FDIC-OIG regarding Broadway. (Request Nos. 4, 5.)

- All FDIC-OIG internal or external communications regarding Broadway. (Request No. 6.)

- All KPMG work papers, reports, summaries or any other documents, regarding Broadway. (Request Nos. 7, 8.)

- All documents "solicited, received or considered" by the FDIC-OIG from any other FDIC division regarding Broadway's MLR. (Request No. 9.)

- All FDIC-OIG drafts of Broadway's MLR. (Request No. 10.)

4

- All FDIC-OIG interview notes and all other FDIC-OIG notes and memoranda regarding any tests or examinations performed by the FDIC-OIG as part of Broadway's MLR. (Request Nos. 13, 14.)

- "All documents reviewed, analyzed, and/or relied on by" FDIC-OIG as part of the MLR "to the extent not responsive to Requests 1 through 14, *supra*." (Request No. 15.)

## ARGUMENT

I. **The FDIC-OIG Should be Protected from Further Production Because Defendants' Requests Go Beyond the Well-Established Discovery Limitation of the Loss Loans.**

The scope of appropriate discovery in this case is well settled. Both Judge Grady and this Court repeatedly have made it clear that discovery should be limited to the Loss Loans. *See, e.g.*, Dkt. #239 at 3 ("[t]he scope of the FDIC-R's lawsuit remains limited to the 20 Loss Loans"); Dkt. #206 at 6 ("[f]or purposes of this lawsuit, the only relevant aspect of the Bank's operation is the 20 Loss Loans. The FDIC-R's positions on…the Bank's overall condition is irrelevant to the FDIC-R's theories of liability as the FDIC-R is not seeking to recover for any aspect of the Bank's operation other than the 20 Loss Loans"); Dkt. #132 at 4-5 (denying Defendants' motion to compel search terms "Capitalized" and "Capitalization" as part of ESI Protocol because the "connection between [these] terms…and the complaint's core negligence allegations is tenuous"); Dkt. #158-1 at 5; Dkt. #206 at 6.

Defendants' subpoena to the FDIC-OIG goes far beyond the Loss Loans. As indicated in the FDIC-OPIG's response, the requests are overbroad,[3] vague and seek privileged and confidential material. Nonetheless, the FDIC-OIG produced excerpts from the KPMG work papers that discussed and summarized its sample loan review, which included five of the Loss Loans. Additionally, the FDIC-OIG produced excerpts of the KPMG work papers that described its conclusions, *inter alia*, about the Bank's loan underwriting and credit administrative

---

[3] In addition to overbroad search terms, the time frame for Defendants' subpoena is overbroad in that it seeks documents from December 1, 2004 to the present.

practices.  This production more than satisfies the well-established relevance limitation of the Loss Loans.

Any claim by Defendants that the requested documents should be produced because they are relevant to the Bank's lending practices, generally, has been rejected.  As Judge Grady recognized:  "There's absolutely no point in the court addressing or a jury addressing the question of whether the bank, generally speaking was well run.  We're talking about 20 loans." Dkt. #158-1 at 5.  This Court reached the same conclusion:  "For purposes of this lawsuit, the only relevant aspect of the Bank's operation is the 20 Loss Loans.  The FDIC-R's positions on…the Bank's overall condition is irrelevant to the FDIC-R's theories of liability as the FDIC-R is not seeking to recover for any aspect of the Bank's operation other than the 20 Loss Loans." Dkt. #206 at 6.  Accordingly, the Court should grant the FDIC-OIG the requested protection from further production.

**II.    The FDIC-OIG Should Be Protected from Further Production Because Defendants Could Not Have Relied on the MLR, Which Was Conducted after the Bank Was Closed.**

Defendants claim that the entirety of KPMG's work papers (as well as all of the documents on which KPMG relied) and essentially all FDIC-OIG's documents related to the MLR should be produced because these documents are relevant to Defendant's regulatory reliance defense.  KPMG's analysis and the MLR relate solely to the FDIC-OIG's post-closure analysis of why the Bank failed and the FDIC-C's supervision.  Defendants' subpoena runs afoul of this Court's prior refusal to order further production by the FDIC-C of purported pre-closure regulatory comments because Defendants did not rely on them. Dkt. #239 at 4.  If FDIC-C pre-regulatory comments need not be produced because Defendants *did not* rely on them, FDIC-OIG post-regulatory comments need not be produced because Defendants *could not* have relied on

them.

As the Court's October 27, 2014 order recognized, Defendants' two affirmative defenses that implicate regulatory activity are based on the business judgment rule and the Illinois Banking Act. *Id.* Both defenses are premised in part on Defendants' alleged reasonable reliance on positive comments in the 2005 – 2007 examination reports. *See, e.g.*, Dkt. # 229 at 76 – 78 (Defendants' first and second affirmative defenses). As the Court reasoned, for Defendants to rely on the regulators' comments, Defendants had to be aware of them. Since Defendants could not have been aware of internal regulatory comments (assuming any existed), there could be no reliance. Dkt. #239 at 4.[4]

Here, Defendants seek FDIC-OIG and KPMG documents that were created after the Bank failed. The Court's prior ruling makes it clear that regulatory documents on which Defendants did not rely are irrelevant to their regulatory reliance defense. Defendants did not (and could not) rely on FDIC-C pre-closure comments because they were not disclosed to Defendants prior to closure. The same is true of the FDIC-OIG and KPMG's documents at issue. FDIC-OIG and KPMG post-closure, retrospective comments about why the Bank failed or how it was run were not even made (let alone disclosed) to Defendants prior to closure. Since Defendants could not have relied on FDIC-OIG/KPMG post-closure comments, they are irrelevant to Defendants' regulatory defense (or any other issue in the case). Accordingly, the Court should grant the FDIC-OIG the requested protection from further production.

---

[4] The Court's October 27, 2014 order was consistent with Judge Grady's apt observation about Defendants' regulatory reliance defense in denying the Giannoulias Defendants' motion to compel additional interrogatory responses from the FDIC-R: "It could be that the bank was very well run as far as the examiners could determine at the time, but lurking beneath that well-run surface were all kinds of mismanagement. There's absolutely no inconsistency in those two propositions." Dkt. #158-1 at 5

### III. The Burden on the FDIC-OIG to Produce Additional Documents Would Outweigh Its Benefit Which, at Best, Is Limited and Likely Is None

This Court has made it clear that Defendants' discovery rights are not unlimited. Defendants are entitled "a reasonable opportunity to investigate the facts – no more." Dkt. #239 at 4 (citation omitted). This is particularly apt where, as here, the Defendants' discovery is directed to a non-party.

Regarding the FDIC-OIG, Defendants have been given a reasonable opportunity – and more. Given that the MLR was conducted post-closure, there is no valid basis to require the FDIC-OIG to produce anything. Given that the FDIC-OIG produced documents related to KPMG's methodology, its sample loan review, which included five of the Loss Loans, and its conclusions about the Bank's loan underwriting and credit administration practices, any arguable basis for production has been satisfied.

Moreover, based on the January 20, 2015 meet and confer, Defendants apparently believe that the FDIC-OIG also should produce every document on which KPMG relied, even though the MLR and the already produced FDIC-OIG documents show that KPMG primarily relied on the Bank's reports of examination and the regulatory work papers – all of which have been produced to Defendants by the FDIC-R or the FDIC-C. Defendants also turn a deaf ear when the FDIC-OIG explains that it cannot produce the FDIC-C's documents as those documents do not belong to the FDIC-OIG.

In sum, the FDIC-OIG had a viable basis for refusing to produce any documents in response to Defendants' subpoena. Nonetheless, its production more than satisfied any arguable obligation that it might have. To require anything more of the FDIC-OIG, a non-party, would be oppressive and unduly burdensome.

## CONCLUSION

**FOR THESE REASONS**, either independently or in combination, the FDIC-OIG urges

the Court to enter a protective order, providing that the FDIC-OIG need not provide further

responses to Demetris Giannoulias and George Giannoulias' subpoena dated October 7, 2014,

and granting any further and additional relief the Court deems appropriate.

Dated: January 30, 2015

Respectfully submitted,

FEDERAL DEPOSIT INSURANCE
CORPORATION OFFICE OF INSPECTOR
GENERAL

By: _John A Davidovich_
     John A. Davidovich

John A. Davidovich
Counsel
FDIC Office of Inspector General
3501 North Fairfax Drive
Arlington, Virginia 22226
(703) 562-2439 (phone)
(703) 562-6433 (facsimile)

Adriana Rojas
Associate Counsel
FDIC Office of Inspector General
3501 North Fairfax Drive
Arlington, Virginia 22226
(703) 562-6344 (phone)
(703) 562-6433 (facsimile)

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served on all counsel of record via e-mail on January 30, 2015.

*John A Davidovich*

# EXHIBIT 1

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Northern District of Illinois

| | |
|---|---|
| FDIC, as Receiver for Broadway Bank, | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   12 CV 1665 |
| Demetris Giannoulias, et al. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:    FDIC Office of Inspector General, c/o Adriana Rojas, Associate Counsel, 3501 N. Fairfax Dr., Room E9044, Arlington, Virginia 22226

*(Name of person to whom this subpoena is directed)*

   ☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:   See Rider attached hereto

| Place: Vedder Price P.C., c/o Rachel T. Copenhaver, 222 N. LaSalle Street, Suite 2600, Chicago, Illinois 60601-1003 | Date and Time:<br><br>10/17/2014 5:00 pm |
|---|---|

   ☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

   The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    10/08/2014

*CLERK OF COURT*

                     OR    *Rachel T. Copenhaver*

_____      _____
    *Signature of Clerk or Deputy Clerk*                  *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Defendants, Sean Conlon, Steven Dry, Donna Zagorski, Steven Balourdos, Gloria Sguros, and Anthony D'Costa   , who issues or requests this subpoena, are:

Rachel T. Copenhaver, Vedder Price P.C., 222 N. LaSalle Street, Suite 2600, Chicago, Illinois 60606-1003, rcopenhaver@vedderprice.com, (312) 609-7514

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**<u>Federal Deposit Insurance Corporation Office of Inspector General Subpoena Rider</u>**
*Federal Deposit Insurance Corporation, as Receiver for Broadway Bank v. Giannoulias, et al,*
*Case No. 12-cv-1665*

**<u>Definitions and Instructions</u>**

1.      "OIG" means the Federal Deposit Insurance Corporation Office of Inspector General and each and every one of its subsidiaries, divisions, business units, employees, agents, representatives, or any other person or entity acting or purporting to act for or on its behalf.

2.      "Broadway Bank" means Broadway Bank of Chicago, Illinois, which was a wholly-owned subsidiary of Broadway Bancorp, Inc., each of its employees, agents, representatives, directors, officers, affiliates or any other person or entity acting or purporting to act for or on its behalf (both past and present).

3.      "Material Loss Review" means the OIG's Office of Material Loss Review's Material Loss Review of Broadway Bank, Chicago, Illinois, Report No. MLR-11-004, November 2010, and any and all drafts, amendments, inserts, memoranda, summaries, Executive Summaries, responses, and supporting documentation.

4.      "Loss Loans" means the following loans that were originated by Broadway Bank:

| Borrower | Broadway Bank Loan Number |
|---|---|
| Gold Johnson Holding, LLC | 316010 |
| Wilshire Blvd. BH, LLC | 315770 |
| Federal Street L.A., LLC | 315710 |
| Water Street Realty Group, LLC | 315530 |
| Southside House LLC | 315325 |
| 625 W. Division. Condo., LP | 315315 |
| Shubh Oceanic LLC | 315050 |
| Prospect R. Equities LLC | 314950 |

| Prospect R. Equities LLC | 314955 |
|---|---|
| ASAT, Inc. | 314900 |
| 261 E. 78 Realty Corp. | 314825 |
| Lynn & Anderson Homes, LLC | 314775 |
| Shubh Hotels Springdale, LLC | 314805 |
| Shubh Boca Condominium LLC | 314770 |
| Lawrence Properties, LLC | 314780 |
| John R. DeSilva | 314730, 315695 |
| 4750 N. Winthrop, LLC | 314720 |
| The Bedford Lofts, LLC | 313825, 314640 |
| Krieger SPE, LLC | 314620 |
| Normandy Shores LLC | 313985 |

5.     As used herein, the term "document" means the following:

A)     "Document" is used in the broadest possible sense permitted by FED. R. CIV. P. 34 and means, without limitation, all documents or writings containing written or printed material, symbols or a physical image or sound, and includes, but is not limited to, any and all written, recorded or graphic matter of every type and description, however and by whomever prepared, whether signed or unsigned, preliminary, reviewed draft, other draft or final, produced, reproduced, disseminated or made, that is in the possession, custody or control of the person to whom these Interrogatories are propounded (as that person is defined herein).

B)     The term "document" shall include, without limitation, agreements, appointment books, calendars, charts, computer printouts, conferences, contracts, data compilations from which information can be obtained, descriptions, diagrams, diaries, drafts, emails, envelopes, financial statements, graphs, instructions, inter or intra-office

2

communications, ledgers, letters, memoranda, microfiche, microfilm, minutes and notes of meetings, notebooks, notes, photocopies, photographs, plans, publications, published or unpublished speeches or articles, purchase orders, recordings, records, reports, scrapbooks, specifications, tape or disk recordings, telegrams, telephone or other conversations or communications, telexes and transcripts.

C) The term "document" shall also include, without limitation, electronically stored data from which information can be obtained either directly, indirectly, or by translation through detection devices or readers, and any such document is to be produced in a reasonably legible and usable form.

6. "Communications" means all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, messages, electronic mails, letters, notes, telegrams and all other forms of oral or written intercourse.

7. The words "regarding" and "in connection with" mean having any connection, association or concern with or any relevance, relation, pertinence, or applicability to or any implication bearing on, the subject matter, whether directly or indirectly.

8. The word "and" includes the disjunctive "or," and the word "or" includes the conjunctive "and." Words in the singular shall be interpreted to include the plural and words in the plural shall be interpreted to include the singular. A masculine, feminine or neuter form of a word shall be interpreted to include the other genders. The use of any tense of any verb shall be interpreted to include all other tenses.

9. Where a claim of privilege is asserted in responding or objecting to any discovery requested in this Subpoena and information is not provided on the basis of such assertion, you shall, in response or by objection, identify the nature of the privilege (including work product)

3

which is being claimed. When any privilege is claimed, you shall indicate, as to the information requested, whether: (a) any documents exist; or (b) any communications took place; and (c) provide the following information for each such document or communication in a "privilege log" or similar format:

    a.    the type of document or communication;

    b.    the general subject matter of the document or communication;

    c.    the date of the document or communication;

    d.    the author(s) of the document or participants in the communication;

    e.    the addressee(s) and any other recipient(s) of the document; and

    f.    the custodian of the document, where applicable.

10.    This Subpoena and its Rider are continuing in nature and require supplemental response if you obtain further information between the time of compliance and any hearing or trial in the case.

11.    The relevant time period for these Requests is from December 1, 2004 through the present.

4

### Requests for Production

1.     All agreements between OIG and third parties, including but not limited to KPMG, regarding Broadway Bank.

2.     Documents sufficient to identify each and every third party that performed work for OIG regarding Broadway Bank.

3.     Documents sufficient to identify all OIG staff who worked on the Material Loss Review of Broadway Bank.

4.     All documents regarding Broadway Bank or the Loss Loans provided to any and all third parties, including but not limited to KPMG, by OIG.

5.     All documents regarding Broadway Bank or the Loss Loans received by OIG from any and all third parties, including but not limited to KPMG.

6.     All communications, whether internal or with any third parties, regarding Broadway Bank or the Loss Loans.

7.     All documents, including but not limited to reports and summaries, prepared by KPMG regarding Broadway Bank or the Loss Loans.

8.     All KPMG work papers regarding Broadway Bank or the Loss Loans.

9.     All documents, reports, and/or analyses by any third party and/or other division of FDIC, including but not limited to reports prepared by the Division of Resolutions and Receiverships and Division of Supervision and Consumer Protection, that were solicited, reviewed, and/or considered by OIG as part of OIG's Material Loss Review of Broadway Bank.

10.     All drafts of OIG's Material Loss Review of Broadway Bank.

11.     All responses and comments received by OIG regarding the Material Loss Review.

CHICAGO/#2620784.1

12.    Documents sufficient to identify all Broadway Bank borrower relationships reviewed by KPMG.

13.    All notes, transcripts, and/or memoranda of interviews conducted by OIG as part of the Material Loss Review, including, but not limited to, the interviews conducted on August 27, 2010 by Leon Wellons (OIG Senior Audit Specialist) and Alberto Sanabria (KPMG) with examiners from the Illinois Department of Financial and Professional Regulation.

14.    All notes, memoranda, and/or results of any tests or examinations performed by OIG as part of the Material Loss Review, including but not limited to notes, memoranda, and/or results of tests designed to assess Broadway Bank's regulators' compliance with laws and regulations.

15.    All documents reviewed, analyzed, and/or relied upon by OIG as part of the Material Loss Review, to the extent not responsive to Requests 1 through 14, *supra*.

16.    All documents which refer or relate to the Loss Loans to the extent not responsive to Requests 1 through 15, *supra*.

6

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR BROADWAY BANK, | ) ) ) ) | |
| Plaintiff, | ) ) | NO. 12 CV 1665 |
| v. | ) ) | Judge John F. Grady |
| DEMETRIS GIANNOULIAS, GEORGE GIANNOULIAS, JAMES MCMAHON, SEAN CONLON, STEVEN DRY, DONNA ZAGORSKI, STEVEN BALOURDOS, GLORIA SGUROS, ANTHONY D'COSTA, | ) ) ) ) ) ) ) | Magistrate Judge Daniel Martin |
| Defendants. | ) ) ) ) | |

## RESPONSE TO CERTAIN DEFENDANTS' SUBPOENA DATED OCTOBER 8, 2014 TO FDIC OFFICE OF INSPECTOR GENERAL

The Federal Deposit Insurance Corporation Office of Inspector General ("FDIC OIG"), a non-party to this litigation, pursuant to Federal Rule of Civil Procedure 45(d), submits the following responses and objections to the Subpoena dated October 8, 2014, issued by Sean Conlon, Steven Dry, Donna Zagorski, Steven Balourdos, Gloria Sguros, and Anthony D'Costa.

## GENERAL OBJECTIONS

1.     The FDIC OIG objects to the definition of "OIG" as overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and calling for information outside of its possession, custody, or control. The OIG responds to this subpoena in its capacity only. This response is not made on behalf of Plaintiff, the FDIC in its capacity as Receiver for Broadway Bank ("FDIC-R"), or the FDIC in its corporate capacity ("FDIC-C").

1

2. The FDIC OIG objects to the definition of "Broadway Bank" and "Bank" as overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and calling for information outside of its possession, custody, or control.

3. The FDIC OIG objects to the definition of "Material Loss Review" as overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and calling for information outside of its possession, custody, or control.

4. The FDIC-OIG objects to Defendants' Instructions as overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and calling for information outside of the FDIC-C's possession, custody, and control.

5. The FDIC-OIG further objects to Defendants' Instruction No. 11, which purports to set the relevant time period for these requests as December 1, 2004 to the present, as beyond the scope of relevant discovery in the litigation.

6. The FDIC-OIG objects to these requests to the extent that they seek material protected from discovery by the attorney-client privilege, the deliberative process privilege, the law enforcement privilege, the bank examiner's privilege, bank privacy statutes and regulatory restrictions including, but not limited to, 12 C.F.R. § 309.5, or any other privilege or immunity available by statute, regulation, or common law.

7. The FDIC-OIG objects to the document requests to the extent that they seek to impose obligations beyond those imposed under the Federal Rules of Civil Procedure or the Local Rules for the Northern District of Illinois.

8. The FDIC-OIG objects to the production or identification of documents not currently in its possession, custody or control.

9. The FDIC-OIG objects to the production or identification of documents that are

2

publicly available.

10. Where the FDIC-OIG has stated that it will respond and produce documents, such statements do not imply or constitute a representation that such documents are known to exist or do, in fact, exist. To the extent such documents are located after a reasonable search, and are not subject to any objection or privilege, they will be produced as provided herein.

11. These general objections shall be deemed applicable to and continuing with respect to each of the document requests responded to below. The general objections asserted above are incorporated into each and every one of the responses set forth herein. Such objections are not waived, nor in any way limited, by any response to any specific request.

12. The FDIC-OIG objects to any request that calls for information that is confidential, proprietary, or subject to confidentiality restrictions imposed by any law, rule, or regulation. Any statement that the FDIC-OIG will be producing documents shall be understood to mean that the FDIC-OIG will produce such documents only in accord with and under the terms of the Protective Order entered in this case.

13. The information contained in the FDIC-OIG's responses is produced based on information presently available to the FDIC-OIG. FDIC-OIG reserves the right to amend, supplement, or alter its responses, objections, and production of documents at any time.

14. Inadvertent reliance on or disclosure of any documents subject to any privilege, or otherwise protected or immune from discovery, shall not constitute a waiver of any privilege or of any other ground for objecting to discovery of such documents or their subject matter, or of the FDIC-OIG's rights to object to the use of such documents during this or any later proceeding. (See F.R.E. 502(b))

15. The FDIC-OIG objects to the extent the subpoena seeks documents being requested

3

of or already produced by the FDIC-R or FDIC-C.

## SPECIFIC RESPONSES

1.  All agreements between OIG and third parties, including but not limited to KPMG, regarding Broadway Bank.

**RESPONSE:** The FDIC-OIG objects to this request as: (a) overbroad; (b) improperly calling for information protected by the bank examiner privilege, the law enforcement privilege, or the attorney-client privilege; (c) irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the request goes beyond the 20 loss loans that are the subject of the Amended Complaint (*see, e.g.,* Docket No. 239); and (d) improper to the extent that it calls for confidential information under 12 C.F.R. §§309.1-309.7.

2.  Documents sufficient to identify each and every third party that performed work for OIG regarding Broadway Bank.

**RESPONSE:** The FDIC-OIG objects to this request as: (a) overbroad; (b) improperly calling for information protected by the bank examiner privilege, the law enforcement privilege, or the attorney-client privilege; (c) irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the request goes beyond the 20 loss loans that are the subject of the Amended Complaint (*see, e.g.,* Docket No. 239); and (d) improper to the extent that it calls for confidential information under 12 C.F.R. §§309.1-309.7.

3.  Documents sufficient to identify all OIG staff who worked on the Material Loss Review of Broadway Bank.

**RESPONSE:** The FDIC-OIG objects to this request as: (a) overbroad; (b) improperly calling for information protected by the bank examiner privilege, the law enforcement privilege, or the

attorney-client privilege; (c) irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the request goes beyond the 20 loss loans that are the subject of the Amended Complaint (*see, e.g.,* Docket No. 239); and (d) improper to the extent that it calls for confidential information under 12 C.F.R. §§309.1-309.7.

4.      All documents regarding Broadway Bank or the Loss Loans provided to any and all third parties, including but not limited to KPMG, by OIG.

**RESPONSE:** The FDIC-OIG objects to this request as: (a) overbroad; (b) improperly calling for information protected by the bank examiner privilege, the law enforcement privilege, or the attorney-client privilege; (c) irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the request goes beyond the 20 loss loans that are the subject of the Amended Complaint (*see, e.g.,* Docket No. 239) ; and (d) improper to the extent that it calls for confidential information under 12 C.F.R. §§309.1-309.7. Subject to and without waiving the foregoing objections, FDIC-OIG states that it will produce non-privileged documents within its possession, custody or control responsive to this request that refer to or discuss the 20 loss loans that are the subject of the Amended Complaint, and not already produced by the FDIC-R or the FDIC-C.

5.      All documents regarding Broadway Bank or the Loss Loans received by OIG from any and all third parties, including but not limited to KPMG.

**RESPONSE:** The FDIC-OIG objects to this request as: (a) overbroad; (b) improperly calling for information protected by the bank examiner privilege, the law enforcement privilege, or the attorney-client privilege; (c) irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the request goes beyond the 20 loss loans that are the subject

of the Amended Complaint (*see, e.g.,* Docket No. 239); and (d) improper to the extent that it calls for confidential information under 12 C.F.R. §§309.1-309.7. Subject to and without waiving the foregoing objections, FDIC-OIG states that it will produce non-privileged documents within its possession, custody or control responsive to this request that refer to or discuss the 20 loss loans that are the subject of the Amended Complaint, and not already produced by the FDIC-R or the FDIC-C.

6.     All communications, whether internal or with third parties, regarding Broadway Bank or the Loss Loans.

**RESPONSE:** The FDIC-OIG objects to this request as: (a) overbroad; (b) improperly calling for information protected by the bank examiner privilege, the law enforcement privilege, the deliberative process privilege, or the attorney-client privilege; (c) irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the request goes beyond the 20 loss loans that are the subject of the Amended Complaint (*see, e.g.,* Docket No. 239); and (d) improper to the extent that it calls for confidential information under 12 C.F.R. §§309.1-309.7. Subject to and without waiving the foregoing objections, FDIC-OIG states that it will produce non-privileged documents within its possession, custody or control responsive to this request that refer to or discuss the 20 loss loans that are the subject of the Amended Complaint, and not already produced by the FDIC-R or the FDIC-C.

7.     All documents, including but not limited to reports and summaries, prepared by KPMG regarding Broadway Bank or the Loss Loans.

**RESPONSE:** The FDIC-OIG objects to this request as: (a) overbroad; (b) irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the request

goes beyond the 20 loss loans that are the subject of the Amended Complaint (*see, e.g.,* Docket No. 239); and (c) improper to the extent that it calls for confidential information under 12 C.F.R. §§309.1-309.7. Subject to and without waiving the foregoing objections, FDIC-OIG states that it will produce non-privileged documents within its possession, custody or control responsive to this request that refer to or discuss the 20 loss loans that are the subject of the Amended Complaint, and not already produced by the FDIC-R or the FDIC-C.

8.    All KPMG work papers regarding Broadway Bank or the Loss Loans.

**RESPONSE:** The FDIC-OIG objects to this request as: (a) overbroad; (b) irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the request goes beyond the 20 loss loans that are the subject of the Amended Complaint (*see, e.g.,* Docket No. 239); and (c) improper to the extent that it calls for confidential information under 12 C.F.R. §§309.1-309.7. Subject to and without waiving the foregoing objections, FDIC-OIG states that it will produce non-privileged documents within its possession, custody or control responsive to this request that refer to or discuss the 20 loss loans that are the subject of the Amended Complaint, and not already produced by the FDIC-R or the FDIC-C.

9.    All documents, reports, and/or analyses by any third party and/or other division of the FDIC, including but not limited to reports prepared by the Division of Resolutions and Receiverships and Division of Supervision and Consumer Protection, that were solicited, reviewed, and/or considered by OIG as part of OIG's Material Loss Review of Broadway Bank.

**RESPONSE:** The FDIC-OIG objects to this request as: (a) overbroad; (b) improperly calling for information protected by the bank examiner privilege, the law enforcement privilege, the deliberative process privilege, or the attorney-client privilege; (c) irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the request goes beyond the 20 loss loans that are the subject of the Amended Complaint (*see, e.g.,* Docket No.

239); and (d) improper to the extent that it calls for confidential information under 12 C.F.R. §§309.1-309.7. Subject to and without waiving the foregoing objections, FDIC-OIG states that it will produce non-privileged documents within its possession, custody or control responsive to this request that refer to or discuss the 20 loss loans that are the subject of the Amended Complaint, and not already produced by the FDIC-R or the FDIC-C.

10.    All drafts of OIG's Material Loss Review of Broadway Bank.

**RESPONSE:** The FDIC-OIG objects to this request as: (a) overbroad; (b) improperly calling for information protected by the bank examiner privilege, the law enforcement privilege, the deliberative process privilege, or the attorney-client privilege; (c) irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the request goes beyond the 20 loss loans that are the subject of the Amended Complaint (*see, e.g.,* Docket No. 239); and (d) improper to the extent that it calls for confidential information under 12 C.F.R. §§309.1-309.7.

11.    All responses and comments received by OIG regarding the Material Loss Review.

**RESPONSE:** The FDIC-OIG objects to this request as: (a) overbroad; (b) improperly calling for information protected by the bank examiner privilege, the law enforcement privilege, the deliberative process privilege, or the attorney-client privilege; (c) irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the request goes beyond the 20 loss loans that are the subject of the Amended Complaint (*see, e.g.,* Docket No. 239); and (d) improper to the extent that it calls for confidential information under 12 C.F.R. §§309.1-309.7.

12.     Documents sufficient to identify all Broadway Bank borrower relationships reviewed by KPMG.

**RESPONSE:**  The FDIC-OIG objects to this request as: (a) overbroad; (b) irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the request goes beyond the 20 loss loans that are the subject of the Amended Complaint (*see, e.g.,* Docket No. 239); and (c) improper to the extent that it calls for confidential information under 12 C.F.R. §§309.1-309.7.  Subject to and without waiving the foregoing objections, FDIC-OIG states that it will produce non-privileged documents within its possession, custody or control responsive to this request that refer to or discuss the 20 loss loans that are the subject of the Amended Complaint, and not already produced by the FDIC-R or the FDIC-C.

13.     All notes, transcripts, and/or memoranda of interviews conducted by OIG as part of the Material Loss Review, including, but not limited to, the interviews conducted on August 27, 2010 by Leon Wellons (OIG Senior Audit Specialist) and Alberto Sanabria (KPMG) with examiners from the Illinois Department of Financial and Professional Regulation.

**RESPONSE:**  The FDIC-OIG objects to this request as: (a) overbroad; (b) improperly calling for information protected by the bank examiner privilege, the law enforcement privilege, the deliberative process privilege, or the attorney-client privilege; (c) irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the request goes beyond the 20 loss loans that are the subject of the Amended Complaint (*see, e.g.,* Docket No. 239); and (d) improper to the extent that it calls for confidential information under 12 C.F.R. §§309.1-309.7.

14.     All notes, memoranda, and/or results of any tests or examinations performed by OIG as part of the Material Loss Review, including but not limited to notes, memoranda, and/or results of tests designed to assess Broadway's Bank's regulators' compliance with laws and regulations.

**RESPONSE:** The FDIC-OIG objects to this request as: (a) overbroad; (b) improperly calling for information protected by the bank examiner privilege, the law enforcement privilege, the deliberative process privilege, or the attorney-client privilege; (c) irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the request goes beyond the 20 loss loans that are the subject of the Amended Complaint (*see, e.g.,* Docket No. 239); and (d) improper to the extent that it calls for confidential information under 12 C.F.R. §§309.1-309.7.

15.     All documents reviewed, analyzed, and/or relied upon by OIG as part of the Material Loss Review, to the extent not responsive to Requests 1 through 14, *supra*.

**RESPONSE:** The FDIC-OIG objects to this request as: (a) overbroad; (b) vague, ill-defined, ambiguous, and a catch-all request with no reasonable parameters, rendering the request unreasonable; (c) duplicative and cumulative of prior requests, and, for those reasons, unduly burdensome; (d) improperly calling for information protected by the bank examiner privilege, the law enforcement privilege, the deliberative process privilege and the attorney-client privilege; (e) irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the request goes beyond the 20 loss loans that are the subject of the Amended Complaint (*see, e.g.,* Docket No. 239); and (f) improper to the extent that it calls for confidential information under 12 C.F.R. §§309.1-309.7.

16.    All documents which refer or relate to the Loss Loans to the extent not responsive to Requests 1 through 15, *supra*.

**RESPONSE:**    The FDIC-OIG objects to this request as: (a) overbroad; (b) vague, ill-defined, ambiguous, and a catch-all request with no reasonable parameters, rendering the request unreasonable; (c) duplicative and cumulative of prior requests, and, for those reasons, unduly burdensome; (d) improperly calling for information protected by the bank examiner privilege, the law enforcement privilege, the deliberative process privilege and the attorney-client privilege; (e) irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the request seeks documents that "relate to" the 20 loss loans that are the subject of the Amended Complaint, as the phrase "relate to" is undefined, vague and ambiguous; and (f) improper to the extent that it calls for confidential information under 12 C.F.R. §§309.1-309.7.

Dated: November 7, 2014

Respectfully submitted,

FEDERAL DEPOSIT INSURANCE
CORPORATION OFFICE
OF INSPECTOR GENERAL

By:  _____
            Adriana Rojas

Adriana Rojas
Associate Counsel
FDIC Office of Inspector General
3501 North Fairfax Drive
Arlington, Virginia  22226
703-562-6344 (phone)
703-562-6433 (facsimile)

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true and correct copy of the foregoing was served on all counsel of record via e-mail on November 7, 2014.

_Adriana Rojas_

FDIC v. Giannoulias, et al.
Case No. 12 CV 1665

## SERVICE LIST

William L. Charron
Bryan T. Mohler
Pryor Cashman LLP
7 Times Square
New York, NY 10036
Telephone: (212) 421-4100
bmohler@pryorcashman.com
wcharron@pryorcashman.com

Eric Y. Choi
Neal, Gerber & Eisenberg LLP
Two North LaSalle Street
Suite 1700
Chicago, Illinois 60602
Telephone: (312) 269-8000
echoi@ngelaw.com

*Counsel for Defendants Demetris
Giannoulias and George Giannoulias*

Randall M. Lending
Rachel T. Copenhaver
Vedder Price P.C.
222 North LaSalle Street
Suite 2600
Chicago, Illinois 60601
Telephone: (312) 609-7500
rlending@vedderprice.com
rcopenhaver@vedderprice.com

*Counsel for Defendants Sean Conlon, Steven
Dry, Dona Zagorski, Steven Balourdos,
Anthony D'Costa and Gloria Sguros*

Robert J. Ambrose
David C. Van Dyke
Scott Frost
Joseph W. Barber
Donna Rizzuto
Howard and Howard PLLC
200 South Michigan Avenue
Suite 1100
Chicago, Illinois 60604
Telephone: (312) 372-4000
RAmbrose@howardandhoward.com
DVanDyke@howardandhoward.com
SFrost@howardandhoward.com
JWBarber@howardandhoward.com
drizzuto@howardandhoward.com

*Counsel for Defendant James McMahon*

Susan G. Feibus
F. Thomas Hecht
Dean J. Polales
Richard H. Tilghman
Seth A. Horvath
Ungaretti & Harris
70 West Madison
Suite 3500
Chicago, IL 60602
sgfeibus@uhlaw.com
fthecht@uhlaw.com
djpolales@uhlaw.com
rhtilghman@uhlaw.com
sahorvath@uhlaw.com

*Counsel for Plaintiff FDIC, Receiver for
Broadway Bank*

**FDIC v. Giannoulias, et al.**
**Case No. 12 CV 1665**

## SERVICE LIST

William L. Charron
Bryan T. Mohler
Pryor Cashman LLP
7 Times Square
New York, NY 10036
Telephone: (212) 421-4100
bmohler@pryorcashman.com
wcharron@pryorcashman.com

Eric Y. Choi
Neal, Gerber & Eisenberg LLP
Two North LaSalle Street
Suite 1700
Chicago, Illinois 60602
Telephone: (312) 269-8000
echoi@ngelaw.com

*Counsel for Defendants Demetris*
*Giannoulias and George Giannoulis*

Robert J. Ambrose
David C. Van Dyke
Scott Frost
Joseph W. Barber
Donna Rizzuto
Howard and Howard PLLC
200 South Michigan Avenue
Suite 1100
Chicago, Illinois 60604
Telephone: (312) 372-4000
RAmbrose@howardandhoward.com
DVanDyke@howardandhoward.com
SFrost@howardandhoward.com
JWBarber@howardandhoward.com
drizzuto@howardandhoward.com

*Counsel for Defendant James McMahon*

Randall M. Lending
Rachel T. Copenhaver
Vedder Price P.C.
222 North LaSalle Street
Suite 2600
Chicago, Illinois 60601
Telephone: (312) 609-7500
relending@vedderprice.com
rcopenhaver@vedderprice.com

*Counsel for Defendants Sean Conlon, Steven*
*Dry, Dona Zagorski, Steven Balourdos,*
*Anthony D'Costa and Gloria Sguros*

Susan G. Feibus
F. Thomas Hecht
Dean J. Polales
Richard H. Tilghman
Seth A. Horvath
Ungaretti & Harris LLP
70 West Madison, Suite 3500
Chicago, IL 60602
sgfeibus@uhlaw.com
fthecht@uhlaw.com
djpolales@uhlaw.com
rhtilghman@uhlaw.com
sahorvath@uhlaw.com

Mary Anne Benden
FDIC
300 South Riverside Plaza, Suite 1700
Chicago, IL 60606
312/382-6510
mbenden@fdic.gov

*Counsel for Plaintiff FDIC, Receiver for*
*Broadway Bank*